No. 22-3294

# In the United States Court of Appeals for the Third Circuit

---

JAMES P. SCANLAN; CARLA RINER,
*Plaintiffs-Appellants,*

v.

AMERICAN AIRLINES GROUP INC.; AMERICAN AIRLINES INC.,
*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
Case No. 2-18-cv-04040 (The Hon. Harvey Bartle III)

---

## PLAINTIFFS-APPELLANTS' OPENING BRIEF

---

R. JOSEPH BARTON
COLIN M. DOWNES
BARTON & DOWNES LLP
1633 Connecticut Ave. NW, Suite 200
Washington, DC 20009
(202) 734-7046

PETER ROMER-FRIEDMAN
PETER ROMER-FRIEDMAN LAW PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
(718) 938-6132

DEEPAK GUPTA
JONATHAN E. TAYLOR
GUPTA WESSLER PLLC
2001 K Street NW
North Tower, Suite 850
Washington, DC 20006
(202) 888-1741
jon@guptawessler.com

ADAM T. KLEIN
MICHAEL J. SCIMONE
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
(212) 209-0671

*Counsel for Plaintiffs-Appellants
(additional counsel listed on inside cover)*

March 23, 2023

MATTHEW Z. CROTTY
RIVERSIDE LAW GROUP, PLLC
905 W. Riverside Avenue, Suite 404
Spokane, WA 99201
(509) 850-7011

THOMAS G. JARRARD
LAW OFFICE OF THOMAS G. JARRARD LLC
1020 N. Washington Street
Spokane, WA 99201
(425) 239-7290

# TABLE OF CONTENTS

Table of authorities..................................................................................iii

Introduction.......................................................................................... 1

Jurisdictional statement ........................................................................6

Statement of the issues..........................................................................6

Statement of related cases and proceedings .........................................7

Statement of the case ............................................................................7

    I.     Statutory and regulatory background .................................7

         A.     Congress enacted USERRA to expand veterans' rights. ..........7

         B.     Section 4316(b)(1) requires that employees on military leave be afforded the same rights and benefits generally provided to similarly situated employees on non-military leaves..........................................................................9

         C.     Congress intended section 4316(b)(1) to codify this Court's decision in *Waltermyer v. Aluminum Co. of America*. ........................ 11

         D.     The Department of Labor's implementing regulations add a comparability requirement to differentiate short-term reservist leave from "extended leave[s]" of active duty. .......................................................................................14

    II.    Factual background .........................................................18

    III.   Procedural background....................................................18

Standard of review...............................................................................23

Summary of the argument....................................................................24

Argument.............................................................................................28

I.    The district court erred in granting summary judgment to the
      defendants on the plaintiffs' USERRA claims. ................................... 28

      A.    A reasonable jury could find that all or some of the
            relevant military leaves are comparable to at least one
            other leave ................................................................. 28

            1.    A reasonable jury could find that "the duration of
                  the leave" is comparable ................................................. 29

            2.    A reasonable jury could find that "the purpose of
                  the leave" is comparable ................................................. 31

            3.    A reasonable jury could find that "the ability of the
                  employee to choose when to take the leave" is
                  comparable. ................................................................. 33

      B.    The district court's opinion to the contrary misapplies the
            DOL regulation and summary-judgment standard and
            nullifies section 4316(b)(1). ......................................... 36

            1.    Duration of the leave ..................................................... 37

            2.    Purpose of the leave ...................................................... 41

            3.    The ability to choose when to take the leave ................ 42

II.   The district court erred in granting summary judgment to the
      defendants on the plaintiffs' breach-of-contract claim. ..................... 43

      A.    The district court erred in holding that the profit-sharing
            plan unambiguously excludes imputed income while on
            military leave ................................................................. 43

      B.    The district court erred in deferring to American's
            interpretation of the profit-sharing plan. .................................. 45

Conclusion ................................................................................. 47

# TABLE OF AUTHORITIES

## Cases

*Bank of America, N.A. v. Prize Energy Resources, L.P.*,
  510 S.W.3d 497 (Tex. Ct. App. 2014)....................................................46

*Brill v. AK Steel Corp.*,
  2012 WL 893902 (S.D. Ohio Mar. 14, 2012) ....................................*passim*

*Brown v. Gardner*,
  513 U.S. 115 (1994) ....................................................................40

*Clarkson v. Alaska Airlines, Inc.*,
  59 F.4th 424 (9th Cir. 2023)..........................................................*passim*

*Comcast v. Corp. v. National Association of African American-Owned Media*,
  140 S. Ct. 1009 (2020) ...................................................................38

*Daubert v. NRA Group, LLC*,
  861 F.3d 382 (3d Cir. 2017) ...........................................................23

*Davis v. Advocate Health Center Patient Care Express*,
  523 F.3d 681 (7th Cir. 2008) ...........................................................9

*DeLee v. City of Plymouth, Indiana*,
  773 F.3d 172 (7th Cir. 2014)...........................................................8, 9

*E.E.O.C. v. Flasher Co.*,
  986 F.2d 1312 (10th Cir. 1992).........................................................29

*Fishgold v. Sullivan Drydock & Repair Corp.*,
  328 U.S. 275 (1946).....................................................................40

*Gordon v. Wawa, Inc.*,
  388 F.3d 78 (3d Cir. 2004) ..............................................................9

*Gross v. PPG Industries, Inc.*,
  636 F.3d 884 (7th Cir. 2011)........................................................10, 11

*J.M. Davidson, Inc. v. Webster*,
  128 S.W.3d 223 (Tex. 2003) ...........................................................23

*King v. St. Vincent's Hospital,*
   502 U.S. 215 (1991) ................................................................40

*Loughrin v. United States,*
   573 U.S. 351 (2014) ..................................................................4

*Mauldin v. Worldcom, Inc.,*
   263 F.3d 1205 (10th Cir. 2001) .............................22, 45, 46, 47

*Middleton v. City of Chicago,*
   578 F.3d 655 (7th Cir. 2009) ...................................................9

*Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.,*
   390 F.3d 336 (5th Cir. 2004) ..................................................23

*Monroe v. Standard Oil Co.,*
   452 U.S. 549 (1981) ...................................................3, 14, 26, 39

*Rogers v. City of San Antonio,*
   392 F.3d 758 (5th Cir. 2004) ............................................*passim*

*Rosetta Resources Operating, LP v. Martin,*
   645 S.W.3d 212 (Tex. 2022) ...................................................23

*Schmauch v. Honda of America Manufacturing, Inc.,*
   295 F. Supp. 2d 823 (S.D. Ohio 2003) ..................................34

*Travers v. Federal Express Corp.,*
   8 F.4th 198 (3d Cir. 2021) ................................................*passim*

*Tully v. Department of Justice,*
   481 F.3d 1367 (Fed. Cir. 2007) .....................................2, 16, 29

*United States v. Cinemark USA,*
   348 F.3d 569 (6th Cir. 2003) ..................................................29

*Waltermyer v. Aluminum Co. of America,*
   804 F.2d 821 (3d Cir. 1986) .............................................*passim*

*WBCMT 2007 C33 OFFICE 9720, L.L.C. v. NNN Realty Advisors, Inc.,*
   844 F.3d 473 (5th Cir. 2016) ..................................................23

*Wease v. Ocwen Loan Servicing, L.L.C.*,
   915 F.3d 987 (5th Cir. 2019) ............................................................... 23

*White v. United Airlines, Inc.*,
   987 F.3d 616 (7th Cir. 2021) ........................................................ *passim*

*Won v. Amazon.com, Inc.*,
   No. 21-2867, 2022 WL 3576738 (E.D.N.Y. Aug. 19, 2022) ....................... 40

*Woodall v. American Airlines, Inc.*,
   2006 WL 2914135 (N.D. Tex. 2006) ........................................................ 2

## Statutes

28 U.S.C. § 1291 ................................................................................... 6

28 U.S.C. § 1331 ................................................................................... 6

28 U.S.C. § 1367 ................................................................................... 6

28 U.S.C. § 1866 ................................................................................. 34

38 U.S.C. § 4301 ................................................................................... 9

38 U.S.C. § 4302 ................................................................................... 9

38 U.S.C. § 4303 ................................................................................. 10

38 U.S.C. § 4312 ................................................................................. 37

38 U.S.C. § 4316 .............................................................................. 1, 10

38 U.S.C. § 4323 ......................................................................... 6, 9, 17

38 U.S.C. § 4327 ................................................................................... 9

ID Code § 2-212 ................................................................................. 34

RCWA 2.36.100 ................................................................................. 34

## Rules & regulations

20 C.F.R. § 1002.104 ..................................................................... 38, 40

20 C.F.R. § 1002.150 ................................................................... *passim*

20 C.F.R. § 1002.2 ................................................................... 11

70 Fed. Reg. 75246 (Dec. 19, 2005) ....................... 15, 25, 33, 34

Fed. R. Civ. P. 56(a) ............................................................. 23

## Other authorities

137 Cong. Rec. S6035 (May 16, 1991) ................................ 8, 11

139 Cong. Rec. H2203–02 (May 4, 1993) ................................. 8

140 Cong. Rec. S7670–71 (June 27, 1994) ............................... 7

*Black's Law Dictionary* (11th ed. 2019) ............................. 29

H.R. Rep. 103–65(I) (1993) ............................................... 8, 13

S. Rep. 103–158 (1993) ...................................................... 13

# INTRODUCTION

Serving in the armed forces requires balancing military and civilian life. For reservists and National Guard members, like the pilots in this case, that means taking days off work for monthly drills, annual training, and other short stints of service.

To help ease this burden, Congress enacted section 4316(b)(1) of the Uniformed Services Employment and Reemployment Rights Act of 1994 (or USERRA). *See* 38 U.S.C. § 4316(b)(1). "It adopts a simple formula: employees who take military leave from their jobs must receive the same 'rights and benefits' provided to employees absent for other reasons." *Travers v. Fed. Express Corp.*, 8 F.4th 198, 202 (3d Cir. 2021).

Under the federal regulation implementing this provision, employees who take military leave must receive "the most favorable treatment" given to any comparable leave. 20 C.F.R. § 1002.150(b). Together, the statute and regulation seek to codify this Court's decision in *Waltermyer v. Aluminum Co. of America*, 804 F.2d 821, 825 (3d Cir. 1986), which held that a benefit given to employees on jury duty or bereavement leave must also be given to those who take two weeks of military leave, because such leave "shares the essential features" of the other leaves. It is "compulsory and short." *Id.*

The regulation sets forth three factors for assessing whether "any given stretch of military leave is comparable to a form of nonmilitary leave," such that equal treatment is required. *White v. United Airlines, Inc.*, 987 F.3d 616, 624 (7th Cir. 2021). The "most significant" factor is "the duration of the leave" at issue. 20 C.F.R. § 1002.150(b).

Thus, "a two-day funeral leave will not be 'comparable' to an extended [military] leave." *Id.* In addition, "the purpose of the leave and the ability of the employee to choose when to take the leave" are relevant. *Id.* The inquiry is primarily "a question of fact" for the jury. *Clarkson v. Alaska Airlines, Inc.*, 59 F.4th 424, 434 (9th Cir. 2023).

Consistent with the regulation's focus on duration, courts have held that a two-year military leave is not comparable to "typically brief" non-military leaves. *Tully v. Dep't of Just.*, 481 F.3d 1367, 1370 (Fed. Cir. 2007). By the same token, courts have held that short-term military leave *is* sufficiently similar to other short-term leave—like jury duty and bereavement leave—to allow for a finding of comparability. *Rogers v. City of San Antonio*, 392 F.3d 758, 771–72 (5th Cir. 2004); *see Waltermyer*, 804 F.2d at 825. The federal government has adopted the same position in litigation involving the same job at issue here. *Woodall v. Am. Airlines*, 2006 WL 2914135 (N.D. Tex. 2006).

Just last month, in *Clarkson v. Alaska Airlines*, a federal court of appeals issued the most definitive opinion yet on the subject. There, a class of commercial airline pilots sued their employers for failing to give the same benefits for short-term military leave that the employers give for other, comparable leaves, including jury duty and bereavement leave. After a district court held that military leave was not comparable to the other leaves as a matter of law and granted summary judgment, the Ninth Circuit reversed. "Because factual disputes exist" for each factor enumerated in the regulation, it held that "comparability is an issue for the jury." 59 F.4th at 433.

This case calls for the same approach. As in *Clarkson*, a class of pilots have sued their employer (American Airlines) for failing to give the same benefits for short-term military leave that it gives for jury duty and bereavement leave. As in *Clarkson*, a district court granted summary judgment to the airline, holding that, when pilots take short-term military leave, they are not entitled to any of the benefits provided to employees on other leaves because military leave is not comparable to any other leave as a matter of law. And as in *Clarkson*, that holding must be reversed.

That is true for two reasons: *First*, the district court's legal analysis nullifies the statutory and regulatory scheme. Like the district court in *Clarkson*, the court below seized on factors unmentioned in the regulation, and then held that military leave is incomparable to the other leaves based on its inherent characteristics. For instance, although Congress sought to protect reservists during their "frequent absences from work," *Monroe v. Standard Oil Co.*, 452 U.S. 549, 565 (1981), the court below viewed the frequency of reservists' military obligations as a reason to deny them any protection at all. And though reservists have long received modest government compensation for their service, the court saw that too as reason to deny equal treatment.

This was error. In interpreting a regulation, a court may not add words to the regulation that are not in its text and use those words to wipe out both the regulation and the statute it implements. Yet that is exactly what the district court did below. By focusing on factors that are unique to military leave, the district court's decision

makes it virtually impossible for any leave to ever be comparable, depriving section 4316(b)(1) of any effect. But the "cardinal principle" of interpretation is that "courts must give effect, if possible, to every clause and word of a statute." *Loughrin v. United States*, 573 U.S. 351, 358 (2014) (cleaned up). To do otherwise is particularly improper here because it would eradicate an important statutory provision enacted to protect servicemembers, and USERRA's provisions must be "construed in favor of the service member"—not construed out of existence. *Travers*, 8 F.4th at 208 n.25.

As the Ninth Circuit explained in *Clarkson*: The factors to "be weighed most heavily" in the comparability analysis are those listed in the text of the regulation— "duration, purpose, and control." 59 F.4th at 436. "Frequency is not encompassed within duration" under the plain meaning of those words, and treating it like it is "undermines the purpose of USERRA." *Id.* So even if frequency could be given some weight by a jury, it may not be given dispositive significance by a court.

*Second*, the decision below misapplies the summary-judgment standard. Like the district court in *Clarkson*, the court below "improperly resolved factual disputes as to each factor in the comparability analysis." 59 F.4th at 439. In doing so, it lost sight of the fact that "[c]omparability is fundamentally an issue for the jury." *Id.*

Under the proper standard—one that heeds the regulation's text and respects the role of both Congress and the jury—summary judgment must be denied. The plaintiffs produced evidence showing that the military leaves for which they seek

relief were of similar duration to the comparator leaves, served a similar purpose, and gave employees similar ability to choose when to take the leave. There is thus ample evidence for a jury to conclude that at least "part of" the short-term military leaves at issue are comparable to "other short-term" leaves. *White*, 987 F.3d at 625.

Were it to do so, the practical consequences would be modest. USERRA requires only equal treatment—not preferential treatment. Here, American provides differential pay for jury-duty leave (the difference between an employee's salary and the government pay they receive for their service) and caps paid bereavement leave at three days. Accordingly, the plaintiffs seek only the difference between their salary and their miliary pay, and only to the extent that military leave is found comparable.

The district court also erred as to a second issue: Irrespective of whether American's leave policies violate USERRA, the company's profit-sharing plan for its pilots entitles them to receive profits based on compensation imputed for periods of military leave, something that it has refused to do. The plan defines compensation by reference to the pilots' 401(k) plan, which in turn makes clear that compensation is imputed when calculating employer "contributions . . . with respect to qualified military service." A957–58. Because the profit-sharing plan may at least plausibly be read to do the same, and because American has not shown that its compensation committee actually exercised its discretion to interpret this language, American is not entitled to summary judgment on the plaintiffs' breach-of-contract claim either.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over the plaintiffs' USERRA claims under 28 U.S.C. § 1331 and 38 U.S.C. § 4323(b)(3). The court had jurisdiction over the plaintiffs' breach-of-contract claim under 28 U.S.C. § 1367(a), because the claim is so related to their USERRA claims as to be part of the same case or controversy. This Court has jurisdiction under 28 U.S.C. § 1291 because the district court granted the defendants' motion for summary judgment and entered a final judgment in their favor. A5–31. The district court issued its order and entered judgment on November 2, 2022, and the plaintiff timely filed a notice of appeal on December 1, 2022. A1.

## STATEMENT OF THE ISSUES

1.    Did the district court err in granting summary judgment to the defendants on the plaintiffs' USERRA claims based on a view that military leave is not comparable to other leave as a matter of law, thus depriving section 4316(b)(1) of any effect? *See* A15–23 (opinion on this issue); Doc. No. 177 at 3–19 (briefing on issue).

2.    Did the district court err in granting summary judgment to the defendants on the plaintiffs' breach-of-contract claim based on its view that the plaintiffs' profit-sharing plan unambiguously excludes income imputed while on military leave and requires deference to a corporate committee—even though the plan defines earnings by reference to a 401(k) plan that "includ[es] imputed income while on military leave" and there is no evidence that the committee actually

exercised its discretion to interpret the relevant language? *See* A24–31 (opinion on this issue); Doc. No. 172-1 at 4–8, No. 177 at 19–25, & No. 181 at 1–10 (briefing on issue).

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not previously been before this Court. Several cases pending in other courts raise similar issues regarding the comparability of short-term military leave and other forms of leave: *Clarkson v. Alaska Airlines, Inc.*, No. 21-35473 (9th Cir.), *petition for reh'g en banc filed*, Mar. 17, 2023; *Huntsman v. Sw. Airlines*, No. 19-83 (N.D. Cal.); *White v. United Airlines, Inc.*, No. 19-114 (N.D. Ill.); *Won v. Amazon.com, Inc.*, No 20-2867 (E.D.N.Y); *Beanland v. Fed. Express Corp.*, No. 22-672 (D. Del.); *Baker v. United Parcel Serv.*, No. 21-114 (E.D. Wash.); and *Haley v. Delta Airlines*, No. 21-1076 (N.D. Ga.).

## STATEMENT OF THE CASE

### I.     Statutory and regulatory background

### A.     Congress enacted USERRA to expand veterans' rights.

Congress has long recognized that when someone puts on a uniform to serve in our military, we owe them certain obligations in return. One is the assurance that, when they have discharged their duties, they will be able to return to work without being penalized for serving their country—an obligation, in other words, "to compensate for the disruption of careers and the financial setback [from] military service." 140 Cong. Rec. S7670–71 (June 27, 1994) (statement of Sen. Rockefeller).

To make good on this solemn obligation, Congress has repeatedly expanded and strengthened workplace protections in "a long line of federal veterans' rights laws enacted since the Selective Training and Service Act of 1940." *DeLee v. City of Plymouth, Ind.*, 773 F.3d 172, 174 (7th Cir. 2014). The most recent and comprehensive of these statutes is USERRA, which Congress enacted in 1994 to "strengthen existing employment rights of veterans." *Id.* at 174–75; *see Travers*, 8 F.4th at 200–01.

In the run-up to USERRA, Congress concluded that the existing statute was too "complex and difficult to understand," 139 Cong. Rec. H2203–02, H2209 (May 4, 1993), and was "sometimes ambiguous, thereby allowing for misinterpretations," H.R. Rep. 103–65(I), at 18 (1993). These misinterpretations took too narrow a view of the law, thwarting servicemembers' ability to vindicate their rights. Congress felt the need "to restate past amendments in a clearer manner and to incorporate important court decisions interpreting the law," while correcting the misinterpretations. 137 Cong. Rec. S6035, S6058 (May 16, 1991) (statement of Sen. Cranston).

The result was USERRA. The statute seeks to "clarify, simplify, and, where necessary, strengthen the existing veterans' employment and reemployment rights provisions." H.R. Rep. No. 103–65(I) at 18. Its text identifies three core objectives: (1) "to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service," (2) to "provid[e] for the prompt reemployment of such persons

upon their completion of such service," and (3) "to prohibit discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4301(a). As this Court has noted, these statutory objectives have taken on "particular interest" and importance in the years since USERRA's passage "because of the large number of reservists [that were] called up for military duty as a result of the conflicts in Iraq and Afghanistan." *Gordon v. Wawa, Inc.*, 388 F.3d 78, 79–80 (3d Cir. 2004).

**B.   Section 4316(b)(1) requires that employees on military leave be afforded the same rights and benefits generally provided to similarly situated employees on non-military leaves.**

USERRA accomplishes its broad objectives by imposing a number of specific requirements on employers. These requirements range from "prohibiting an employer from discriminating against a servicemember because of his service (§ 4311)" to "requiring prompt reemployment of a returning servicemember (§§ 4312, 4313(a))," to "establishing a protective period during which an employer may not discharge a reemployed servicemember without cause (§ 4316(c))." *DeLee*, 773 F.3d at 175.[1]

---

[1] To underscore the importance of these requirements, Congress created a "broad remedial scheme" for USERRA. *Davis v. Advoc. Health Ctr. Patient Care Express*, 523 F.3d 681, 684 (7th Cir. 2008). It has no statute of limitations, 38 U.S.C. § 4327(b); *Middleton v. City of Chicago*, 578 F.3d 655, 662–63 (7th Cir. 2009); it has no exhaustion requirement; it forbids fees or costs to be assessed against "any person claiming rights under [the statute]," 38 U.S.C. § 4323(h)(1); *see Davis*, 523 F.3d at 685; and it allows suit in any district where an employer has a place of business, 38 U.S.C. § 4323(c)(2). In addition, the statute "supersedes any State law (including local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by" USERRA. *Id.* § 4302(b).

The requirement at issue here is section 4316(b)(1), which "sets out the rights applicable while a military employee is away from work fulfilling service obligations." *Gross v. PPG Indus., Inc.*, 636 F.3d 884, 888 (7th Cir. 2011). Section 4316(b)(1) provides, first, that "a person who is absent from a position of employment by reason of service in the uniformed services shall be (A) deemed to be on furlough or leave of absence while performing such service." 38 U.S.C. § 4316(b)(1). It then provides that the person shall be "entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service." *Id.*[2]

The meaning of "rights and benefits," in turn, is supplied by section 4303(2). It defines the phrase to cover all the "terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice." *Id.* § 4303(2). As this Court has held, this definition "includes pay while on leave." *Travers*, 8 F.4th at 208. That is because "pay during leave" fits "[n]aturally" within the ordinary meaning of

---

[2] Although not at issue in this case, USERRA defines "seniority" as "longevity in employment together with any benefits of employment which accrue with, or are determined by, longevity in employment." 38 U.S.C. § 4303(12).

"advantage," "profit," and "gain," while a contrary reading would conflict with the plain text and "codified statutory purposes of USERRA." *Id.* at 205–08 & n.25.

Putting these two provisions together, sections 4316(b)(1) and 4303(2) require an employer to provide employees who take military leave with any benefit, including pay during leave, that it generally provides to similarly situated employees who take any other type of leave. The purpose of this requirement was to ensure that military leave would not be given second-class status as compared to non-military leave.

## C.    Congress intended section 4316(b)(1) to codify this Court's decision in *Waltermyer v. Aluminum Co. of America*.

This purpose is clear not only through the text of the statute, but also through its history. As noted, Congress reviewed the case law when drafting USERRA and wanted "to incorporate important court decisions interpreting the law." 137 Cong. Rec. S6035, S6058. Accordingly, "Congress emphasized when enacting USERRA that to the extent it is consistent with USERRA, the 'large body of case law that had developed' under the predecessor statutes to USERRA 'remained in full force and effect.'" *Gross*, 636 F.3d at 888 (quoting 20 C.F.R. § 1002.2).

When it comes to section 4316(b)(1), Congress intended to incorporate one case in particular—this Court's decision in *Waltermyer v. Aluminum Co. of America*, 804 F.2d 821 (3d Cir. 1986). That case involved a claim much like this one. The plaintiff was a National Guard member who was often pulled away from work for military training. *Id.* at 822. During the periods when he took military leave, his employer refused to

provide him with holiday pay even though it provided that benefit to employees who took leaves at the same time for jury duty, witness duty, vacation, sickness, or bereavement. *Id.* He challenged this disparate treatment as unlawful under a provision in USERRA's predecessor statute.

This Court ruled in his favor. It explained that the statute sought "to prevent reservists and National Guardsmen not on active duty who must attend week end drills or summer training from being discriminated against because of their Reserve membership." *Id.* at 824 (quoting S. Rep. No. 1477, at 102 (1968)). The statute therefore "establishe[d] equality as the test" for military leave. *Id.* Applying that test to the claim before it, the Court held that the plaintiff was entitled to receive pay while on reservist leave for any holiday for which he would have received pay had he been on one of the other leaves. *Id.* at 825.

Although the plaintiff in *Waltermyer* had explicitly limited his claim to holiday pay, the logic of the Court's reasoning is not so limited. As the dissent explained (and the majority did not dispute): "If a reservist and [a] juror are equal, then the reservist is not entitled to just holiday pay but to full pay for all days not worked, since employees absent for jury duty receive full pay." *Id.* at 827 (Hunter, J., dissenting).

Congress embraced *Waltermyer* when it enacted USERRA several years later. "The reports of both the Senate and the House expressed an intention to codify *Waltermyer*," *Rogers*, 392 F.3d at 768, while expressing no disagreement or discomfort

with the dissent's stated recognition of the implications of doing so. Here is how the House report put it:

> The Committee intends to affirm the decision in *Waltermyer v. Aluminum Co. of America*, 804 F.2d 821 (3rd Cir. 1986) that, to the extent the employer policy or practice varies among various types of non-military leaves of absence, the most favorable treatment accorded any particular leave would also be accorded the military leave, regardless of whether the non-military leave is paid or unpaid.

H.R. Rep. 103–65(I), at 33–34. The Senate report said essentially the same. Citing *Waltermyer*, the report explained that USERRA "would codify court decisions that have interpreted current law as providing a statutorily-mandated leave of absence for military service that entitles servicemembers to participate in benefits that are accorded other employees." S. Rep. 103–158, at 58 (1993).

As noted, that's exactly what section 4316(b)(1) does. Consistent with Congress's stated desire to ensure that military leave receive "the most favorable treatment accorded any particular leave," H.R. Rep. 103–65(I), at 33, section 4316(b)(1)'s text "adopts a simple formula: employees who take military leave from their jobs must receive the same 'rights and benefits' provided to employees absent for other reasons." *Travers*, 8 F.4th at 202. "Thus, for example," as the House report explained, "an employer cannot require servicemembers to reschedule their work week because of a conflict with reserve or National Guard duty, unless all other employees who miss work are required to reschedule their work." H.R. Rep. 103–65(I), at 34.

When Congress imposed this mandate in 1994, it was fully aware of "[t]he frequent absences from work of an employee-reservist." *Monroe*, 452 U.S. at 565. Indeed, providing reservists with protection during those "frequent absences" was the very reason that Congress enacted section 4316(b)(1) in the first place. *Clarkson*, 59 F.4th at 436.

### D. The Department of Labor's implementing regulations add a comparability requirement to differentiate short-term reservist leave from "extended leave[s]" of active duty.

After USERRA was enacted, the Department of Labor promulgated final regulations, including one intended to implement section 4316(b). The regulation, codified at 20 C.F.R. § 1002.150, has two components relevant here.

The first subsection generally tracks the statutory language and the result in *Waltermyer*. It provides that "[t]he non-seniority rights and benefits to which an employee is entitled during a period of service are those that the employer provides to similarly situated employees by an employment contract, agreement, policy, practice, or plan in effect at the employee's workplace." *Id.* § 1002.150(a).

The second subsection then tethers the most-favorable-treatment rule to a comparability analysis (a requirement that the statutory text omits). It provides:

> If the non-seniority benefits to which employees on furlough or leave of absence are entitled vary according to the type of leave, the employee must be given the most favorable treatment accorded to any comparable form of leave when he or she performs service in the uniformed services. In order to determine whether any two types of leave are comparable, the duration of the leave may be the most

> significant factor to compare. For instance, a two-day funeral leave will not be "comparable" to an extended leave for service in the uniformed service. In addition to comparing the duration of the absences, other factors such as the purpose of the leave and the ability of the employee to choose when to take the leave should also be considered.

*Id.* § 1002.150(b).

DOL intended to ground this comparability requirement in *Waltermyer*'s observation that a two-week military leave shares the same "essential features" as the non-military leaves for which the employer had provided holiday pay, including leave for jury duty and bereavement. 804 F.2d at 825. They are "compulsory and short." *Id.*; *see* 70 Fed. Reg. 75246, 75264 (Dec. 19, 2005) ("[*Waltermyer*] found that because military leave was similarly involuntary, it was comparable to other types of involuntary absences from work and should be afforded the holiday pay."). The regulation's primary focus on "the duration of the absence[]," as well as its secondary focus on "the ability of the employee to choose when to take the leave" and "the purpose of the leave," are presumably an attempt to reflect this aspect of *Waltermyer*.

But the regulation differs from *Waltermyer* in one respect: Whereas *Waltermyer* did "not confine the group establishing the appropriate standard of comparison" to employees on jury duty or bereavement leave (both of which were paid), but also "include[d] those" on sick leave (which was unpaid), 804 F.2d at 825, the regulation expressly states that the "most favorable treatment" rule applies to "any comparable form of leave"—even a single form of leave. 20 C.F.R. § 1002.150(b).

As it is written, the regulation provides a way to distinguish between the kind of short-term reservist leave at issue in *Waltermyer* and the kind of long-term active-duty deployments that can last for months or even years on end. This appears to have been the chief concern motivating DOL to add the comparability requirement to the regulation. It emphasized "the duration of the leave" as "the most significant factor to compare," and specifically noted that "a two-day funeral leave will not be 'comparable' to an extended leave for service in the uniformed service." 20 C.F.R. § 1002.150(b). Thus, under this regulation, if an employee took two different military leaves over time—a one-year deployment and a two-day leave for drills—the former would not be comparable to funeral leave, but the latter would be a different story.

In keeping with the regulation, courts have held that a multiyear deployment is not comparable to "the typically brief duration of an absence" for leaves like jury duty and bereavement. *Tully*, 481 F.3d at 1369–71. But for short-term reservist leave of the sort at issue in *Waltermyer*, courts have generally come to the opposite conclusion, holding that neither the statute nor the regulation provides any basis for granting summary judgment to the employer based on comparability. *See, e.g.*, *Clarkson*, 59 F.4th at 433–39; *Rogers*, 392 F.3d at 771–72; *Brill v. AK Steel Corp.*, 2012 WL 893902, at *6 (S.D. Ohio Mar. 14, 2012) (denying defendant's motion for summary on comparability and explaining that reservists' "annual training" and "weekend drills" "generally last between three and five days, or two and four weeks at the longest").

That is also how the federal government has applied the regulation. In 2006, the Department of Justice—which not only enforces the law for privately employed reservists, but also represents the government as a defendant in federal USERRA cases, 38 U.S.C. § 4323(a)(1)—filed a class action on behalf of pilots against American Airlines for violating section 4316(b)(1). *Woodall*, No. 06-0072 (N.D. Tex.). Because it is one of the few enforcement actions addressing comparability—and involves the same employer and same job at issue here—the case is instructive.

In the lawsuit, DOJ took the position that American violated section 4316(b)(1)'s most-favorable-treatment rule because it denied certain benefits to pilots who took military leave, while providing the benefits "to pilots who took comparable types of non-military leave, including but not limited to sick leave, union service leave, or jury duty leave." *Woodall*, ECF No. 25, at 4. American moved to dismiss, arguing that the leaves were not comparable. But DOJ explained that "[w]hen the *proper* factors are considered, it is easy to conclude that military leave" is comparable to those other forms of leave. ECF No. 10, at 16. The court sided with DOJ and denied the motion. The parties then entered into a class-action settlement, under which the airline agreed to provide the same benefits to pilots "who take a military leave of 16 consecutive days or less," but not to pilots "who take longer leaves, such as leaves that extend for months or years," because it did not provide the same "benefits to its pilots on comparable long-term non-military leave." ECF No. 45, at 4, 15–16.

## II.    Factual background

James Scanlan is a retired Major General in the United States Air Force Reserve. A11. Carla Riner is Brigadier General in the Delaware Air National Guard. *Id.* Both are pilots at American Airlines. During their time with the company, both have taken periods of short-term military leave to perform their military duties. *Id.*

When they have done so, they have received no pay from American, not even to cover the difference between their military pay and their civilian salary. A13–14. Nor have they received any credit under American's profit-sharing plan, which pays pilots a portion of company profits based on a formula tied to their compensation.

American has adopted a very different policy for other forms of short-term leave, like jury duty and bereavement leave. For those leaves, pilots are paid. They receive differential pay for jury-duty leave and up to three days of paid bereavement leave. *Id.* And the pay that they receive counts for calculating their share of profits.

## III.    Procedural background

To remedy this disparate treatment, Scanlan filed this case against American Airlines Group and American Airlines (collectively, American), which Riner later joined as a class representative. The case alleges that American has violated section 4316(b)(1) by treating short-term military leave (defined as leave of up to sixteen days) less favorably than "jury duty, bereavement leave, and other forms of comparable short-term, non-military leave"—both as to paid leave (count III) and profit-sharing

(count I). A131–166. For the paid-leave claim, the complaint limits the relief sought to the "differential between an employee's regular wages or salary and the amount he or she received in compensation for his or her military service." A134. The complaint further alleges that American has breached its contractual obligations by refusing to treat military leave as compensable for profit-sharing (count II). A158–60.

After denying the defendants' motion to dismiss, A93–102, 105–30, the district court certified three subclasses, one for each claim. A35–93.[3] Discovery followed, and the court then granted summary judgment to the defendants on all claims. A5–31.

The district court's analysis proceeded like so: *First*, as to the paid-leave claim, the court recognized that under this Court's decision in *Travers*, "employers must offer employees compensation for military leave 'when they choose to pay other employees for comparable forms of leave.'" A15 (quoting *Travers*, 8 F.4th at 199); *see* A16 n.2 (rejecting contrary argument). As a result, the key question here is whether

---

[3] Consistent with the complaint, the USERRA subclasses (counts I and III) define "short-term military leave" as military leave that is "sixteen consecutive days or fewer." A57–58. But whereas the complaint notified the defendants that other leaves besides jury duty and bereavement leave could be comparable to short-term military leave, the district court unilaterally limited the class definition for the paid-leave subclass to pilots who took short-term miliary leave and were not paid for "that leave equal to what they would have received had they taken leave for jury duty or bereavement." A58. Discovery then tracked this limitation—restricting the relevant comparators to jury duty and bereavement leave. Although we do not challenge this limitation on appeal, we reserve our right, were this Court to reverse the district court's judgment as to the USERRA claims, to ask the district court on remand to allow limited discovery into the comparability of other leaves, like sick leave, which the Ninth Circuit recently held in *Clarkson* may be submitted to the jury. 59 F.4th 424.

short-term military leave is in fact comparable to jury duty and bereavement leave. That question, the court acknowledged, is governed by the DOL regulation. A15–16.

*Second*, the court resolved the parties' threshold dispute about the right metric for comparing "the duration of the leave"—the "most significant factor" under the regulation. 20 C.F.R. § 1002.150(b). The court rejected American's argument that the category of military leave as a whole must be analyzed, including long-term leave. A17. The court explained that the plaintiffs "are the masters of their complaint" and are "entitled to frame their claim and limit their potential recovery." *Id.* As a result, the court "consider[ed] only military leave periods of sixteen days or shorter." *Id.*

*Third*, having resolved this dispute, the district court then turned to duration. The court began by citing evidence showing that the "average duration during the class period of a single stint of short-term military leave is 3.2 days," while the "average duration of a period of bereavement leave is 2.68 days" and "the average duration of a period of leave for jury duty is 1.84 days." *Id.* The court did not deny that a jury could find that these figures are comparable to one another.

But the court didn't stop there. Rather than confine its duration analysis to duration alone, the court placed considerable weight on a factor not mentioned in section 4316(b)(1) or the regulation: frequency. The court thought that "the frequency of military leave, along with duration, is necessary to have a complete picture." A17. Because "military leave generally recurs on a regular basis and often over a number

of years," the court believed that it was not comparable to leave that is "generally short-term and sporadic," like jury duty and bereavement leave. A18. The court did not say what type of leave might qualify as comparable on this view.

*Fourth*, the court held (without record citation) that "it cannot be disputed that the purposes of the three types of leave are different." A22. Despite evidence showing that a core purpose of military leave, like jury-duty leave, is to allow employees to perform a "civic duty," A1696, the court believed that the only thing that mattered is that reservists receive "more than minimal compensation from the Government and sometimes pensions for their service over an extended period and often for years." A22. The court did not explain how receiving military pay (which, if anything, *lessens* the burden of providing differential pay for short-term military leave) can justify unequal treatment as a matter of law. Nor did it explain how military leave could ever be comparable to another leave on this understanding, nor make any attempt to square its holding with section 4316(b)(1)'s text, purpose, and history.

*Fifth*, with respect to the third DOL factor—the ability to choose when to take the leave—the court opined that "pilots often have significantly more flexibility in scheduling military leave than they do [for] jury duty and bereavement leave." A21. The court cited no record evidence, however, as to the flexibility of those leaves. And it acknowledged that this case involves military service that was generally unknown to pilots more than a few weeks in advance. A20–21.

*Finally*, the court addressed the two profit-sharing claims. As to the USERRA claim, it explained that the same comparability analysis governs this claim. A15. As to the breach-of-contract claim: The court acknowledged that the profit-sharing plan incorporates the 401(k) plan's definition of eligible income, and that the 401(k) plan "includ[es] imputed income while on military leave." A25–27. Yet the court held that the profit-sharing plan unambiguously *excludes* imputed income while on military leave. It believed that, because the "reason for including imputed income while on military leave in the 401(k) plan is for tax purposes not relevant to the profit-sharing plan," the profit-sharing plan should not be read to incorporate the same definition. A27. It pointed to no language in the profit-sharing plan to support this conclusion.

Instead, it shifted to a different ground. The court held that, regardless of the right reading, "Texas law requires the court to defer to [American's] interpretation" because the plan gives deference to its compensation committee. A27. The court did so even though American conceded that the committee didn't interpret the provision in the first instance, and instead argued that the committee "designated American's officers to interpret and administer the Plan thereby ratifying [their] interpretations." A656–57. By disputing the company's own concession—without citing any evidence showing that the committee had interpreted the provision or was even aware of the interpretation—the court was able to distinguish an otherwise indistinguishable case applying Texas law. *See Mauldin v. Worldcom, Inc.*, 263 F.3d 1205 (10th Cir. 2001).

## STANDARD OF REVIEW

This Court "review[s] orders granting summary judgment *de novo*," viewing the evidence "in the light most favorable to the nonmoving party" and "drawing all inferences in its favor." *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 388–89 (3d Cir. 2017). Summary judgment is warranted only if the moving party can show that there is "no genuine dispute as to any material fact" and it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Further, in applying USERRA, "any interpretive doubt is construed in favor of the service member." *Travers*, 8 F.4th at 208 n.25.

Likewise subject to *de novo* review is "the interpretation of an unambiguous contract, including the determination whether the contract is ambiguous." *WBCMT 2007 C33 OFFICE 9720, L.L.C. v. NNN Realty Advisors, Inc.*, 844 F.3d 473, 477 (5th Cir. 2016) (applying Texas law); *see J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) ("Deciding whether a contract is ambiguous is a question of law for the court."). Because "ambiguity precludes summary judgment," *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 994 (5th Cir. 2019) (applying Texas law), a grant of summary judgment will be reversed if the contract "is reasonably susceptible to more than one meaning," *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 219 (Tex. 2022); *see also Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 340 (5th Cir. 2004) ("If any ambiguity exists in a contract [under Texas law], a fact issue remains regarding the parties' intent thus precluding . . . summary judgment." (cleaned up)).

## SUMMARY OF THE ARGUMENT

**I.A.** Whether "any given stretch of military leave is comparable to a form of nonmilitary leave" is "primarily a question of fact" for the jury. *White*, 987 F.3d at 624–25. Three factors guide the inquiry: the duration of the leave, the purpose of the leave, and the ability of the employee to choose when to take the leave.

Here, as in *Clarkson*, "the record evidence presents genuine issues of material fact as to each factor," and would allow a reasonable jury to find that all or some of the military leaves at issue are comparable to at least one other leave. 59 F.4th at 434.

**1.** On duration: The evidence overwhelmingly shows that the leaves were of a comparable length. None of the military leaves at issue lasted more than sixteen days, and the vast majority were just a few days long. The average length was about three days. By comparison, the average lengths for bereavement and jury-duty leave were around two and three days. By any measure, these figures are comparable. Indeed, the very case that Congress and DOL sought to codify—this Court's *Waltermyer* decision—held that leave for a "two-week military training period" was comparably "short" to other types of leaves that "would not generally be of extended duration." 804 F.2d at 821–22, 825. A jury could find the same. *Clarkson*, 59 F.4th at 435–36.

**2.** On purpose: Although this factor isn't as significant as duration, a jury could conclude that it too supports a comparability finding. American admitted below that the purpose of military leave is to allow pilots to perform a civic duty, which is also

the purpose of jury leave. *Clarkson*, 59 F.4th at 437. As for bereavement leave, evidence shows that it is provided to pilots in part to protect public safety, and in part to allow them to satisfy their obligations to others. A jury could credit this evidence and find that the purpose of military leave is sufficiently similar for comparability purposes.

**3.** On voluntariness: Case law makes clear that military leave and leave for jury duty or bereavement are "similarly involuntary," and DOL embraced that understanding when it promulgated its regulation. 70 Fed. Reg. at 75264 (describing *Waltermyer*); *id.* at 75262 (favorably citing a case holding that "[b]oth military leave and jury duty are compulsory" and "beyond the control of the employee").

A reasonable jury could reach the same conclusion here. The evidence shows that the comparator leaves are generally involuntary but there can be some degree of flexibility over when to take the leave. Military leave is not materially different: Reservists and Guard members are required to fulfill their military obligations. And while they might have some flexibility over when to perform some of their service, their flexibility over when to *take leave* is far more limited given their obligation to schedule trips around known military service. Thus, on this record, no less than in *Clarkson*, "a reasonable jury could find that pilots do not have significantly more control over military [leave] than they do over other types of leave." 59 F.4th at 438.

**B.** In holding otherwise, the district court misinterpreted the DOL regulation, drained the statute of practical effect, and violated the summary-judgment standard.

**1.** The court started off on the right foot. In analyzing duration, it correctly rejected American's argument to consider *all* military leave, rather than just the leave at issue in the case. And the court correctly noted that the average duration of leave for short-term military service, jury duty, and bereavement is nearly identical.

But the court then distorted the duration analysis by considering a factor not found in the regulation: the frequency with which reservists take leave. As the Ninth Circuit recently held, the frequency of reservists' service obligations provides no basis for denying relief as a legal matter. "Frequency is not encompassed within duration." *Clarkson*, 59 F.4th at 436. And Congress enacted section 4316(b)(1) to protect reservists during what it knew were "frequent absences from work." *Monroe*, 452 U.S. at 565. To "treat[] frequency as an integral part of the duration analysis" thus "undermines the purpose of USERRA." *Clarkson*, 59 F.4th at 436. It makes it virtually impossible for military leave to ever be comparable to another leave, while also discouraging military service—neither of which can be reconciled with the statute.

**2.** The court also erred in holding that the purpose of military leave is different because servicemembers receive "more than minimal Government pay." A23. As with frequency, government pay is a defining characteristic of military service—not a purpose of the leave. By assigning such significance to it, the court again thwarted comparability for all military leave, while ignoring American's own admission that military leave, like the other leaves, facilitates public service and the public good.

**3.** Nor is the court's analysis of the voluntariness factor correct. In the court's view, voluntariness turns on the employee's control over scheduling. But *Waltermyer* itself recognized that military leave and leave for jury duty and bereavement are similarly involuntary. Even if there is some limited flexibility to reschedule these leaves, they are all generally triggered by events outside the employee's control. Most military leaves "were unknown to pilots more than a few weeks in advance, rendering pilots' control over the scheduling process irrelevant." *Clarkson*, 59 F.4th at 438.

**II.** The district court also erred in granting summary judgment on the breach-of-contract claim. Both reasons that it gave for doing so are wrong.

**A.** *First*, the court misread the profit-sharing plan. It acknowledged that the plan treats compensation the same way that it is treated for purposes of employer contributions under the 401(k) plan, and that the 401(k) plan includes imputed income during military leave for these purposes. Yet the court read the profit-sharing plan to *exclude* such income because the 401(k) plan's reason for imputing it is inapplicable to profit-sharing. Nothing in the text of the profit-sharing plan authorizes that result.

**B.** *Second*, the court contradicted the summary-judgment standard. Although American conceded that the relevant committee did not itself interpret the plan, the court thought that it was free to disregard that concession. It was not. Once this error is corrected, reversal is warranted because there is no evidence that the committee actually exercised its discretion to interpret the plan. *See Mauldin*, 263 F.3d at 1214.

# ARGUMENT

## I.    The district court erred in granting summary judgment to the defendants on the plaintiffs' USERRA claims.

### A.    A reasonable jury could find that all or some of the relevant military leaves are comparable to at least one other leave.

As interpreted by DOL, section 4316(b)(1) requires a plaintiff to show "that any given stretch of military leave is comparable to a form of nonmilitary leave that is accorded a benefit." *White*, 987 F.3d at 624–25. "This is primarily a question of fact." *Id.* at 625; *see Travers*, 8 F.4th at 209 n.26. The Fifth Circuit, for instance, reversed a grant of summary judgment because there were factual disputes as to whether certain military leaves were comparable to jury duty and bereavement leave. *Rogers*, 392 F.3d at 771–72. The Ninth Circuit recently did the same in *Clarkson*, 59 F.4th at 433–39.

This case calls for the same outcome. The class seeks to recover only for short-term military leave (sixteen days or fewer). So the main issue on appeal is whether there is sufficient evidence to support a finding that these short stretches of military leave are comparable to another leave (namely, jury duty or bereavement leave).

There is. Applying the factors set forth in the DOL regulation—duration, purpose, and choice—a jury could find that "all" or "part" of the military leaves are comparable to at least one other leave. *See White*, 987 F.3d at 625. This Court itself recognized in *Waltermyer* that "compulsory and short" military leave "shares the essential features" of the same comparator leaves. 804 F.2d at 825. A jury could agree.

### 1. A reasonable jury could find that "the duration of the leave" is comparable.

The first and "most significant factor" listed in the regulation is "the duration of the leave." 20 C.F.R. § 1002.150(b). Viewing the record evidence in the light most favorable to the class, this factor cuts strongly in favor of comparability.

"Duration" means "[t]he length of time something lasts." *Black's Law Dict.* (11th ed. 2019). And "comparable" means "similar" or "roughly similar." *United States v. Cinemark USA*, 348 F.3d 569, 575–76 (6th Cir. 2003). For the "duration of the absences" to be "comparable," then, the length of time that an employee is on leave for a particular "period of service" must be similar to (or roughly similar to) the length of time away from work for an allegedly comparable leave. 20 C.F.R. § 100.150(a), (b).

But it need not be "exactly the same." *E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1316 (10th Cir. 1992). That is not what "comparable" means, nor is it what DOL intended when it promulgated the regulation. The regulation's emphasis on "duration" serves to make clear that long-term leave (like the two-year deployment in *Tully*, 481 F.3d 1367) is to be treated differently than short-term leave (like the two-week training in *Waltermyer*). Thus, "a two-day funeral leave will not be 'comparable' to an extended leave for [military] service." 20 C.F.R. § 1002.150(b). But a three-day military leave? There, "comparing the duration of the absences," *id.*, would allow a jury to find that they are comparable. *See, e.g.*, *Brill*, 2012 WL 893902, *6 (denying summary judgment).

That is what the record shows here. The vast majority of all leaves at issue in this case—military and non-military alike—lasted for just a few days. The evidence shows that, during the class period, the average duration of the military leaves at issue was approximately three days. A17; *see* A1829. The median leave (that is, the length of leave in the middle of the leave distribution) was about two days. A1829. The modal leave (that is, the most common length of leave in the distribution) was one day. *Id*. By comparison, the average, median, and modal lengths of jury duty and bereavement leave were all between one and three days. *Id*.

This is more than enough evidence to support a finding of comparability as to duration. *See Clarkson*, 59 F.4th at 435 (holding that the issue of comparability was for the jury where "pilots took an average of 4.23 days of short-term military leave, 2.66 days of jury duty leave, [and] 2.48 days of bereavement leave"). Were a jury to credit this evidence, it could easily conclude that short-term military leave is similar in duration to the other leaves. In fact, for most of the military leaves in this case, that is the *only* reasonable conclusion. A military leave of just a few days is indisputably comparable in duration to the typical leave for jury duty or bereavement.

But even as to the longer periods of military leave at issue here, the record would support a finding of comparability as to duration. For instance, reservists and National Guard members must attend a two-week annual training, and pilots have additional obligations. Although they can try to arrange their schedules to minimize

the amount of leave taken to fulfill their obligations, they might occasionally need to take leave of more than a few days. Taking five or even ten days of leave, however, is not radically different than taking three. This Court in *Waltermyer* characterized the plaintiff's "leave of absence for the annual two-week military training period" as comparably "short" to other types of leaves that "would not generally be of extended duration." 804 F.2d at 821–22, 825. In codifying *Waltermyer*, Congress left no indication that it wanted courts to be able to forbid juries from reaching the same conclusion. Nor did DOL in its regulation. Accordingly, as the Fifth Circuit held in *Rogers*, it is for the jury to determine whether "non-military leaves, not generally for extended durations," including "jury duty [and] bereavement," are comparable to military leaves to attend the "annual two week session." 392 F.3d at 761, 771–72; *see also Clarkson*, 59 F.4th at 435 (reversing summary judgment for all military leaves up to 30 days); *Brill*, 2012 WL 893902 at *6 (denying summary judgment and holding that, for military leaves that "generally last between three and five days, or two and four weeks at the longest," "[s]uch a length may be comparable to the duration of jury").

### 2. A reasonable jury could find that "the purpose of the leave" is comparable.

Next is "the purpose of the leave." 20 C.F.R. § 1002.150(b). Although this factor is not as significant as duration, the DOL regulation says that it "should also be considered." *Id.* And as with duration, a jury could review the evidence and conclude that this factor supports a comparability determination for the relevant leaves.

Jury duty is perhaps the clearest example. Like military service, it entails the performance of a public service. Indeed, even American admitted below that one of the purposes of both military leave and jury-duty leave is to allow pilots to "do[] their civic duty." A731. Suffice it to say, a jury could sensibly reach the same "intuitive" conclusion—that "the primary purpose of military leave is to perform a civic duty and public service"—and thus find that this purpose is comparable to the purpose of providing leave for jury duty. *Clarkson*, 59 F.4th at 437; *see Woodall*, ECF No. 10 at 16 (U.S. DOJ brief explaining that it would be "easy" for a jury to conclude that short-term military leave is comparable to jury leave "because both serve a public service purpose"); *Brill*, 2012 WL 893902 at *6 (denying summary judgment and holding that a jury could find that "the purposes of the leave policies are comparable").

As for bereavement leave, it too shares a common public purpose: protecting public safety. An important purpose of bereavement leave, as American admits, is to "ensure that pilots are not operating passenger aircraft while grieving the loss of a close family member." A423. Bereavement leave also allows pilots to fulfill their "obligation to mourn their deceased family members" with their surviving family. A1713. A jury could reasonably conclude that these purposes are comparable to the purpose of military leave. Because air travel is a public-transportation industry in which pilots play a critical role, military leave serves not just the private interests of the pilot, but the public good. And it enables airlines to achieve their goal of having

the highest quality pilots in the sky. Just as bereavement leave seeks to promote public safety by ensuring that pilots are mentally sharp, reservist leave does much the same. It protects the public by promoting military service—service that goes well beyond fighting wars—and ensures that pilots remain experienced, trained, and fit to fly.

In any event, the purpose factor is just one of the three factors listed. And unlike duration, where the regulation gives an example of two leaves that would not be comparable based on the duration factor alone, the regulation does not require that the purpose factor separately be satisfied to allow for a finding of comparability. The text of the regulation makes that clear. As do its goals: Placing too heavy an emphasis on purpose would permit exactly the kind of anti-military value judgment that Congress sought to prohibit through section 4316(b)(1)—inviting an employer to treat two otherwise comparable leaves differently because it wishes to advance only the purpose of the non-military leave, and not the purpose of the military leave.

### 3. A reasonable jury could find that "the ability of the employee to choose when to take the leave" is comparable.

The final factor—"the ability of the employee to choose when to take the leave," 20 C.F.R. § 1002.150(b)—strongly supports comparability.

There has long been consensus that the types of leaves at issue here are comparable in this respect. *Waltermyer* itself recognizes that these types of leave are "similarly involuntary," 70 Fed. Reg. at 75264, and Congress codified *Waltermyer* in

enacting section 4316(b)(1). After Congress did so, courts continued to recognize that "[b]oth military leave and jury duty are compulsory, beyond the control of the employee, and may last for a comparable amount of time." *See, e.g.*, *Schmauch v. Honda of Am. Mfg., Inc.*, 295 F. Supp. 2d 823, 837 (S.D. Ohio 2003). DOL then embraced this understanding in its rulemaking process. *See* 70 Fed. Reg. at 75262 (favorably citing *Waltermyer* and *Schmauch*, which DOL described as holding that an "employer improperly treated jury duty more favorably than military leave"). It is thus hard to believe that a jury would be prohibited from reaching the same conclusion here.

Nor does the record in this case authorize that counterintuitive result. Jury duty and bereavement leave are generally involuntary, but as American admitted below, there can be some flexibility over when to take these leaves. A19. So, for example, while death is often unexpected, pilots may use bereavement leave to attend planned memorial services, which they can schedule themselves. Likewise, while jury duty is generally involuntary, the states where class members reside allow deferred jury service under certain conditions. *See, e.g.*, RCWA 2.36.100 (permitting deferral of jury duty for "any reason deemed sufficient by the court"); ID Code § 2-212 (permitting postponement for various reasons). The same is true of federal jury service. *See* 28 U.S.C. § 1866(c) (permitting deferral for hardship). For all these leaves, then, there is an involuntary occurrence triggering an absence from work, with limited flexibility as to when the absence will be taken.

That common thread holds true for short-term military leave. Reservists are required to attend monthly drills and annual training, plus other missions or trainings as may be required by their commanders. As with jury duty, reservists do not have control over when they are ordered to serve. A1718–19. As with jury duty, they are not free to ignore an order. *Id.* And as with jury duty, their ability to successfully negotiate with a government official to have their service obligations rescheduled is limited.

Moreover, as was true in *Clarkson*, "many of the leaves at issue in this case were unknown to pilots more than a few weeks in advance." 59 F.4th at 438. Pilots are required to notify American of any known military absences before scheduling their trips and must schedule trips around their known dates of service (and other planned absences). A1834, A1838. This means that, when a pilot is required to take military leave, it is generally because the pilot had little advance notice of the service. *Id.*

A jury could reasonably conclude that these features make short-term military leave comparable to jury duty and bereavement leave. That is what this Court held in *Waltermyer*. 804 F.2d at 825. It is what the Ninth Circuit held in *Clarkson*. 59 F.4th at 438–39. It is what the Fifth Circuit held in *Rogers*. 392 F.3d 758, 771–72. And it is what the Department of Justice recognized in *Woodall*—a case involving the same job for the same employer. ECF No. 10 at 16 (explaining that it would be "easy" for a jury to find that short-term military leave is comparable to such leaves given that a pilot "lacks discretion regarding when the leave can be used or how long it will last").

\*     \*     \*

Taken together, there is sufficient evidence of comparability—as to both comparator leaves—to require that the issue be submitted to the jury.

This does not mean that the jury must resolve this question in an all-or-nothing way. To the contrary, the jury could find that "all, none, or only part" of the military leaves at issue are comparable to another leave. *White*, 987 F.3d at 625. It could find, for instance, that only leaves up to 10 days are comparable. And even if the jury were to find comparability as to some leaves, the benefit in question need only be provided to the extent that it is provided for the comparable leave, and only to the extent that the leaves are comparable. So if the jury found that jury-duty leave were comparable, that would entitle pilots only to differential pay—the sole measure of paid-leave damages requested in this case. By the same token, paid bereavement leave is capped at three days, so a finding of comparability would be similarly limited.

The point here is not that the jury will necessarily decide these questions one way or another. The point is that it's the jury's prerogative to decide them at all.

### B. The district court's opinion to the contrary misapplies the DOL regulation and summary-judgment standard and nullifies section 4316(b)(1).

In holding otherwise, the district court went wrong several times over. Its opinion conflicts with DOL's regulation, the summary-judgment standard, and the statute's text, purpose, and history. It must be reversed.

### 1.    Duration of the leave

On duration, the district court began by getting two things right. It correctly rejected American's bid to focus on "the average duration of all military leaves"—even long-term deployments—instead of just the military leaves at issue in the case. A16; *see Clarkson*, 59 F.4th at 433–34 (same). And the court correctly noted that the average duration is very similar for short-term military leave, jury-duty leave, and bereavement leave—roughly three days, three days, and two days, respectively.

But then the court took an errant turn. It invoked a factor not found anywhere in the regulation, the statute, or *Waltermyer*—the frequency with which reservists must take military leave—and used it to defeat comparability altogether. As the court saw it, the fact that military leave "generally recurs at regular intervals over a number of years" renders it incomparable to the other leaves as a matter of law. A23.

That is wrong for multiple reasons. For one, "[f]requency is not encompassed within duration" because "the two terms convey distinct concepts." *Clarkson*, 59 F.4th at 436. And yet the text of the regulation does not mention frequency as a relevant factor at all—much less one with significance on par with duration. This was no oversight. When DOL adopted the regulation, it simultaneously adopted regulations implementing other provisions of USERRA, one of which says that "the timing, frequency, and duration of [a] person's training or service" in the military "shall not be a basis for denying [certain] protection[s]." 38 U.S.C. § 4312(h). The implementing

regulation uses the same language. 20 C.F.R. § 1002.104. That matters because it shows that the agency—as it was drafting the comparability regulation—knew that (1) employers might refuse to accommodate the frequency of a reservist's obligations, and (2) frequency and duration are distinct factors. Against this backdrop, omitting "frequency" in the comparability regulation can only be seen as deliberate. It would be odd, if DOL considered frequency to be of overriding significance, to have failed to mention its relevance. Rather, when an agency "has simultaneously chosen to [write] one [regulation] in one way and a second [regulation] in another way," courts "normally assume the differences in language imply differences in meaning." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1018 (2020).

For another thing, to the extent that frequency may bear on comparability, it is for the jury to determine how to analyze the factor and how much weight to give it, if any. The district court twice violated this principle—first, in determining that consideration of frequency is "necessary" as part of the duration analysis, A17, and then again in deciding that frequency alone rendered the leaves incomparable.

But a jury could easily conclude, consistent with the text of the regulation and the statute, and with cases like *Clarkson*, *Waltermyer*, and *Rogers*, that frequency should be given no weight in the comparability analysis. Or it could conclude that the factor should be given some weight—but not so much as to overcome comparability on the three enumerated factors. *See Clarkson*, 59 F4th at 436 ("While it is true that the

implementing regulation leaves room for courts to consider factors besides duration, purpose, and control, the factors enumerated in the regulation should be weighed most heavily when considering whether two leaves are comparable." (cleaned up)). Or the jury could conclude that frequency is also comparable for the relevant leaves in the same way that a two-week military leave can be comparable to a two-day jury-duty leave, as this Court held in *Waltermyer*. So the plaintiffs are not arguing, as the district court believed, that the regulation "forbids consideration of frequency in determining the issue of comparability." *Contra* A18. Instead, they are arguing that it forbids courts from using frequency (and frequency alone) to negate comparability.

For still another thing, the court's particular view of frequency would make comparability with any other leave nearly impossible. When a court interprets a regulation, it may not add words to the regulation and then use those words to nullify both the regulation and the statute it implements. Yet that is what the district court did. Congress enacted 4316(b)(1) to protect reservists during their "frequent absences from work," *Monroe*, 452 U.S. at 565 —including monthly drills, annual training, and other short periods of service. If military leave were required to be comparable in frequency even within the category of reservists—and summary judgment were required based on this factor alone—military leave would never be comparable to *any* leave. Long-term leave would be too long, while short-term leave would be too frequent. Neither Congress nor DOL condoned that result, and it would gut both

the statute and regulation. It would also be inconsistent with *Waltermyer*, *Clarkson*, *Rogers*, and the DOJ's litigating position in *Woodall*. And it would create a regime that discourages military service. But the "whole point of service in the armed forces is that servicemembers must be prepared to serve whenever they are called up— whether that need is occasional or frequent. Nothing in USERRA says that employers must provide equal treatment unless a servicemember serves too much." *Won v. Amazon.com, Inc.*, No. 21-2867, 2022 WL 3576738, at *11 (E.D.N.Y. Aug. 19, 2022).[4]

This does not mean that employers will be required to provide fully paid leave for all short-term military leave whenever they provide pay for any short-term leave that is comparable to the military leave. Section 4316(b)(1) requires equal treatment, not preferential treatment—which is why the plaintiffs seek only differential pay. If American has concerns about the frequency with which any particular employee is ordered to perform military service, it "is permitted to bring its concerns over the timing, frequency, or duration of the employee's service to the attention of the appropriate military authority." 20 C.F.R. § 1002.104. American may also take those concerns to Congress or DOL. But what it may not do under current law is use the frequency of reservists' military leave as a basis for denying benefits altogether.

---

[4] The district court's reasoning is particularly improper given the rule that any "interpretive doubt is to be resolved in the veteran's favor." *Brown v. Gardner*, 513 U.S. 115, 118 (1994); *see Clarkson*, 59 F.4th at 436 n.11 (making this point); *Travers*, 8 F.4th at 208 n.25 (noting this rule in USSERA case); *see also King v. St. Vincent's Hosp.*, 502 U.S. 215, 220 n.9 (1991); *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946).

### 2.    Purpose of the leave

The district court's errors are not limited to its duration analysis. The court also held that "it cannot be disputed that the purposes of the three types of leave are different" because servicemembers receive "more than minimal Government pay and sometimes a pension" for serving, while there is "no outside pay for bereavement leave and minimum Government pay for jury duty with no pension." A23.

That cannot be right. The court gave no explanation of why compensation from the government matters to the "purpose of the leave," 20 C.F.R. § 1002.150(b), and there isn't one. Nor did it discuss record evidence—including the defendant's own admissions—showing that the purpose of the leaves is comparable. *See, e.g.*, A731.

More fundamentally, if the district court's reasoning were correct, leave for jury duty could never be comparable to military leave as a matter of law. But no court has ever held that. And such a holding would directly contradict *Waltermyer*, *Rogers*, *Schmauch*, and the federal government's own understanding of the regulation. *See also Brill*, 2012 WL 893902, at *6 (rejecting difference-in-pay argument). Worse, because no other leave provides outside compensation on par with what reservists receive, it would mean, as a practical matter, that no other leave could ever be comparable to military leave. Once again, that cannot be the law.[5]

---

[5] If anything, from American's standpoint, the fact that reservist pilots receive "more than minimal" military pay only makes it less costly to ensure equal treatment, because the plaintiffs seek only differential pay (like jury duty)—not full pay.

### 3.     The ability to choose when to take the leave

The district court committed more of the same errors on the third factor. It asserted that "pilots often have significantly more flexibility in scheduling military leave than they do with respect to jury duty and bereavement leave." A21. But here, as well, the court usurped the role of the jury and undermined the statute.

The court cited no record evidence supporting its assertion about the flexibility of scheduling jury duty or bereavement leave, and there is none. There is no data, for example, showing that there are more leaves for unplanned funeral services than planned memorial services. Nor is there any evidence that jury duty arises without significant notice, or that pilots have far less control over rescheduling jury duty than military duty. *See Clarkson*, 59 F.4th at 439 (holding that a jury could "find that pilots' level of control over their military duty is comparable to their level of control over" jury duty and bereavement leave, and noting that "pilots receive advance notice of jury duty and have some flexibility to reschedule it"). Indeed, as in *Clarkson*, this case involves military leaves that were generally "unknown to pilots more than a few weeks in advance, rendering pilots' control over the scheduling process irrelevant." *Id.* at 438; *see* A1834, A1838. "A jury could reasonably conclude that because of last minute assignments, pilots do not have enough control over their schedules to prevent conflicts." *Clarkson*, 59 F.4th at 438–39. In short: "These comparability determinations are for the jury to make, not the court." *Id.* at 439.

## II.    The district court erred in granting summary judgment to the defendants on the plaintiffs' breach-of-contract claim.

The district court's analysis as to the breach-of-contract claim also requires reversal. The court granted judgment to the defendants on this claim for two reasons: It believed that the profit-sharing plan unambiguously excludes "imputed income while on military leave." A27. And it believed that "Texas law requires [it] to defer to [American's] interpretation of [the] plan" regardless. *Id.* Neither reason is correct.

### A.    The district court erred in holding that the profit-sharing plan unambiguously excludes imputed income while on military leave.

The profit-sharing plan does not directly say whether pilots are entitled to profit-sharing based on income that they would have received had they not been on military leave. What the plan says instead is that profit-sharing is based on a pilot's "Eligible Earnings." A363. It then defines "Eligible Earnings" by reference to the pilots' 401(k) plan. "Eligible Earnings," it says, means "'Compensation,' as that term is defined for purposes of employer contributions, in the [401(k)] plan." A368.

The profit-sharing plan, then, is designed to treat compensation the same way that it is treated for purposes of employer contributions under the 401(k) plan. And the district court, to its credit, recognized as much. *See* A24 ("Thus, the court must determine whether the 401(k) plan for American pilots treats as compensation imputed income for time spent in military service."). So the question is: Does the 401(k) plan impute income for military service in calculating employer contributions?

The answer to that question is undoubtedly yes. The 401(k) plan, as the court acknowledged, "includ[es] imputed income while on military leave" in calculating employer contributions. A27; *see* 957–58. That should have been the end of the matter. If imputed income while on military leave counts as compensation for purposes of calculating employer contributions under the 401(k) plan, it counts as compensation for purposes of calculating profit-sharing under the profit-sharing plan.

Yet the district court came to the opposite conclusion—that "compensation under the profit-sharing plan does not include imputed income while on military leave." A27. It did so because the 401(k) plan's stated "reason for including imputed income while on military leave"—that federal law requires it, as a pension plan, to do so—is inapplicable to the profit-sharing plan. *Id.* But nothing in the 401(k) plan's text authorizes that maneuver, much less unambiguously compels it. What matters under the profit-sharing plan is not *why* the income is imputed, but *that* it is imputed.

The district court's contrary conclusion is implausible. It holds that a provision written to track the meaning of compensation for purposes of employer contributions under the 401(k) plan—so that anything treated as income for that purpose is treated as income for profit-sharing—somehow mandates a gap between the two. That is as illogical as it sounds. In fact, the court's reading of the 401(k) plan is so implausible that summary judgment should have been granted to the plaintiffs on this issue. At the very least, the contract is ambiguous, and the issue should go to the jury.

**B.    The district court erred in deferring to American's interpretation of the profit-sharing plan.**

The district court's alternative ground for granting summary judgment to the defendants on this claim is no more persuasive. The court reasoned that, even if it were mistaken in its interpretation of the contract, "Texas law requires the court to defer to an employer's interpretation of its benefit plan under an employment contract if the contract vests the employer with discretion to interpret the plan." A27.

But the profit-sharing plan doesn't vest *the employer* with discretion—it vests the "Compensation Committee" with discretion. A364, 368. The problem for American is that there's no evidence that the committee actually interpreted the plan as to this question, or that it was even made aware of the issue. That is why not even American argued below that the committee itself interpreted the plan in this way. American's position, rather, was that it "designated American's officers to interpret and administer the Plan thereby ratifying American's interpretations of the Plan." A656.

That argument cannot survive the case law. Under Texas law, courts defer to a committee's interpretation of a plan "because the committee has made itself at least minimally familiar with the employee's claim and exercised some judgment in addressing the claim's merits." *Mauldin*, 263 F.3d at 1214 (applying Texas law). As the Tenth Circuit has explained, however, this "policy of deferring to a committee's *informed* decision would be rendered meaningless if a committee could receive deferential review by ratifying an agent's unauthorized general course of conduct

45

without knowing the specific decisions made by the agent and the facts that informed those decisions." *Id.* So "if a committee wishes to properly ratify an agent's [benefits] decisions, the material facts of which a committee must be at least minimally aware are the [benefits] decisions made by the agent and the agent's basis for making them." *Id.*; *see also Bank of Am., N.A. v. Prize Energy Res., L.P.*, 510 S.W.3d 497, 505–06 (Tex. Ct. App. 2014) ("Proof of ratification requires evidence establishing (1) approval by act, word, or conduct, (2) with full knowledge of the facts of the earlier act, and (3) with the intention of giving validity to the earlier act." (cleaned up)).

American has pointed to no such evidence here, even though it has the burden to do so. *See Prize Energy*, 510 S.W.3d at 506 (Tex. Ct. App. 2014) ("The burden rests on the party asserting ratification to prove that the ratifying party acted upon full knowledge of all material facts." (cleaned up)). American has not shown that any member of the committee was aware that an officer of the company had interpreted the profit-sharing plan to exclude imputed income during military leave, let alone the officer's basis for doing so. As a result, the company's "decision is not entitled to deferential review and must instead be reviewed *de novo*." *Mauldin*, 263 F.3d at 1214.

The district court, for its part, correctly observed that there is "no evidence" that American "designated [its] officers to interpret and administer the plan," and therefore rejected American's delegation theory. A28. But the court then adopted a theory that was equally devoid of record support. It held that the committee must

have itself interpreted the profit-sharing plan to exclude income imputed during military leave because that is how profit-sharing benefits were in fact calculated. A29.

In so holding, the court ran afoul of the summary-judgment standard. It improperly drew an inference in American's favor about the actions of the committee based on the "unauthorized general course of conduct" of low-level employees who calculated benefits. *Mauldin*, 263 F.3d at 1214. And even though American had conceded that the committee did not itself interpret the plan—asserting as an "undisputed" fact that American had designated *others* to interpret the plan, A643, A656—the district court took it upon itself to dispute this fact anyway, thereby allowing it to sidestep *Mauldin*. So while it is true that American did not properly delegate any official with the authority to interpret the plan (let alone ratify any such interpretation), *see* A28–29, that failure cuts *against* American's position. It does not somehow authorize the company to receive summary judgment. *Contra id.*

Instead of treating undisputed facts as disputed, the district court should have stuck to the summary-judgment rule. Had the court done so, it would have found no basis for according deference. This Court should conclude the same and reverse.

## CONCLUSION

The district court's judgment should be reversed.

March 23, 2023                              Respectfully submitted,

                                           */s/ Jonathan E. Taylor*
                                           JONATHAN E. TAYLOR
                                           DEEPAK GUPTA
                                           GUPTA WESSLER PLLC
                                           2001 K Street NW
                                           North Tower, Suite 850
                                           Washington, DC 20006
                                           (202) 888-1741
                                           *jon@guptawessler.com*

                                           ADAM T. KLEIN
                                           MICHAEL J. SCIMONE
                                           OUTTEN & GOLDEN LLP
                                           685 Third Ave., 25th Floor
                                           New York, NY 10017
                                           (212) 209-0671

                                           R. JOSEPH BARTON
                                           COLIN M. DOWNES
                                           BARTON & DOWNES LLP
                                           1633 Connecticut Ave. NW, Suite 200
                                           Washington, DC 20009
                                           (202) 734-7046

                                           PETER ROMER-FRIEDMAN
                                           PETER ROMER-FRIEDMAN LAW PLLC
                                           1629 K Street NW, Suite 300
                                           Washington, DC 20006
                                           (718) 938-6132

                                           MATTHEW Z. CROTTY
                                           RIVERSIDE LAW GROUP, PLLC
                                           905 W. Riverside Ave., Suite 404
                                           Spokane, WA 99201
                                           (509) 850-7011

THOMAS G. JARRARD
LAW OFFICE OF THOMAS G.
JARRARD LLC
1020 N. Washington St.
Spokane, WA 99201
(425) 239-7290

## COMBINED CERTIFICATIONS

**1. Word Count, Typeface, and Type Style:** I certify that this brief complies with the type-volume limitations of Circuit Rule 32-1(a) because the brief (as indicated by my word processing program, Microsoft Word) contains 12,530 words, excluding those portions excluded under Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32-1(c). I also certify that this brief complies with the typeface requirements of Rule 32(a)(5) and type style requirements of Rule 32(a)(6) because this brief has been prepared in the proportionally spaced typeface of 14-point Baskerville.

**2. Service:** I certify that on March 23, 2023, I filed this corrected opening brief electronically via this Court's CM/ECF system. All participants in this appeal are registered CM/ECF users and will be served by the CM/ECF system.

March 23, 2023                           */s/ Jonathan E. Taylor*
                                         Jonathan E. Taylor