# In the United States Court of Appeals for the Third Circuit

JAMES P. SCANLAN; CARLA RINER,
*Plaintiffs-Appellants,*

v.

AMERICAN AIRLINES GROUP INC; AMERICAN AIRLINES INC,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
Case No. 2-18-cv-04040 (The Hon. Harvey Bartle III)

## PLAINTIFFS-APPELLANTS' APPENDIX: VOLUME I (1–328)

R. JOSEPH BARTON
COLIN M. DOWNES
BARTON & DOWNES LLP
1633 Connecticut Ave. NW, Suite 200
Washington, DC 20009
(202) 734-7046

PETER ROMER-FRIEDMAN
PETER ROMER-FRIEDMAN LAW PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
(718) 938-6132

DEEPAK GUPTA
JONATHAN E. TAYLOR
GUPTA WESSLER PLLC
2001 K Street NW
North Tower, Suite 850
Washington, DC 20006
(202) 888-1741

ADAM T. KLEIN
MICHAEL J. SCIMONE
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
(212) 209-0671

*Counsel for Plaintiffs-Appellants*
*(additional counsel listed on inside cover)*

March 23, 2023

MATTHEW Z. CROTTY
RIVERSIDE LAW GROUP, PLLC
905 W. Riverside Avenue, Suite 404
Spokane, WA 99201
(509) 850-7011

THOMAS G. JARRARD
LAW OFFICE OF THOMAS G.
JARRARD LLC
1020 N. Washington Street
Spokane, WA 99201
(425) 239-7290

# INDEX

| VOLUME I | | | |
|---|---|---|---|
| **ECF No.** | **Date** | **Document** | **Page** |
| 191 | December 1, 2022 | Notice of Appeal | 1 |
| 190 | November 2, 2022 | Judgment | 5 |
| 189 | November 2, 2022 | Order on Summary Judgment | 10 |
| 188 | November 2, 2022 | Opinion on Summary Judgment | 11 |
| 176 | August 29, 2022 | Order re Joint Stipulation re Defendants' Statement of Undisputed Material Facts | 32 |
| 156 | April 6, 2022 | Order Modifying Class | 35 |
| 155 | April 6, 2022 | Memorandum Opinion re Modifying Class | 40 |
| 125 | October 8, 2021 | Order re Class Certification | 57 |
| 124 | October 8, 2021 | Memorandum Opinion re Class Certification | 60 |
| 93 | May 5, 2020 | Order on Motion to Dismiss | 93 |

| 92 | May 5, 2020 | Memorandum Opinion re Motion to Dismiss | 94 |
| 85 | April 26, 2021 | Order Deeming Second Amended Complaint Filed | 103 |
| 50 | June 18, 2019 | Order on Motion to Dismiss | 105 |
| 49 | June 18, 2019 | Memorandum Opinion re Motion to Dismiss | 106 |

| VOLUME II | | | |
|---|---|---|---|
| **ECF No.** | **Date** | **Document** | **Page** |
| 81-3 | February 27, 2020 | Second Amended Complaint | 131 |
| 82-9 | February 27, 2020 | Defendants' Interrogatory Responses (March 2020) | 167 |
| 82-12–82-15 | February 27, 2020 | American Airlines, Inc. 401(k) Plan for Pilots | 182 |

| VOLUME III | | | |
|---|---|---|---|
| **ECF No.** | **Date** | **Document** | **Page** |
| 82-15–82-17 | February 27, 2020 | American Airlines, Inc. 401(k) Plan for Pilots (cont.) | 239 |
| 82-18 | February 27, 2020 | American Airlines Group Inc. Amended and Restated Profit Sharing Plan | 274 |

| 83-1 | March 3, 2020 | James Scanlan Declaration In Support of Class Certification | 283 |
|------|---------------|----------------------------------------------------------|-----|
| 135 | January 6, 2022 | Defendants' Amended Answer to Second Amended Complaint | 287 |
| 172 | July 29, 2022 | Exhibits to Plaintiff's Motion for Partial Summary Judgment | 334 |
| 173 | July 29, 2022 | Attachments to Defendants' Motion for Summary Judgment | 612 |

| VOLUME IV | | | |
|-----------|---|---|---|
| **ECF No.** | **Date** | **Document** | **Page** |
| 173 | July 29, 2022 | Attachments to Defendants' Motion for Summary Judgment (cont.) | 821 |
| 177 | August 31, 2022 | Attachments to Plaintiff's Opposition to Defendants' Motion for Summary Judgment | 1677 |
| 178 | August 31, 2022 | Attachments to Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment | 1840 |
| 180 | September 16, 2022 | Defendants' Reply In Support of Motion for Summary Judgment | 1878 |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES P. SCANLAN, on behalf of himself
and all others similarly situated,

*Plaintiff*,

-vs.-

AMERICAN AIRLINES GROUP, INC. and
AMERICAN AIRLINES, INC.,

Defendants

**Case No. 18-4040**

**Plaintiff's Notice of Appeal**

Notice is hereby given that Plaintiff and the Class Representative, James P. Scanlan and Court-appointed Class Representative Carla Reiner, on behalf of themselves, the Class, and the Subclasses, hereby appeal to the United States Court of Appeals for the Third Circuit from the final judgment entered in this action on November 2, 2022, and from every part thereof.

Plaintiff and the Class Representative notify the Clerk of Court that this appeal of the underlying judgment involves causes of actions under the Uniformed Services Employment and Reemployment Rights Act and is thus exempt from both the filing fee and the appellate docket fee. 38 U.S.C. § 4323(h)(1).

Dated: December 1, 2022                    Respectfully submitted,

_____

R. Joseph Barton (*pro hac vice*)
Colin M. Downes (*pro hac vice*)
BLOCK & LEVITON LLP
1633 Connecticut Ave, NW, Ste. 200
Washington D.C. 20009
Telephone: (202) 734-7046
Fax: (617) 507-6020
jbarton@blockleviton.com
colin@blockleviton.com


Peter Romer-Friedman (*pro hac vice*)
GUPTA WESSLER PLLC
2001 K Street, NW,
North Tower, Suite 850
Washington, DC 20006
Telephone: (202) 888-1741
Email: peter@guptawessler.com


Matthew Z. Crotty (*pro hac vice*)
CROTTY & SON LAW FIRM, PLLC
905 W. Riverside Ave.
Suite 404
Spokane, WA 99201
Tel: (509) 850-7011
matt@crottyandson.com


Thomas G. Jarrard (*pro hac vice*)
LAW OFFICE OF THOMAS G. JARRARD
LLC
1020 N. Washington St.
Spokane, WA 99201
Tel: (425) 239-7290
Tjarrard@att.net

Adam Harrison Garner (Bar I.D. 320476)
THE GARNER FIRM LTD.
One Penn Center
1617 John F. Kennedy Blvd., Suite 550
Philadelphia PA 19103
Telephone: (215) 645-5955
Facsimile: (215) 645-5960
Email: adam@garnerltd.com

Michael J. Scimone (*pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone (212) 245-1000
Email: mscimone@outtengolden.com

*Attorneys for Plaintiff and the Class*

**CERTIFICATE OF SERVICE**

I, Colin M. Downes, hereby certify that on December 1, 2022, I caused the foregoing

Plaintiff's Notice of Appeal to be electronically filed using the CM/ECF system, which will send

notification of such filing to all counsel of record.

_____

Colin M. Downes

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES P. SCANLAN on his own     :      CIVIL ACTION
behalf and all others similarly :
situated, et al.                 :
                            :
        v.               :
                            :
AMERICAN AIRLINES GROUP, INC., :
et al.                           :      NO. 18-4040

JUDGMENT

AND NOW, this 2nd day of November, 2022, it is hereby

ORDERED that:

(a) Judgment is entered in favor of defendant

American Airlines Group, Inc. ("AAG") on Count I of plaintiffs'

amended complaint, and against plaintiffs James P. Scanlan,

Carla Riner, and class plaintiffs, who are:

> Current American Airlines, Inc. pilots who
>
> presently serve in the military, current
>
> American Airlines, Inc. pilots who formerly
>
> served in the military, and former American
>
> Airlines, Inc. pilots who formerly served in
>
> the military; and who currently participate
>
> or previously participated at some point in
>
> the AAG Global Profit Sharing Plan since its
>
> inception on January 1, 2016 through the
>
> present; are employed in the United States
>
> or are a citizen or national or permanent
>
> resident of the United States and employed

in a foreign country while participants in
the Plan; took or take short-term military
leave in a year during which they were
entitled to receive an award under the Plan;
and were not credited or imputed earnings
for this short-term military leave; with the
exceptions of Aaron Patrick Brunner and
those American Airlines, Inc. pilots
responsible for administering the AAG Global
Profit Sharing Plan and those American
pilots who reached individual settlements
with or judgments against AAG regarding
inadequate profit sharing or against
American for failure to compensate
short-term military leave under the
Uniformed Services Employment and
Reemployment Rights Act, 38 U.S.C. §§ 4301
et seq.

(b)   Judgment is entered in favor of defendant
American Airlines Group, Inc. on Count II of plaintiffs' amended
complaint and against plaintiffs James P. Scanlan, Carla Riner,
and class plaintiffs, who are:

Current American Airlines, Inc. pilots who
presently serve in the military, current
American Airlines, Inc. pilots who formerly

-2-

served in the military, and former American
Airlines, Inc. pilots who formerly served in
the military; and who currently participate
or previously participated at some point
from January 1, 2016 through the present in
the AAG Global Profit Sharing Plan as well
as the American Airlines, Inc. 401(k) Plan
for Pilots and are subject to taxation in
the United States; are employed in the
United States or are a citizen or national
or permanent resident of the United States
and employed in a foreign country while
participants in the AAG Global Profit
Sharing Plan; took or take short-term
military leave in a year during which they
were entitled to receive an award under the
AAG Global Profit Sharing Plan; and were not
credited or imputed earnings for this
short-term military leave; with the
exceptions of Aaron Patrick Brunner and
those American Airlines, Inc. pilots
responsible for administering the AAG Global
Profit Sharing Plan and those American
pilots who reached individual settlements
with or judgments against AAG regarding

-3-

inadequate profit sharing or against

American for failure to compensate

short-term military leave under the

Uniformed Services Employment and

Reemployment Rights Act, 38 U.S.C. §§ 4301

et seq.

(c)  Judgment is entered in favor of defendant

American Airlines, Inc. on Count III of plaintiffs' amended

complaint and against plaintiffs James P. Scanlan, Carla Riner,

and class plaintiffs, who are:

Current American Airlines, Inc. pilots who

presently serve in the military, current

American Airlines, Inc. pilots who

previously served in the military, and

former American Airlines, Inc. pilots who

formerly served in the military; and who

took or take short-term military leave while

employed at American at any time from

January 1, 2013, through the date of

judgment in this action and were not paid

for that leave equal to what they would have

received had they taken leave for jury duty

or bereavement; with the exceptions of Aaron

Patrick Brunner and those American Airlines,

Inc. pilots responsible for administering

-4-

the AAG Global Profit Sharing Plan and those
American pilots who reached individual
settlements with or judgments against AAG
regarding inadequate profit sharing or
against American for failure to compensate
short-term military leave under the
Uniformed Services Employment and
Reemployment Rights Act, 38 U.S.C. §§ 4301
et seq.

BY THE COURT:

/s/ Harvey Bartle III

_____ J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES P. SCANLAN on his own          :          CIVIL ACTION
behalf and all others similarly  :
situated, et al.                        :
                                        :
            v.                          :
                                        :
AMERICAN AIRLINES GROUP, INC.,      :
et al.                                  :          NO. 18-4040

ORDER

AND NOW, this 2nd day of November, 2022, for the reasons stated in the foregoing Memorandum, it is hereby ORDERED that:

(1)  the motion of defendant American Airlines, Inc. for summary judgment on Count III of plaintiffs' amended complaint (Doc. # 173) is GRANTED;

(2)  the motion of defendant American Airlines Group, Inc. for summary judgment on Count I and Count II of plaintiffs' amended complaint is GRANTED;

(3)  the motion of plaintiffs for summary judgment on liability as to Count II (Doc. #172) is DENIED; and,

(4)  the motion of plaintiffs for summary judgment with respect to defendant American Airlines Group, Inc.'s affirmative defenses of laches, estoppel, and waiver to Count II is DENIED as moot.

BY THE COURT:

/s/ Harvey Bartle III

_____
                                                     J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES P. SCANLAN on his own        :        CIVIL ACTION
behalf and all others similarly    :
situated, et al.                   :
                                   :
           v.                      :
                                   :
AMERICAN AIRLINES GROUP, INC.,     :
et al.                             :        NO. 18-4040

MEMORANDUM

Bartle, J.                                 November 2, 2022

        Plaintiffs James P. Scanlan, an American Airlines
pilot and a retired Major General in the United States Air Force
Reserve, and Carla Riner, an American Airlines pilot and a
Brigadier General in the Delaware Air National Guard, have
brought this class action against defendants American Airlines
Group, Inc. ("AAG") and American Airlines, Inc. ("American")
pursuant to the Uniformed Services Employment and Reemployment
Rights Act ("USERRA"), 38 U.S.C. §§ 4301 et seq., and for breach
of contract.  Plaintiffs assert that for the period between
January 1, 2013, and October 31, 2021, they and the class of
American pilots they represent have not received the
compensation or benefits due to them under USERRA and under the
contract.

        Before the court are the cross-motions of the parties
for summary judgment.  Defendants seek summary judgment as to

11

all of plaintiffs' claims while plaintiffs seek summary judgment
only on their breach-of-contract claim.

                                    I

        Under Rule 56 of the Federal Rules of Civil Procedure,
summary judgment is appropriate "if the movant shows that there
is no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323
(1986).  A dispute is genuine if the evidence is such that a
reasonable factfinder could return a verdict for the nonmoving
party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254
(1986).

        The court views the facts and draws all inferences in
favor of the nonmoving party.  See In re Flat Glass Antitrust
Litig., 385 F.3d 350, 357 (3d Cir. 2004).  When reviewing
cross-motions for summary judgment, the court "must rule on each
party's motion on an individual and separate basis, determining,
for each side, whether a judgment may be entered in accordance
with the Rule 56 standard."  Auto-Owners Ins. Co. v. Stevens &
Ricci Inc., 835 F.3d 388, 402 (3d Cir. 2016) (quoting 10A
Charles Alan Wright et al., Federal Practice & Procedure § 2720
(3d ed. 2016)).

                                  -2-

II

The following facts are undisputed.  Although American
permits its pilots to take leaves of absence to serve in the
military, it does not compensate them for their time away from
the job.  In contrast, American offers its pilots three days of
paid bereavement leave upon the death of a qualifying relative.
If pilots are summoned for jury duty, they receive the
differential between their regular compensation and the payment
they receive as jurors.

Scanlan and Riner represent a class of individuals who
at some point during the class period simultaneously served as
pilots with American and as members of a military branch.[1]  As
noted above, they advance three claims against defendants.
Under count III, plaintiffs seek a declaratory judgment that
USERRA obligates American to provide them with paid short-term
military leave, which plaintiffs define as periods of sixteen
days or fewer.  They further seek damages in an amount equal to

---

1.  The court has certified six subclasses in this action.  For
each of the three counts in plaintiffs' second amended
complaint, there are two subclasses--one for American pilots who
currently serve in the military and one for either former
American pilots who were employed with the airline and with a
military branch during the class period or current American
pilots who previously served in the military during the class
period.  The court has also excluded from each class any pilot
responsible for administering the AAG profit-sharing plan as
well as pilots who reached individual settlements with or
judgments against AAG or American over unpaid short-term
military leave.  See Scanlan v. Am. Airlines Grp., Inc., Civ A.
No. 18-4040, 2022 WL 1028038 (E.D. Pa. Apr. 6, 2022).

-3-

the difference between their salary at American and the amount
of compensation received for their military service for periods
of short-term military leave during the class period.

Count I, also a claim under USERRA, focuses on the
profit-sharing plan of AAG, American's parent company.  Under
the profit-sharing plan, AAG shares five percent of its pre-tax
profits with employees of American as well as its other
subsidiary airlines.  AAG calculates each participant's
individual award by dividing the five percent of its pre-tax
earnings by the aggregate amount of all participants' eligible
earnings and multiplying this resulting percentage by an
individual participant's eligible earnings.  AAG has not
credited military leave time as part of pilots' eligible
earnings.  Plaintiffs seek to compel AAG to recalculate and pay
profit-sharing awards in a manner that credits imputed income
for the time they spent serving in the military. The
profit-sharing plan, it should be noted, was established at
AAG's initiative and is not the product of any collective
bargaining agreement with the pilots or their unions.

Count II alleges a state-law breach-of-contract claim.
Plaintiffs contend that regardless of USERRA the language of the
profit-sharing plan obligates AAG to credit periods of military
leave when calculating plaintiffs' annual profit-sharing awards.

-4-

III

The essence of plaintiffs' claim in Count III is that American has violated USERRA by not compensating its pilots for the pay differential when they take military leave despite compensating them when they are on jury duty and bereavement leave.  Under USERRA, employees who take military leave are "entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees . . . who are on furlough or leave of absence." 38 U.S.C. § 4316(b)(1)(B).  As explained by our Court of Appeals, employers must offer employees compensation for military leave "when they choose to pay other employees for comparable forms of leave."  Travers v. Fed. Express Corp., 8 F.4th 198, 199 (3d Cir. 2021).

The Department of Labor has promulgated regulations interpreting § 4316(b).  The relevant regulation provides that an employee is entitled to "the most favorable treatment accorded to any comparable form of leave when he or she performs service in the uniformed services."  20 C.F.R. § 1002.150(b).  The regulation also offers guidance for courts to consider in deciding whether a form of leave is comparable to military leave:

> In order to determine whether any two types
> of leave are comparable, the duration of the
> leave may be the most significant factor to
> compare.  For instance, a two-day funeral

-5-

leave will not be "comparable" to an
extended leave for service in the uniformed
service.  In addition to comparing the
duration of the absences, other factors such
as the purpose of the leave and the ability
of the employee to choose when to take the
leave should also be considered.

Id.

American moves for summary judgment on plaintiffs'
USERRA claim under count III on the ground that leaves for jury
duty and bereavement are not comparable to military leave.[2]  It
contends that military leave is distinguishable from the other
forms of leave in duration, frequency, purpose, and the ability
of a pilot to choose when to take that leave.

A.

American maintains that for comparison purposes the
average duration of all military leaves should be considered
rather than the average duration of only short-term military
leaves of sixteen days or fewer as plaintiffs allege.  American
argues that the comparison analysis under the regulation
requires that courts treat all military leaves the same.  Other
courts have endorsed this "generalized" approach.  See, e.g.,

---

2.  American rehashes its argument that pay during leave is not
a "right" or "benefit" within the meaning of USERRA.  This court
rejected that argument at the motion-to-dismiss stage.  Scanlan
v. Am. Airlines Grp., Inc., 384 F. Supp. 3d 520, 526 (E.D. Pa.
2019).  Our Court of Appeals confirmed this understanding of
USERRA in Travers v. Federal Express Corp., 8 F.4th 198, 205-06
(3d Cir. 2021).  Federal courts have "uniformly" agreed with
this approach.  E.g., Haley v. Delta Airlines, Inc., Civ. A.
No. 21-1076, 2022 WL 950891, at *4 (N.D. Ga. Mar. 29, 2022).

-6-

Clarkson v. Alaska Airlines, Inc., Civ. A. No. 19-0005, 2021 WL
2080199, at *5 (E.D. Wash. May 24, 2021), appeal filed (9th Cir.
June 22, 2021).  Here, however, plaintiffs have expressly
limited the relief they seek in their second amended complaint
to leave periods of sixteen days or fewer.  They are the masters
of their complaint entitled to frame their claim and limit their
potential recovery in this way.  Accordingly, the court will
consider only military leave periods of sixteen days or shorter.

There is no dispute over the number of days during
which American pilots have taken military leave, bereavement
leave, and jury duty leave.  American pilots spend on average
more time on leave for military service than they do for jury
service or bereavement.  The average duration during the class
period of a single stint of short-term military leave is 3.2
days.  The average duration of a period of bereavement leave is
2.68 days while the average duration of a period of leave for
jury duty is 1.84 days.

An analysis of the frequency of military leave, along
with duration, is necessary to have a complete picture.  When
the frequency of each type of leave is calculated, the
difference between the amount of time American pilots spend on
military leave as compared to bereavement and jury duty leave is
stark.  Pilots who took military leave in any given year took an
average of seven periods of such leave that year during the

-7-

class period.  By contrast, pilots who performed jury duty
service in any given year took an average of 1.3 leave periods,
and pilots who took bereavement leave took 1.2 leave periods.
Thus, among pilots who took one of these forms of leave in a
particular year, the average number of days during which a pilot
was away from the job on short-term military leave was 21.9
days, while it was 3.1 days for bereavement leave, and 2.3 days
for jury duty.  There is a distinct difference among the three
types of leave not only in the average time away from the job in
a year but also in the fact that a pilot's military leave
generally recurs on a regular basis and often over a number of
years while the other forms of leave are generally short-term
and sporadic.

Plaintiffs argue frequency is an improper
consideration because it is not enumerated as a consideration in
§ 1002.150.  However, the regulation's list of factors is
expressly nonexhaustive.  See, e.g., Clarkson, 2021 WL 2080199,
at *5.  This is evidenced by the regulation's use of the phrases
"may be" and "such as."  Plaintiffs also maintain that
considering frequency would contravene USERRA's purpose.  The
court disagrees.  There is nothing in the language or purpose of
USERRA or its interpreting regulations which forbids
consideration of frequency in determining the issue of
comparability.  Furthermore, analyzing the duration of the

-8-

average military leave without considering frequency of military leave provides a false impression in any comparison of military leave with jury duty and bereavement leave.

B.

American next argues that short-term military leave is distinguishable from other forms of leave in a pilot's ability to control when to take leave.  American notes that pilots have no control over when bereavement leave will be necessary or when they must appear for jury duty, although American concedes that postponement for jury duty may sometimes be granted.

The record reflects that pilots have varying levels of flexibility in scheduling when to perform military service. Some annual drill days are scheduled in October the year before. In addition, some commanding officers will accommodate the pilots' schedules.  For example, Scanlan admitted that he has "negotiat[ed]" the dates on which he has performed certain required air missions.  Riner testified that by virtue of her position as a senior officer she was permitted to issue an order to herself that required her to schedule her own military leave. J.F. Joseph, an American Captain and former Naval officer, corroborated that pilots have "unique and significant flexibility . . . in how they schedule their military service periods" and that military commanders schedule short-term duty periods "with as much advanced notice and flexibility as

-9-

possible, to lessen the impact of military reserve absences on employers."

Plaintiffs dispute the extent to which pilots have flexibility in scheduling their military service.  They cite Joseph's testimony in which he acknowledges that a pilot's flexibility may be constrained by factors outside a servicemember's control such as the availability of aircrafts or the nature of a training event.  Scanlan noted that weather and staffing concerns also limit flexibility.  Patrick O'Rourke, an American pilot and retired member of the United States Marine Corps, testified that there is "virtually no flexibility" when it comes to performing certain duties under military orders. There is no dispute that for certain events set by military order, for example a "drill weekend," once the date has been set, attendance on that date is compulsory.

Plaintiffs also contend that the work assignment system of American bears some responsibility for creating the scheduling conflicts that necessitate short-term military leave. Pilots submit scheduling preferences for any given month on or before the 13th day of the prior month.  American considers these preferences along with each pilot's seniority when scheduling pilots for the month, but not every pilot receives his or her first-choice schedule.  Thus, plaintiffs contend that American pilots do not always have advanced notice of conflicts

-10-

between their work and military schedule.  In addition, the
relevant collective bargaining agreement requires American
pilots to notify the airline of known military absences and to
attempt to schedule their trips around those dates.
Accordingly, pilots "may not intentionally create a conflict
between their military duties and their duties flying for
American."

Even taking the facts in the light most favorable to
the plaintiffs, pilots often have significantly more flexibility
in scheduling military leave than they do with respect to jury
duty and bereavement leave.

C.

American further contends that military leave varies
from bereavement and jury-duty leave in its purpose.  Jury duty
is public service which satisfies a compulsory obligation to the
justice system.  Bereavement leave serves the dual purposes of
allowing pilots to grieve loved ones and providing them time to
ensure they are emotionally fit to fly.  In contrast, American
characterizes plaintiffs' military service as akin to a
"parallel career."

Plaintiffs disagree.  They argue that each of these
leaves serve the purpose of "satisfy[ing] compulsory obligations
to others."  There is no doubt that jury service is an important
civic duty.  Plaintiffs contend that bereavement leave also

-11-

falls into the category of service for others--satisfying obligations to mourn deceased family members and to ensure flight safety.  They assert that American's characterization of military service as a "parallel career" undersells the "public service dimension of military service."

        In sum, it cannot be disputed that the purposes of the three types of leave are different.  Unlike bereavement leave and jury duty, those who take military leave do so not only out of a sense of patriotism but also for more than minimal compensation from the Government and sometimes pensions[3] for their service over an extended period and often for years.

                              D.

        In assessing duration, frequency, control, and purpose, the court concludes as a matter of law that the undisputed evidence demonstrates that jury duty and bereavement leave are not comparable to military leave.  Thus, American has not violated § 4316(b)(1) of USERRA.  As noted above, for pilots who took short-term military leave, the average time away from the job on military leave annually is over 21 days while absence on jury duty is 2.3 days and on bereavement leave is 3.1 days. These figures are no more comparable than the home run records

---

3.  While none of the parties has mentioned this fact, the court takes judicial notice that pensions are paid to those serving in the military if their service is of sufficient length.

                              -12-

of two baseball players, one who hits 21 home runs in a season and the other who hits three.  Looking only at the average length of individual periods of military leave makes no sense, just as it makes no sense to compare the home run records of these two baseball players by looking only at the fact that both hit no more than one home run in any game.  A pilot's military leave is accompanied with more than minimal Government pay and sometimes a pension and generally recurs at regular intervals over a number of years while the two other types of leave consist of short-term events and are infrequent with no outside pay for bereavement leave and minimal Government pay for jury duty with no pension.  Moreover, military leave is significantly different in its purpose and in the degree of control which a pilot has over when to take that leave.  Accordingly, the motion of American for summary judgment on plaintiffs' USERRA claim in count III of plaintiffs' second amended complaint will be granted.

IV

AAG has also moved for summary judgment as to count I of plaintiffs' second amended complaint, which is also a claim under § 4316(b)(1) of USERRA but related to payments from AAG's profit-sharing plan.  AAG contends that it does not need to credit short-term military leave when calculating each pilot's award under the plan because short-term military leave is not

-13-

comparable to jury duty and bereavement leave.  The comparability analysis for plaintiffs' claim against American for pay while on military leave in count III applies equally to their claim against AAG for inclusion of imputed income while on military leave in the calculation of profit-sharing awards. Accordingly, the motion of AAG for summary judgment on count I will likewise be granted.

V

Finally, the parties have filed cross-motions for summary judgment as to plaintiffs' breach-of-contract claim under count II.  They dispute whether the AAG profit-sharing plan by its terms requires credit for military leave as compensation.

The profit-sharing plan calculates each participant's share of the plan's annual award based on his or her "Eligible Earnings."  The profit-sharing plan defines "Eligible Earnings" as "'Compensation,' as that term is used for purposes of employer contributions" under the employee's applicable 401(k) plan.  Thus, the court must determine whether the 401(k) plan for American pilots treats as compensation imputed income for time spent in military service.

The American 401(k) plan provides:  "'Compensation' means, unless a different definition expressly applies pursuant to Section 3.6," a series of types of employer contributions

-14-

listed under section 1.19.  Military leave is not listed in

section 1.19 or in the cross-referenced section 3.6.  The 401(k)

plan does, however, address "Qualified Military Service" in

section 3.5:

> Notwithstanding any other provision of the
> Plan to the contrary, contributions,
> benefits and service credit with respect to
> qualified military service shall be provided
> in accordance with [Internal Revenue Code]
> section 414(u).  For these purposes, during
> a period of qualified military service, an
> Eligible Employee will be considered to have
> received Compensation from the Employer at
> the same annual rate as the Eligible
> Employee's average rate of Compensation from
> the Employer during the 12 months
> immediately preceding the qualified military
> service (or, if shorter, the period of
> employment preceding the qualified military
> service).

Thus, the court must determine if the definition of

"compensation" under section 1.19 of the 401(k) plan is

exclusive or if section 3.5 adds military leave as a form of

compensation.

Texas law governs the contract.  Under Texas law,

construction of a contract is generally a question of law.  See,

e.g., Perthuis v. Baylor Miraca Genetics Labs., LLC, 645 S.W.3d

228, 235 (Tex. 2022).  "Only if ambiguity remains after applying

the pertinent rules of construction could there be a fact

question about intent."  Id. (internal quotation marks and

citation omitted).

-15-

Plaintiffs argue that section 3.5 of the 401(k) plan requires that time spent on military leave must be included in determining the profit-sharing plan awards.  Plaintiffs assert that section 3.5's treatment of military leave as compensation supersedes or at least modifies section 1.19's definition of "compensation" due to section 3.5's inclusion of the phrase "Notwithstanding any other provision of the Plan to the contrary."

AAG counters that section 1.19 and its cross-reference to section 3.6 provides the sole definition of "compensation" under American's 401(k) plan.  As mentioned above, section 1.19 does not include imputed income from time spent on military leave, and section 3.6 addresses a wholly unrelated matter.  AAG emphasizes that the clause of section 3.5 that requires it to credit military leave under the 401(k) plan is "[f]or . . . purposes" of complying with § 414(u) of the Internal Revenue Code.  This provision of the tax code is applicable only to pension plans and not to profit-sharing plans.

The court concludes that AAG has the better argument on the construction of the profit-sharing plan.  Section 3.5 of American's 401(k) plan expressly states that the reason for including imputed income during military leave is "for [the] purposes" of ensuring the 401(k) plan complies with section 414(u) of the Internal Revenue Code.  Section 414(u) of the

-16-

Internal Revenue Code is applicable only to pension plans.
This court has held that the AAG profit-sharing plan in issue
here is not a pension plan.  See Scanlan v. Am. Airlines Grp.,
Inc., 384 F. Supp. 3d 520, 531 (E.D. Pa. 2019).  Consequently
since the sole reason for including imputed income while on
military leave in the 401(k) plan is for tax purposes not
relevant to the profit-sharing plan, compensation under the
profit-sharing plan does not include imputed income while on
military leave.  The definition of compensation in section 1.9
of the pension plan governs without reference to section 3.5.

Regardless of this court's interpretation, Texas law
requires the court to defer to an employer's interpretation of
its benefit plan under an employment contract if the contract
vests the employer with discretion to interpret the plan:

> where there is an employer-funded plan which
> is made a part of the employment contract
> between the employer and the employee, and
> with provisions which make the employer's
> determination final, that if the employer
> determines that an employee is not entitled
> to benefits, the only way that determination
> can be attacked is by showing that there was
> bad faith or fraud in the employer's
> actions.

Macy v. Waste Mgmt., Inc., 294 S.W.3d 638, 648 (Tex. App. 2009)
(citation omitted).

The AAG profit-sharing plan vests "complete discretion
and authority to administer the Plan and to control its

-17-

operation" in the Compensation Committee of the Board of Directors of AAG ("Compensation Committee").  This discretion and authority includes "the power to determine which Employees shall be designated Participants in the Plan [and] . . . to interpret the Plan and the profit-sharing awards."  The plan also provides:  "Any determination, decision or action of the Committee in connection with the construction, interpretation, administration or application of the Plan shall be final, conclusive, and binding upon all persons, and shall be given the maximum deference permitted by law."  There is no dispute that the plan has been interpreted and awards paid from the beginning in a manner that credits as compensation only W-2 wage income and has not included imputed income while on military leave in calculating awards.

The evidence before the court cannot be read as demonstrating anything other than that it was the Compensation Committee that made these determinations.  While AAG also argues that AAG designated American's officers to interpret and administer the plan, there is no evidence called to the court's attention that AAG did so.  The person to whom AAG makes reference is Kim Wicker, the Director of Compensation of America Airlines.  She testified that she simply oversaw the calculations of the awards for each recipient.  There is nothing in the record that she engaged in any interpretation of the

plan.  According to Wicker, an audit report is submitted to the Compensation Committee annually before awards are disbursed. She waits until after the report has been submitted and the Compensation Committee has met before making any payouts.  She is not identified as an officer of either AAG or American, and her involvement can only be described as ministerial.

Plaintiffs further argue that there is no record that the Compensation Committee ever adopted a separate written legal interpretation of the definition of compensation under the AAG profit sharing plan.  This argument misses the mark.  The law makes no such requirement.  All that is required is an employer's determination about what the plan means.  Actions, not words, are decisive.  See Macy, 294 S.W. 3d at 648.

The AAG Compensation Committee has made its determination, and there is no evidence that it has acted in bad faith or engaged in fraud.  The Compensation Committee's construction of term compensation is reasonable and has been its construction from the beginning.  At the inception of the plan, the pilots' union was informed that plan awards would be calculated without including imputed revenue that pilots would have received had they not been on military leave.  One pilots' union representative testified that prior iterations of AAG profit-sharing plans have historically credited only W-2 income. Even if the court is incorrect in its interpretation of the

-19-

definition of compensation in the profit-sharing plan, it must defer under Texas law to the good faith determination of AAG's Compensation Committee that only W-2 income is included in calculating profit-sharing awards.

Plaintiffs have cited Mauldin v. Worldcom, Inc., 263 F.3d 1205 (10th Cir. 2001) to support its argument that AAG under Texas law did not properly delegate the authority to anyone to interpret the profit-sharing plan and did not ratify the unauthorized acts of the person who did interpret it.  This case is inapposite.  There, plaintiff sued his former employer over denial of benefits under an employment stock option agreement.  The company's board of directors had delegated to its compensation committee the interpretation and administration of the agreement.  It was undisputed that the vice president of the defendant-company, who was not a compensation committee member, made the decision to deny the plaintiff's claim that his benefits had vested under that stock option agreement.  The board thereafter passed a resolution retroactively adopting all actions taken by the vice president.  The resolution, however, did not specifically reference the employee's claim, the vice president's decision to deny the employee's claim under the stock option agreement, or his reasons for denying the claim. Applying Texas law, the Tenth Circuit held that this resolution was insufficient to support ratification of the vice president's

-20-

unauthorized interpretation of the agreement.  The Court reasoned that the board did not have before it sufficient information to make an informed decision.

Here, in contrast, there is no evidence that anyone other than the members of the AAG Compensation Committee made the determination as to how the profit-sharing plan should be interpreted.  Wicker did not make the decision as to what compensation meant.  Wicker's position and role were far less consequential than the position and role of the vice president in Mauldin who had made the critical decision adverse to the plaintiff there.

The motion of plaintiffs for summary judgment as to their breach-of-contract claim under count II of their second amended complaint will be denied.[4]  Defendants' motion for summary judgment as to plaintiffs' breach-of-contract claim will be granted.

---

4.  Plaintiffs have also moved for summary judgment on the affirmative defenses of laches, estoppel, and waiver, which defendants asserted in their answer.  Defendants stated in their opposition to plaintiffs' motion that they do not intend to pursue any of these defenses.  In light of the court's granting of summary judgment on all counts in favor of defendants, the motion of plaintiffs for summary judgment as to defendants' affirmative defenses of laches, estoppel, and waiver will be denied as moot.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAMES P. SCANLAN, on behalf of himself and all others similarly situated,<br><br>              Plaintiff,<br><br>-vs.-<br><br>AMERICAN AIRLINES GROUP INC., and AMERICAN AIRLINES, INC.,<br><br>              Defendants. | Civil Action No. 2:18-cv-04040-HB<br><br>**JOINT STIPULATION REGARDING DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS** |

**RECITALS**

A.      On July 29, 2022, Defendants filed their Motion for Summary Judgment, and in addition to their Memorandum of Law (ECF No. 173-1), filed a Statement of Undisputed Material Facts (ECF No. 173-2).

B.      Plaintiffs contend that Defendants' 14-page Statement of Undisputed Facts that Defendants filed with their Motion for Summary judgment was not permitted by the Local Rules or Judge Bartle's policies and procedures, that it effectively expands Defendants' briefing beyond the 25 pages permitted by Judge Bartle for a supporting brief, and Defendants' citations to the Statement of Undisputed Material Facts in lieu of record citations do not comply with Judge Bartle's requirement that all factual assertions in a brief be supported by a pinpoint citation "to the record."

C.      Defendants' position is that they have complied with the Local Rules and Judge Bartle's policies and procedures (including supporting all of their factual assertions with a pinpoint citation to the record), and that the submission of the Statement of Undisputed Material Facts was proper in all respects.

D.      The parties have conferred and desire to enter this stipulation in order to resolve this dispute without Court intervention.

## STIPULATIONS

Subject to approval by the Court, the Parties stipulate and agree as follows:

1.      Plaintiff and the Class is not and shall not be required to file any document separately responding to Defendants' Statement of Undisputed Material Facts.

2.      The absence of a separate response to Defendants' Statement of Undisputed Material Facts shall not constitute or be deemed an admission of any fact asserted in Defendants' Statement of Undisputed Material Facts, whether on summary judgment or at trial.

3.      Plaintiff will not seek to have the Court strike Defendants Statement of Undisputed Material Facts or seek any other relief in connection with its position described in the recitals to this Stipulation.


Dated: August 25, 2022                          Respectfully submitted,


/s/ Colin M. Downes                              /s/ M. Tristan Morales
R. Joseph Barton (admitted pro hac vice)         Mark W. Robertson (admitted pro hac vice)
Colin M. Downes (admitted pro hac vice)          Anton Metlitsky (admitted pro hac vice)
BLOCK & LEVITON LLP                              O'MELVENY & MYERS LLP
1633 Connecticut Ave., NW, Suite 200             7 Times Square
Washington D.C. 20009                            New York, NY 10036
Telephone: (202) 734-7046                        Telephone: (212) 326-2000
Fax:     (617) 507-6020                          Facsimile: (212) 326-2061
Email: jbarton@blockesq.com                      Email: mrobertson@omm.com
Email: colin@blockesq.com                        Email: ametlitsky@omm.com

Peter Romer-Friedman                             M. Tristan Morales (admitted pro hac vice)
(admitted pro hac vice)                          O'MELVENY & MYERS LLP
Gupta Wessler PLLC                               1625 Eye Street NW
2001 K Street, NW,                               Washington, DC 20006
North Tower, Suite 850                           Telephone: (202) 383-5300
Washington, DC 20006                             Facsimile: (202) 383-5414
(202) 888-1741                                   Email: tmorales@omm.com

2

Email: peter@guptawessler.com

Matthew Z. Crotty (admitted pro hac vice)
CROTTY & SON LAW FIRM, PLLC
905 W. Riverside Ave.
Suite 404
Spokane, WA 99201
Tel: (509) 850-7011
Email: matt@crottyandson.com

Thomas G. Jarrard (admitted pro hac vice)
LAW OFFICE OF
THOMAS G. JARRARD, PLLC
1020 N. Washington Street
Spokane, WA 99201
Tel: (425) 239-7290
Email: Tjarrard@att.net

Adam Garner
THE GARNER FIRM LTD.
1617 John F. Kennedy Blvd., Suite 550
Philadelphia PA 19103
Telephone: (215) 645-5955
Facsimile: (215) 645-5960
Email: adam@garnerltd.com

*Attorneys for Plaintiff & the Class*

Jason Zarrow (admitted pro hac vice)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-8369
Facsimile: (213) 430-6407
Email: jzarrow@omm.com

Molly E. Flynn
FAEGRE DRINKER BIDDLE & REATH
LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
Telephone: (215) 988-2700
Email: molly.flynn@dbr.com

*Attorneys for Defendants*

## ORDER

IT IS SO ORDERED by the Court this 29th day of August 2022.

/s/ Harvey Bartle III
_____

Hon. Harvey Bartle III
United States District Judge

3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
JAMES P. SCANLAN on his own      :        CIVIL ACTION
behalf and all others similarly  :
situated, et al.                 :
                                 :
              v.                 :
                                 :
AMERICAN AIRLINES GROUP, INC.,   :
et al.                           :        NO. 18-4040
```

ORDER

AND NOW, this  6th  day of April, 2022, for the reasons set forth in the foregoing memorandum, it is hereby ORDERED that:

(1)  The motion of defendants American Airlines, Inc. ("American") and American Airlines Group, Inc. ("AAG") to amend the class definition (Doc. #136) is GRANTED.

(2)  The class definition as set forth in this court's October 8, 2021 memorandum and order (Docs. #124-125) is VACATED.  A class of American Airlines, Inc. pilots is certified as follows:

> (a)  For Count I, the court certifies a subclass under Rule 23(b)(2) consisting of current American Airlines, Inc. pilots who presently serve in the military and who:  participate at some point in the AAG Global Profit Sharing Plan since its inception on January 1, 2016 through the date of judgment in this action; are employed in the

United States or are a citizen or national or
permanent resident of the United States and
employed in a foreign country while participants
in the Plan; took or take short-term military
leave in a year during which they were entitled
to receive an award under the Plan; and were not
credited or imputed earnings for this short-term
military leave.

(b)   Also for Count I, the court certifies a subclass
under Rule 23(b)(3) consisting of former pilots
of American Airlines, Inc. or pilots of American
who are former members of the military who:
participated at some point in the AAG Global
Profit Sharing Plan since its inception on
January 1, 2016 through the date of judgment in
this action; were employed in the United States
or were a citizen or national or permanent
resident of the United States and employed in a
foreign country while participants in the Plan;
took short-term military leave in a year during
which they were entitled to receive an award
under the Plan; and were not credited or imputed
earnings for this short-term military leave.

(c)   For Count II, the court certifies a subclass
under Rule 23(b)(2) consisting of those current
American Airlines, Inc. pilots who presently
serve in the military and who:  participate at
some point from January 1, 2016 through the date
of judgment in this action in the AAG Global
Profit Sharing Plan as well as the American
Airlines, Inc. 401(k) Plan for Pilots and are
subject to taxation in the United States; are
employed in the United States or are a citizen or
national or permanent resident of the United
States and employed in a foreign country while
participants in the AAG Global Profit Sharing
Plan; took or take short-term military leave in a
year during which they were entitled to receive
an award under the AAG Global Profit Sharing
Plan; and were not credited or imputed earnings
for this short-term military leave.

(d)   Also for Count II, the court certifies a subclass
under Rule 23(b)(3) consisting of those former
American Airlines, Inc. pilots or American pilots
formerly in the military who:  participated at
some point from January 1, 2016 through the date
of judgment in this action in the AAG Global

3

Profit Sharing Plan as well as the American Airlines, Inc. 401(k) Plan for Pilots and are subject to taxation in the United States; were employed in the United States or were a citizen or national or permanent resident of the United States and employed in a foreign country while participants in the AAG Global Profit Sharing Plan; took short-term military leave in a year during which they were entitled to receive an award under the AAG Global Profit Sharing Plan; and were not credited or imputed earnings for this short-term military leave.

(e)     For Count III, the court certifies a subclass under Rule 23(b)(2) consisting of all current American Airlines, Inc. pilots who presently serve in the military and took or take short-term military leave while employed at American at any time from January 1, 2013 through the date of judgment in this action and were not paid for that leave equal to what they would have received had they taken leave for jury duty or bereavement.

(f)     Also for Count III, the court certifies a subclass under Rule 23(b)(3) consisting of all

former American Airlines, Inc. pilots or American pilots formerly in the military who took short-term military leave while employed at American at any time from January 1, 2013 through the date of judgment in this action and were not paid for that leave equal to what they would have received had they taken leave for jury duty or bereavement

(3)  Excluded from the class outlined above are those American Airlines, Inc. pilots responsible for administering the AAG Global Profit Sharing Plan and those American pilots who reached individual settlements with or judgments against AAG regarding inadequate profit sharing or against American for failure to compensate short-term military leave under the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301 et seq.

BY THE COURT:

/s/ Harvey Bartle III
_____
                          J.

5

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
JAMES P. SCANLAN on his own      :      CIVIL ACTION
behalf and all others similarly  :
situated, et al.                 :
                                 :
            v.                   :
                                 :
AMERICAN AIRLINES GROUP, INC.,   :      NO. 18-4040
et al.
```

MEMORANDUM

Bartle, J.                                      April 6, 2022

  Plaintiff James P. Scanlan, a commercial airline pilot
and a retired Major General in the United States Air Force
Reserve, brought a class action against defendants American
Airlines Group, Inc. ("AAG") and American Airlines, Inc.
("American") pursuant to the Uniformed Services Employment and
Reemployment Rights Act ("USERRA"), 38 U.S.C. §§ 4301 et seq.,
and for breach of contract.  Carla Riner, a commercial airline
pilot and a Brigadier General in the Delaware Air National
Guard, later joined Scanlan as a class representative.
Plaintiffs assert that they and the class of American pilots
they represent have not received the compensation or benefits
due to them under the statute and by contract and thus seek
declaratory, injunctive, and monetary relief.

  On October 8, 2021, this court granted class
certification pursuant to Rule 23 of the Federal Rules of Civil

Procedure.  This court found that a class of current and former American pilots met the requirements for certification under Rule 23(a) and (b)(2), and granted certification for three subclasses, one for each count of the second amended complaint.

Before the court is the motion of defendants to alter or amend the class definition to exclude from the certified class those pilots who have retired from the military or American.

I

As more fully explained in the court's October 8, 2021 memorandum granting class certification, this case arises from the fact that American, AAG's wholly owned subsidiary, does not compensate its pilots for leave taken to fulfill their military commitments no matter how long or short that leave is.  American does, however, pay employees who take leave for jury duty or bereavement.  Those employees who take leave for jury duty either receive their full regular pay or the difference between their regular compensation and their pay as jurors.  The collective bargaining agreement ("CBA") between American and the Allied Pilots Association is silent as to bereavement leave, but American's policy is to provide up to three days of paid bereavement leave in the event of a death of an immediate family member.

2

Meanwhile, American's parent company, AAG, adopted and implemented the American Airlines Group, Inc. Global Profit Sharing Plan ("the Plan") effective January 1, 2016 to share a portion of its profits with employees of American and AAG's other subsidiary airlines who are participants in the Plan.  AAG calculates each participant's individual award by dividing five percent of AAG's pre-tax earnings by the aggregate amount of all participants' earnings and multiplying this resulting value by an individual participant's "eligible earnings."  Earnings from paid leave are credited to the Plan participants for purposes of this allocation.

AAG does not credit short-term military leave[1] toward a participant's eligible earnings under the Plan when employees are not paid for such leave.  However, it does credit the leave and impute income under the Plan for employees when they take leave for jury duty or bereavement.  As a result, plaintiffs and other similarly situated employees who have taken military leave received lower profit-sharing awards than they would have received if credit had been given for such leave.  This

---

1.   For purposes of this action, "short-term military leave" is defined as consecutive leave that is sixteen days or fewer as explained by defendants' corporate representative, Todd Jewett, who testified that after sixteen days an employee is removed from the payroll and reinstated when back from leave. Plaintiffs agree that military leave that is longer than sixteen consecutive days is not short-term, and the employee would not be paid for any of this leave.

3

situation will continue if and when profits are distributed among Plan participants in the future.

II

Plaintiffs bring their claims, in part, under USERRA, which is one of a series of laws that Congress enacted to protect the rights of military service members who take leaves of absence from their employers to perform military service. Travers v. Fed. Express Corp., 8 F.4th 198 (3d Cir. 2021). USERRA seeks to treat those employees in non-career military service equally to employees not engaged in military service.

Plaintiffs allege in Count I of the second amended complaint that AAG's policy of not crediting short-term military leave to participants' eligible earnings for purposes of its Global Profit Sharing Plan but doing so for jury duty and bereavement leave violates USERRA, specifically § 4316(b)(1).[2] Plaintiffs also allege a violation of this provision in Count III based on American's failure to pay its employees for short-term military leave while paying its employees for leave taken for jury duty or bereavement. Plaintiffs also bring a

---

2.    38 U.S.C. § 4316(b)(1) provides, in part, that "a person who is absent from a position of employment by reason of service in the uniformed services shall be . . . (A) deemed to be on furlough or leave of absence while performing such service; and (B) entitled to such rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay."

claim against AAG in Count II for breach of contract under state law based on the language of the AAG Global Profit Sharing Plan. Plaintiffs allege that AAG is violating the terms of the Plan by not including credit or imputed income for American pilots' short-term military service.

On October 8, 2021, this court granted class certification for current and former American pilots with a subclass for each count of the second amended complaint.  First, this court certified a subclass with regard to Count I that consists of current and former American Airlines, Inc. pilots who:  participated at some point in the AAG Global Profit Sharing Plan since its inception on January 1, 2016; were employed in the United States or were a citizen or national or permanent resident of the United States and employed in a foreign country while participants in the Plan; took short-term military leave in a year during which they were entitled to receive an award under the Plan; and were not credited or imputed earnings for this short-term military leave.

Second, this court certified a subclass for Count II of the second amended complaint for those American pilots included in the subclass of Count I who, from January 1, 2016 through the date of judgment in this action, are or were eligible to participate in the American Airlines, Inc. 401(k) Plan for pilots and subject to taxation in the United States.

Third, a subclass was certified with regard to Count III of all current and former American Airlines, Inc. pilots who took short-term military leave while employed at American at any time from January 1, 2013 through the date of judgment in this action and were not paid for that leave equal to what they would have received had they taken leave for jury duty or bereavement.[3]

### III

As stated in greater detail in the October 8, 2021 memorandum, the class of current and former American pilots was certified under Rule 23(b)(2).  Rule 23(b)(2), often called the "injunctive relief" class, provides for certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) applies to actions in which "the relief sought must perforce affect the entire class at once."  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 361-62 (2011).

Since this court granted class certification pursuant to Rule 23(b)(2), defendants have learned that Scanlan has

---

3.   This court excluded from the certified class any American pilots responsible for administering the AAG Global Profit Sharing Plan and former or current American pilots who have obtained individual judgments against or settlements with AAG or American in USERRA profit sharing actions for failure to credit or compensate short-term military leave.

retired from the military and will therefore not be taking any short-term military leave while a pilot at American in the future.[4]  He will thus not benefit from any prospective relief in the form of an injunction or declaration.

Defendants do not contest that under current precedent in this Circuit Scanlan can remain as a class representative even without a live claim for prospective relief.  See Gayle v. Warden Monmouth Cty. Corr. Inst., 838 F.3d 297, 305 n.10 (3d Cir. 2016).  In addition, Carla Riner, a current member of the military and pilot at American, has recently been added as a class representative.  As an active pilot in both the military and at American, Riner does have a live claim for prospective injunctive and declaratory relief.

Defendants now seek to amend the class certification to exclude those pilots, like Scanlan, who have retired from the military or American.  For the first time defendants belatedly raise the issue of those retired class members who will not benefit from either injunctive or declaratory relief because they will not take any military leave in the future and

---

4.   Scanlan retired from the military effective October 1, 2020 which was after the motion for class certification was filed on March 3, 2020.  Plaintiffs, however, failed to disclose to this court or defendants at the time of oral argument on the motion for class certification that Scanlan had retired from the military.

therefore should not be a part of an injunctive class under Rule 23(b)(2).

Rule 23(c)(1)(C) provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Our Court of Appeals has explained that "[d]istrict courts should treat renewed motions for class certification as they would initial motions under Rule 23." Hargrove v. Sleepy's LLC, 974 F.3d 467, 470 (3d Cir. 2020). Motions to amend class certification should not be treated like motions for reconsideration and subject to a heightened standard. Id.

In response to the motion of defendants to amend the class certification, plaintiffs counter, in part, that a subclass of retired pilots who no longer work for American or who are no longer in the military should instead be certified under Rule 23(b)(3). Defendants do not object.

Before a class can be certified under Rule 23(b), it first must meet the requirements set forth in Rule 23(a). Rule 23(a) provides that:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> > (1) the class is so numerous that joinder of all members is impracticable;

   (2) there are questions of law or
     fact common to the class;

   (3) the claims or defenses of the
     representative parties are
     typical of the claims or
     defenses of the class; and

   (4) the representative parties
     will fairly and adequately
     protect the interests of the
     class.

Fed. R. Civ. P. 23(a).  The elements of this four-part test are commonly referred to as numerosity, commonality, typicality, and adequacy of representation.  See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613 (1997).

   This court in its prior memorandum granting class certification conducted an extensive analysis of these four elements and found that a class of both current and former American pilots is proper under Rule 23(a) as well.  There is nothing before the court to suggest that amending the previous class definition to include a subclass of solely retired pilots under Rule 23(b)(3) would not also meet the elements of Rule 23(a).  The analysis for a subclass of retired pilots is unchanged from that for a class of current and former pilots except the question of numerosity.  To that point, defendants' corporate representative, Todd Jewett, certifies that American's records show that there are approximately fifty-seven pilots who took military leave of sixteen days or fewer during the proposed

class times and are no longer employed at American.  There may also be additional class members, like Scanlan, who have retired from the military but continue to work at American.  These numbers are sufficient to establish numerosity under Rule 23(a)(1).

The remainder of the Rule 23(a) analysis is unchanged since this court's October 8, 2021 memorandum.

The court now turns to whether a subclass of retired pilots meets the requirements of Rule 23(b)(3).  This provision is often referred to as the "money damages class" and allows for certification when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods of fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  When making such findings, courts should consider:  "(A) the class members' interests in individually controlling the prosecution or defense of separate actions"; "(B) the extent and nature of any litigation concerning the controversy already begun by or against class members"; "(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and "(D) the likely difficulties in managing a class action."  Id.

10

Rule 23(b)(3) "allows class certification in a much wider set of circumstances but with greater procedural protections," that is notice to the potential class members and an opportunity for potential members to opt-out from the class. Wal-Mart, 564 U.S. at 362.  The Supreme Court has explained that "the (b)(3) class is not mandatory; class members are entitled to receive 'the best notice that is practicable under the circumstances' and to withdraw from the class at their option." Id. (quoting Fed. R. Civ. P. 23(c)(2)(B)).  In addition, because this type of class involves individualized claims for money, "(b)(3) requires the judge to make findings about predominance and superiority before allowing the class."  Id. at 362-63.

A Rule 23(b)(2) class has a "superior res judicata effect" and is not subject to the same procedural hurdles of a (b)(3) class, so a court should first consider whether certification of a class is proper pursuant to (b)(2) before turning to certification under (b)(3).  Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 119 (3d Cir. 1990).  As this court certified the class pursuant to Rule 23(b)(2), we have not yet decided the question of whether certification is also appropriate under Rule 23(b)(3).  A court may certify the equitable portion of a class under (b)(2) and the damages portion under (b)(3).  See Wilson v. Cty. of Gloucester, 256

11

F.R.D. 479, 490-91 (D.N.J. 2009) (citing Bolin v. Sears Roebuck
& Co., 231 F.3d 970, 976 (5th Cir. 2000)).

      In this action, the injunctive and declaratory relief
that plaintiffs seek is prospective in nature and therefore will
not benefit those class members, like Scanlan, who have retired
from either American or the military and will therefore no
longer take short-term military leave with American.  However,
should plaintiffs succeed in this action, those retired pilots
could still be entitled to monetary relief for the short-term
military leave taken during the class period prior to their
retirement.  The court turns to the requirements under
Rule 23(b)(3).

      For Scanlan and other retired pilots, the common
question of law is whether American and AAG violated USERRA by
failing to compensate and credit these pilots for taking
short-term military leave but compensating and crediting time
taken for jury duty or bereavement leave.  This question
predominates over any individual questions pertaining to the
class.  While the exact amount each retired pilot would be
entitled to receive is individualized, it can readily be
determined by a formula computing the amount of short-term
military leave each retired pilot took during the class period.
There are no other individualized issues before the court that
will predominate over this common question.

Moreover, a subclass of retired pilots in this action would be superior to individual claims for monetary damages. Plaintiffs seek to have short-term military leave compensated and credited the same as other forms of short-term leave. There is nothing to indicate that individual prosecution of these claims would be more beneficial to retired pilots. In addition, litigation on this issue is already ongoing. A class of American pilots, including former pilots, has already been certified, discovery has commenced, and subpoenas for military records from the Department of Defense have already been issued.

It is therefore beneficial to retired pilots to continue to be included in this class. It is also more economical and efficient to both active and retired pilots, as well as the court, to certify this subclass as part of the present litigation. Finally, there are no significant practical difficulties in including the retired pilots in a subclass certified under (b)(3). The current pilots can proceed in this action under (b)(2) and the retired pilots under (b)(3). See Wilson, 256 F.R.D. at 490-91.

A subclass of retired pilots therefore meets the predominance and superiority requirements of Rule 23(b)(3).

IV

The court thus amends its prior certification of a class of current and former American pilots to carve out a

13

subclass under Rule 23(b)(3) on each count.  These subclasses will consist of American pilots who have retired from either the military or American and therefore only seek monetary relief as they will not benefit from prospective injunctive or declaratory relief.  For those current American pilots still active in both the military and at American their certification pursuant to Rule 23(b)(2) remains unchanged.

Common questions of law or fact predominate for a subclass of retired pilots.  In addition, class adjudication is superior to alternative methods.  Certification of a subclass of retired pilots under Rule 23(b)(3) is therefore the best method of proceeding as a class.

The court will grant the motion of defendants to amend the class definition.  The class of American pilots will be subdivided as follows.

First, this court certifies a subclass under Rule 23(b)(2) with regard to Count I for AAG's alleged violation of § 4316 as relates to the AAG Global Profit Sharing Plan. This subclass will consist of current American Airlines, Inc. pilots who presently serve in the military and who:  participate at some point in the AAG Global Profit Sharing Plan since its inception on January 1, 2016 through the date of judgment in this action; are employed in the United States or are a citizen or national or permanent resident of the United States and

14

employed in a foreign country while participants in the Plan;
took or take short-term military leave in a year during which
they were entitled to receive an award under the Plan; and were
not credited or imputed earnings for this short-term military
leave.

Second, this court certifies a subclass under
Rule 23(b)(3) with regard to Count I that will consist of former
pilots of American Airlines, Inc. or pilots of American who are
former members of the military who:  participated at some point
in the AAG Global Profit Sharing Plan since its inception on
January 1, 2016 through the date of judgment in this action;
were employed in the United States or were a citizen or national
or permanent resident of the United States and employed in a
foreign country while participants in the Plan; took short-term
military leave in a year during which they were entitled to
receive an award under the Plan; and were not credited or
imputed earnings for this short-term military leave.

Third, this court certifies a subclass under
Rule 23(b)(2) with regard to Count II for AAG's alleged breach
of contract of those current American Airlines, Inc. pilots who
presently serve in the military and who:  participate at some
point from January 1, 2016 through the date of judgment in this
action in the AAG Global Profit Sharing Plan as well as the
American Airlines, Inc. 401(k) Plan for Pilots and are subject

15

to taxation in the United States; are employed in the United
States or are a citizen or national or permanent resident of the
United States and employed in a foreign country while
participants in the AAG Global Profit Sharing Plan; took or take
short-term military leave in a year during which they were
entitled to receive an award under the AAG Global Profit Sharing
Plan; and were not credited or imputed earnings for this short-
term military leave.

Fourth, this court certifies a subclass under Rule
23(b)(3) with regard to Count II of those former American
Airlines, Inc. pilots or American pilots formerly in the
military who:  participated at some point from January 1, 2016
through the date of judgment in this action in the AAG Global
Profit Sharing Plan as well as the American Airlines, Inc.
401(k) Plan for Pilots and are subject to taxation in the United
States; were employed in the United States or were a citizen or
national or permanent resident of the United States and employed
in a foreign country while participants in the AAG Global Profit
Sharing Plan; took short-term military leave in a year during
which they were entitled to receive an award under the AAG
Global Profit Sharing Plan; and were not credited or imputed
earnings for this short-term military leave.

Fifth, the court certifies a subclass under
Rule 23(b)(2) with regard to Count III against American for its

16

alleged violation of § 4316 consisting of all current American

Airlines, Inc. pilots who presently serve in the military and

took or take short-term military leave while employed at

American at any time from January 1, 2013 through the date of

judgment in this action and were not paid for that leave equal

to what they would have received had they taken leave for jury

duty or bereavement.

Sixth, the court certifies a subclass under

Rule 23(b)(3) with regard to Count III of all former American

Airlines, Inc. pilots or American pilots formerly in the

military who took short-term military leave while employed at

American at any time from January 1, 2013 through the date of

judgment in this action and were not paid for that leave equal

to what they would have received had they taken leave for jury

duty or bereavement.[5]

---

5.   Excluded from the certified class are any American pilots
responsible for administering the AAG Global Profit Sharing Plan
and former or current American pilots who have obtained
individual judgments against or settlements with AAG or American
in USERRA profit sharing actions for failure to credit or
compensate short-term military leave.

17

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES P. SCANLAN on his own          :          CIVIL ACTION
behalf and all others similarly :
situated                             :
                                     :
               v.                    :
                                     :
AMERICAN AIRLINES GROUP, INC.,  :          NO. 18-4040

ORDER

AND NOW, this  8th  day of October, 2021, for the
reasons set forth in the foregoing memorandum, it is hereby
ORDERED that:

(1)  The motion of plaintiff to certify a class (Doc. #82)
is GRANTED in part and DENIED in part.

(2)  Plaintiff, having met the requirements set forth in
Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure
may proceed as a class representative on behalf of a class of
current and former pilots at American Airlines, Inc. with the
following subclasses for each count of the second amended
complaint:

> (a)  For Count I, the court certifies a subclass of
> current and former American Airlines, Inc. pilots who:
> participated at some point in the American Airlines
> Group, Inc. Global Profit Sharing Plan since its
> inception on January 1, 2016; while participants in
> the Global Profit Sharing Plan, were employed in the

United States or were a citizen or national or permanent resident of the United States and employed in a foreign country; took short-term military leave, that is sixteen consecutive days or fewer, in a year during which they were entitled to receive an award under the Global Profit Sharing Plan; and were not credited or imputed earnings for such short-term military leave.

(b)  For Count II, the court certifies a subclass of those American Airlines, Inc. pilots included in the subclass in Count I who, from January 1, 2016 through the date of judgment in this action, are or were eligible to participate in the American Airlines, Inc. 401(k) Plan for Pilots and subject to taxation in the United States.

(c)  For Count III, the court certifies a subclass of current and former American Airlines, Inc. pilots who took short-term military leave, that is sixteen consecutive days or fewer, while employees of American Airlines, Inc. at any point from January 1, 2013 through the date of judgment in this action and were not paid for that leave equal to what they would have received had they taken leave for jury duty or bereavement.

(3)  Excluded from the class outlined above are those American Airlines, Inc. pilots who are responsible for administering the American Airlines Group, Inc. Global Profit Sharing Plan and those American Airlines, Inc. pilots who reached individual settlements with or judgments against American Airlines Group, Inc. regarding inadequate profit sharing or against American Airlines, Inc. for failure to compensate short-term military leave under the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301 et seq.

BY THE COURT:

/s/ Harvey Bartle III

_____

                                                    J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES P. SCANLAN on his own      :        CIVIL ACTION
behalf and all others similarly :
situated                        :
                                :
          v.                    :
                                :
AMERICAN AIRLINES GROUP, INC.,   :        NO. 18-4040
et al.

<u>MEMORANDUM</u>

Bartle, J.                                    October 8, 2021

        Plaintiff James P. Scanlan, a commercial airline pilot
and a Major General in the United States Air Force Reserve, has
sued defendants American Airlines Group, Inc. ("AAG") and
American Airlines, Inc. ("American"), his employer and AAG's
wholly owned subsidiary, in this putative class action under the
Uniformed Services Employment and Reemployment Rights Act
("USERRA"), 38 U.S.C. §§ 4301 et seq., and for breach of
contract.  In essence, plaintiff claims that he and the classes
he seeks to represent have not received the compensation or
benefits due to them under the statute and by contract.
Plaintiff seeks declaratory, injunctive, and monetary relief.
Before the court is the plaintiff's motion for class
certification pursuant to Rule 23 of the Federal Rules of Civil
Procedure.

I

Plaintiff has worked as a pilot for American since 1999 and has participated in AAG's Global Profit Sharing Plan since 2016.  Throughout his employment with American and while he has participated in the Plan, plaintiff has taken periods of leave to perform his military service in the reserves.  For instance, plaintiff took leave for military service 128 days in 2016 and 132 days in 2017.  Most of these periods of leave were for only a few days at a time although some extended up to fourteen days.

American does not pay its pilots when they take military leave no matter how long or short that leave is.  Likewise, with several exceptions, it does not pay its other employees when they take such leave.[1]  It does, however, pay employees who take leave for jury duty or bereavement.  American employees who take leave for jury duty either receive their full regular pay or the difference between their regular compensation

---

[1]   Plaintiff concedes that some American employees are paid for short-term military leave and that those employees have been excluded from the proposed classes.  While plaintiff's motion for class certification does not reference these exceptions in the class definitions, plaintiff's second amended complaint states that the following are excluded from the proposed classes and subclass:  (a) employees responsible for administering the Plan; (b) employees who reached settlements or judgments against AAG in individual USERRA actions; and (c) employees covered by existing agreements representing certain passenger service employees, fleet service employees, and mechanical employees.

and their pay as jurors.  The collective bargaining agreement ("CBA") between American and the Allied Pilots Association on behalf of American pilots is silent as to bereavement leave. According to defendants' corporate representative Todd Jewett, the company policy applies when the CBA is silent.  American's policy is to provide up to three days of paid bereavement leave in the event of a death of an immediate family member.

American's parent company, AAG, is also the parent company of Envoy Air, Inc., Piedmont Airlines, Inc., and PSA Airlines, Inc.  AAG adopted and implemented the Profit Sharing Plan effective January 1, 2016 to share a portion of its profits with employees of American and its subsidiary airlines who are participants in the Plan.  Employees who are eligible to participate in the Plan include pilots, flight attendants, mechanics, and passenger service employees as well as non-union management and non-management employees.  Participants are categorized by different so-called "work groups" based on their position and union representation.

Under the Plan, AAG pays profit sharing awards each spring to the Plan participants that total five percent of AAG's pre-tax earnings from the preceding year.  Participants receive their award as a lump sum cash payment and may contribute all or part of the award to their retirement plans.  AAG calculates each participant's individual award by dividing the five percent

3

of AAG's pre-tax earnings by the aggregate amount of all
participants' earnings and multiplying this resulting value by
an individual participant's "eligible earnings."  Eligible
earnings are based on the participant's "compensation" as
defined by his or her applicable 401(k) plan.  Earnings from
paid leave are credited to the Plan participants for purposes of
this allocation.

AAG may modify or terminate the Plan at any time.
Profit sharing is not guaranteed.  AAG has not had profits to
distribute since 2019.

AAG does not credit short-term military leave[2] toward a
participant's eligible earnings under the Plan when employees
are not paid for such leave.  However, it does credit the leave
and impute income under the Plan for employees when they take
leave for jury duty or bereavement.  As a result, plaintiff and
other similarly situated employees who have taken military leave
received lower profit sharing awards than they would have
received if credit had been given for such leave.  This

---

2.   For purposes of this action, "short-term military leave" is
defined as consecutive leave that is sixteen days or fewer as
explained by defendants' corporate representative who testified
that after sixteen days an employee is removed from the payroll
and reinstated when back from leave.  Plaintiff agrees that
military leave that is longer than sixteen consecutive days is
not short-term, and the employee would not be paid for any of
this leave.

4

situation will continue if and when profits are distributed among Plan participants in the future.

II

USERRA is one of a series of laws that Congress has enacted to protect the rights of military service members who take leaves of absence from their employers to perform military service.  Crews v. City of Mt. Vernon, 567 F.3d 860, 864 (7th Cir. 2009); Rogers v. City of San Antonio, 392 F.3d 758, 762 (5th Cir. 2004).  Congress stated in the first section of USERRA that its purposes, among others, are "to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages of civilian careers and employment which can result from such service" and "to prohibit discrimination against persons because of their service in the uniformed services."  38 U.S.C. §§ 4301(a)(1) and (a)(3); see also Carroll v. Del. River Port Auth., 843 F.3d 129, 131 (3d Cir. 2016).  As our Court of Appeals has explained, "we must construe USERRA's provisions liberally, in favor of the service member."  Gordon v. Wawa, Inc., 388 F.3d 78, 81 (3d Cir. 2004).  USERRA seeks to treat those employees in non-career military service equally with employees not engaged in military service.

Plaintiff alleges in Count I of the second amended complaint that AAG's policy of not crediting short-term military leave to participants' eligible earnings for purposes of its

5

Profit Sharing Plan but doing so for jury duty and bereavement leave violates USERRA, specifically § 4316(b)(1).[3]  Plaintiff also alleges a violation of § 4316(b)(1) in Count III based on American's failure to pay its employees for short-term military leave while paying its employees for leave taken for jury duty or bereavement.  In denying defendants' earlier motion to dismiss Counts I and III, this court explained in its June 18, 2019 Memorandum and Order that compensation for short-term military leave is a right and benefit within the meaning of this statute.  See Scanlan v. Am. Airlines Grp., 384 F. Supp. 3d 520 (E.D. Pa. 2019).  Our Court of Appeals has recently affirmed this holding in a similar case.  See Travers v. Fed. Express Corp., 8 F. 4th 198 (3d Cir. 2021).

Plaintiff also brings a claim against AAG in Count II for breach of contract based on the language of the AAG Profit Sharing Plan.  The Plan calculates the amount of each participant's profit sharing award based on that participant's eligible earnings.  Eligible earnings, as noted above, are defined in the Plan as "compensation" as that term is defined in

---

3.    35 U.S.C. § 4316(b)(1) provides, in part, that "a person who is absent from a position of employment by reason of service in the uniformed services shall be . . . (A) deemed to be on furlough or leave of absence while performing such service; and . . . (B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay."

the participant's 401(k) qualified defined contribution plan.
For American pilots, their 401(k) plan provides that employees
will be considered compensated for qualified military service
"at the same annual rate as the Eligible Employee's average rate
of Compensation from the Employer during the 12 months
immediately preceding the qualified military service."
Plaintiff alleges that AAG is violating the terms of the Plan by
not including credit or imputed income for American pilots'
short-term military service.

The class which plaintiff seeks to certify under Count
I is a profit sharing class of current and former employees of
American and all AAG affiliates who have participated in the
Plan at some point since its inception on January 1, 2016 and
who are harmed and will continue to be harmed as a result of
violation of § 4316 ("Profit Sharing Class").  The proposed
class

> consists of participants in the Profit
> Sharing Plan who took short-term military
> leave at any AAG affiliate (including
> American) from the inception of the Plan
> 2016 to the present.[4]  Count I is brought on
> behalf of the Profit Sharing Class and
> alleges that AAG violated USERRA [§ 4316] by
> not crediting periods of short-term military
> leave under its Profit Sharing Plan.

---

4.    The affiliates of AAG are its subsidiaries Envoy, Piedmont,
and PSA.

7

Members of this proposed class must also have been employed in the United States while a participant in the Plan or were a citizen or national or permanent resident of the United States while employed in a foreign country and have been a participant whose profit sharing award did not include credit or imputed earnings for short-term military leave.

Plaintiff also seeks to certify a subclass of the Profit Sharing class under Count II limited to American pilots who are or were eligible to participate in the American pilots' 401(k) plan and who have been harmed and will continue to be harmed as a result of breach of contractual provisions in the Profit Sharing Plan ("Profit Sharing Pilots Subclass").  This proposed subclass

> consists of members of the Profit Sharing
> Class who were pilots at American Airlines.
> Count II of the . . . Second Amended
> Complaint is brought on behalf of the
> American Pilots Profit Sharing Subclass and
> alleges that AAG committed breach of
> contract and violated the terms of the
> Profit Sharing Plan by not crediting periods
> of short-term military leave under its
> Profit Sharing Plan.

Finally, plaintiff moves for certification under Count III of a class of current and former American employees who have been harmed and will continue to be harmed as a result of violation of § 4316 because of American's failure to pay them

8

for short-term military leave ("Paid Leave Class").  This
proposed class

> consists of American employees who took
> short-term military leave between 2013 and
> the present.  Count III is brought on behalf
> of the Paid Leave Class against American
> alleging that the Class Members were
> entitled to be paid at least the difference
> between their regular pay and military pay
> when they took short-term military leave.

Excluded from the proposed classes and subclass are
the following:  members of the committee responsible for
administering the Plan; participating employees who reached
settlements or judgments against AAG in individual USERRA
actions regarding inadequate profit sharing or failure to pay
for short-term military leave; and certain passenger service,
fleet service, and mechanical employees covered under existing
agreements between the airlines and those employees' respective
unions.

III

Class certification may only be granted if the four
requirements of Rule 23(a) of the Federal Rules of Civil
Procedure are first satisfied:

> (a) Prerequisites.  One or more members of a
> class may sue or be sued as representative
> parties on behalf of all members only if:

> (1) the class is so numerous that
> joinder of all members is impracticable;

9

> (2) there are questions of law or fact
> common to the class;
>
> (3) the claims or defenses of the
> representative parties are typical of the
> claims or defenses of the class; and
>
> (4) the representative parties will
> fairly and adequately protect the interests
> of the class.

Fed. R. Civ. P. 23(a).  The elements of this four-part test are commonly referred to as numerosity, commonality, typicality, and adequacy of representation.  See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613 (1997).

The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence.  In re Modafinil Antitrust Litig., 837 F.3d 238, 248 (3d Cir. 2016).  To determine if the requirements of Rule 23 have been satisfied, a district court must conduct a "rigorous analysis."  Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.3d 72, 93 (3d Cir. 2011).  In doing so, the district court must look beyond the pleadings.  In re Hydrogen Peroxide Litig., 552 F.3d 305, 316 (3d Cir. 2008).

### A. Numerosity

There is no minimum number needed to satisfy the numerosity requirement.  In re Modafinil, 837 F.3d at 249-50; Kerrigan v. Phila. Bd. of Election, 248 F.R.D. 470, 473-74 (E.D. Pa. 2008).  As stated above, Rule 23 provides that numerosity is

10

established where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "'Impracticable does not mean impossible,' and refers rather to the difficulties of achieving joinder." In re Modafinil, 837 F.3d at 249 (quoting Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993)).

Defendants do not contest the numerosity of the proposed classes. Based on discovery provided by defendants, there are at least 950 American pilots who took short-term military leave between January 1, 2013 and December 31, 2018 who are potential members of the Paid Leave Class, in addition to other American employees who took short-term military leave. There are at least 500 American pilots who are potential members of the Profit Sharing class and the Profit Sharing Pilots subclass. Employees from Envoy, Piedmont, and PSA would add to these numbers for the Profit Sharing class, although the number of such class members is not quantified in the record. Joinder of all would be impracticable. Plaintiff has met his burden to demonstrate numerosity for all proposed classes under Rule 23(a)(1).

### B. Commonality

For commonality, "[t]he bar is not high." In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig., 795 F.3d 380, 393 (3d Cir. 2015). It "does not require identical claims or

11

facts among class member[s]." <u>Marcus v. BMW of N. Am., LLC</u>, 687 F.3d 583, 592-93 (3d Cir. 2012).  A single common question is sufficient.  <u>See</u> <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 359 (2011).  In fact, "as long as all putative class members were subjected to the same harmful conduct by defendant, Rule 23(a) will endure many legal and factual differences among the putative class members."  <u>In re Cmty. Bank</u>, 795 F.3d at 397.

Plaintiff asserts that there is a common question for all putative class members in Counts I and III, that is whether short-term military leave is comparable to leave for jury duty or bereavement and thus must be credited under the Plan for purposes of Count I or compensated for purposes of Count III, all pursuant to § 4316(b).  Plaintiff contends that there is a separate common question of law in Count II.  That question is whether the language of the Plan requires AAG to include for American pilots credit for compensation for short-term military leave.

Defendants concede that there is commonality as to the American pilots' claims on all three counts.  Nonetheless, defendants argue that plaintiff cannot satisfy the commonality prong of Rule 23(a)(2) for other employees of American or employees of the regional airlines because there is no company-wide policy at American or the regional airlines for jury duty or bereavement leave.  Instead, defendants assert that

12

leave for these two events is collectively bargained for by each work group.

The court agrees with plaintiff that there exists a common question of law for the proposed classes in Counts I and III as to whether short-term military leave is comparable to jury duty and bereavement and should thus be similarly credited or compensated.  The fact that different work groups may be compensated for jury duty and bereavement differently than other work groups is not relevant to this discussion.  USERRA does not require that all leave for military service be compensated, only that such leave be compensated when comparable leave is compensated.

There is also a common question for the proposed subclass in Count II.  That question is whether AAG has breached the terms of the Plan by not crediting the short-term military leave of American pilots.

As there is at least one common question for each of the proposed classes, regardless of any respective work groups, Rule 23(a)(2) has been satisfied.

### C. Typicality

Plaintiff must also satisfy the requirement for typicality, the third prong of the Rule 23(a) analysis. Typicality means that "the claims of the class representatives must be typical of the class as a whole."  Johnson v. HBO Film

13

Mgmt., Inc., 265 F.3d 178, 184 (3d Cir. 2001).  Typicality
ensures "that the class representatives are sufficiently similar
to the rest of the class – in terms of their legal claims,
factual circumstances, and stake in the litigation" and that
their representation is fair to the rest of the class.  In re
Schering Plough Corp. ERISA Litig., 589 F.3d 585, 597 (3d Cir.
2009).

　　　　The court must evaluate whether the legal theories and
factual circumstances of the proposed class and representative
are sufficiently similar as well as whether the proposed
representative is subject to any unique or atypical defenses.
Id. at 597-98.  Although the legal theories and factual
circumstances need not be identical, there must be enough
similarity "so that maintaining the class action is reasonably
economical and the interests of the other class members will be
fairly and adequately protected in their absence."  Id. at 598.

　　　　Plaintiff asserts that his claims are typical for both
the class for Count I and the class for Count III because the
same policy is challenged, that is the decision of AAG not to
give credit or impute income to Plan participants who took
short-term military leave and the decision of American not to
pay its employees when taking short-term military leave.
Plaintiff also avers that plaintiff's claims are typical of the
subclass in Count II because the same contractual provision in

14

the Plan is challenged regarding calculation of profit share awards.

Defendants counter that factual circumstances differ significantly between pilots on the one hand and the other putative class members on the other because of the many CBAs across multiple work groups of American and AAG subsidiary employees and the differences in amount of leave taken by pilots compared to non-pilots.  In total, even after plaintiff's exclusions of certain employees from the class, the proposed classes involve   thirty-three work groups across four airlines, many of which have different CBAs.  These various CBAs cover pilots, flight attendants, mechanics, fleet service employees, stock clerks, flight simulator engineers, maintenance control technicians, maintenance training specialists, dispatchers, and flight crew training instructors.  There are different factual circumstances within each CBA regarding the compensation structure.  Significantly, there are material variations for paid leave for jury duty and bereavement.[5]

The factual circumstances of plaintiff and the American pilots who have taken military leave as a group are different in another way from the factual circumstances of the

---

5.   Plaintiff even recognizes these differences as counsel for plaintiff stated at oral argument that plaintiff does not seek to represent every work group at American, Envoy, Piedmont, and PSA.

other proposed class members.  Count II on behalf of American
pilots in the Profit Sharing Pilots subclass is a breach of
contract claim concerning a provision in the Plan document which
makes reference to the Plan participants' 401(k) plans.
According to plaintiff, the 401(k) plan for plaintiff and other
American pilots provides for compensation for eligible employees
for qualified military service.  Plaintiff makes no reference to
any other 401(k) plans for non-pilots or non-American employees.

Plaintiff also seeks to bring a paid leave claim in
Count III only on behalf of American employees who took military
leave.  In this claim, plaintiff seeks payment of wages for
those American employees in addition to what they may be
entitled in terms of profit sharing under the Plan in Count I.
No such claim for wages is made on behalf of the employees of
the regional airlines who are part of the Plan.  Plaintiff thus
seeks a more favorable outcome for the American employees than
for others.

In addition, defendants maintain that plaintiff's
claims are atypical in that he and other American pilots are
subject to an atypical defense based on their CBA which at one
time included pay for military leave but has not done so since
2013.  The court rejects defendants' argument that the American
pilots are estopped because they have bargained away their right
to such compensation.  USERRA specifically provides that it

16

"supersedes any . . . contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter."  38 U.S.C. § 4302(b).  Thus, defendants may not use the CBA with American pilots as a shield from allegations of a violation of USERRA.

The court finds, and defendants do not dispute, that plaintiff's claims are typical of those of American pilots who took short-term military leave in the designated years of each claim.  However, the court finds that the factual and legal claims of American pilots like plaintiff differ significantly from those who do not fit into this category.  It would not be fair or reasonably economical for plaintiff to represent those who are not American pilots.  In sum, plaintiff's claims are typical for purposes of Rule 23(a)(3) of the claims of the American pilots who took or will take short-term military leave in the years specified for each count but are not typical of the claims of the other putative class members.

### D. Adequacy

The final requirement under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Here, the court "primarily examines two matters:  the interests and incentives of the class representatives, and the experience and

performance of class counsel." <u>In re Cmty. Bank</u>, 795 F.3d at 393.  "The principal purpose of the adequacy requirement is to determine whether the named plaintiffs have the ability and the incentive to vigorously represent the claims of the class." <u>Id.</u>

In determining whether a class representative is qualified to serve as such, only "a minimal degree of knowledge" is necessary. <u>New Directions Treatment Servs. v. City of Reading</u>, 490 F.3d 293, 313 (3d Cir. 2007).  As our Court of Appeals has explained, "the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." <u>In re Cmty. Bank</u>, 795 F.3d at 393.  This prong of the Rule 23(a) analysis often overlaps with the typicality prong and may share questions relevant to the analysis of both. <u>In re Schering Plough</u>, 589 F.3d at 602.

First, it is uncontested that plaintiff's counsel is extremely experienced in representing plaintiffs in employment related class action litigation.  He has done so for more than eighteen years, including USERRA class actions for the past eight years.  Plaintiff himself is also an adequate representative insofar as he has been actively engaged in this litigation and has read the pleadings. <u>See New Directions</u>, 490 F.3d at 313.

18

Defendants agree that plaintiff is an adequate representative for a class of pilots for Count I insofar as he seeks declaratory and monetary relief for the failure to credit short-term military leave for past profit shares under the Plan. In this regard, plaintiff seeks to recover the amounts due from AAG for the class over and above the fixed amount that was deposited into the Plan at the time since all that money has already been paid out.

Defendants, however, dispute the adequacy of plaintiff's representation of the class regarding prospective declaratory and injunctive relief in Count I for future profit shares. As to those profits, the total amount to be divided and distributed will be a fixed amount, that is the amount AAG puts into the Plan. Thus any future increase to one participant's share of the profit sharing pie because of credit for military leave will thereby decrease shares of the pie of other participants who do not take military leave since profits are distributed on a pro rata basis proportional to each participant's eligible earnings.

Furthermore, defendants assert that, if successful, plaintiff will see his share of the profits increase since he has taken many days of short-term military leave in the past. For example, if plaintiff's eligible earnings without credit for short-term military leave is $100 but his eligible earnings with

19

credit for his military leave is $125 then other participants'
shares will proportionally decrease since plaintiff is entitled
to a bigger share of the pie.  Defendants contend that this
creates a conflict for plaintiff as a class representative since
plaintiff's potential increase of profit shares as a result of
success in this litigation as well as the profit shares of some
of the class members will come at the expense of other
participants who took fewer days of military leave.  Defendants
assert, for instance, that those who took short-term military
leave in 2016 when the Plan was instituted but have not taken
leave since will receive smaller profit shares in subsequent
years than they would receive if plaintiff were not successful
in this lawsuit.

In essence, defendants maintain that some pilots or
other class members would be opposed to participation in the
lawsuit because their share of the pie may be smaller if USERRA
is enforced than if it is not enforced.  Defendants cannot
defeat class certification based on a conflict on the ground
that some proposed class members favor the continuation of
unlawful conduct.  See Ruggles v. WellPoint, Inc., 272 F.R.D.
320, 338 (N.D. N.Y. 2011).  To hold that a conflict exists under
such circumstances would undermine the will of Congress and the
rule of law.  The court rejects this argument of defendants as a

20

basis to defeat class certification of the Profit Sharing class
in Count I and the pilots subclass in Count II.

Furthermore, plaintiff rightly argues that any future
conflicts as described by defendants are hypothetical.  See In
re Flonase Antitrust Litig., 284 F.R.D. 207, 218 (E.D. Pa.
2012).  Although defendants have indicated that there are
employees who took leave in the beginning of the putative class
period but have not taken military leave thereafter, this does
not determine what they may do in the future.  Whether these
putative class members will be better or worse off in the future
as a result of this litigation cannot really be known at this
time.  The conflict in this instance is too speculative to
preclude class certification.

Defendants further contend that plaintiff is not an
adequate representative because of a class conflict between the
Paid Leave class in Count III on behalf of American employees
and the Profit Sharing class in Count I on behalf of all Plan
participants who take short-term military leave because
plaintiff only seeks paid leave on behalf of the American
employees.  As previously discussed regarding the typicality of
plaintiff's claims, plaintiff is in effect seeking a full loaf
on behalf of American employees in both Counts I and III and
half a loaf on behalf of all other Plan participants at regional

21

airlines only in Count I.[6]  This further undermines the ability of plaintiff to vigorously represent the interests of the putative class members at regional airlines.

As our Court of Appeals has explained, there is often a similarity and overlap between typicality and adequacy when determining class certification.  See In re Schering Plough, 589 F.3d at 602.  Based on the significant differences in factual circumstances of American pilots compared to non-pilots at American and employees at regional airlines, as discussed with regard to typicality, the interests and incentives of plaintiff as a pilot at American are not aligned with the interests and incentives of other putative class members who are not American pilots.  Just as plaintiff's claims are not typical of the claims of those at American who are not pilots and Plan participants at regional airlines, the court finds that plaintiff is an inadequate class representative under Rule 23(a)(4) on behalf of those putative class members who are not American pilots.

---

6.  Defendants also raise arguments that plaintiff will be incentivized to win Count II on behalf of American pilots and lose Count I on behalf of all Plan participants to benefit American pilots. This argument is no longer relevant as the court has already determined with regard to typicality under Rule 23(a)(3) that the proposed classes should all be limited to American pilots.

IV

      Plaintiff has met his burden to serve as the class representative for a class of American pilots under Rule 23(a)(1)-(4) on all three counts in the second amended complaint.  In addition to the prerequisites of Rule 23(a), plaintiff must also satisfy one of the requirements under Rule 23(b).

      Plaintiff asserts that the proposed class may be certified under any of the provisions of Rule 23(b).  Rule 23(b)(1)(A) applies when separate actions would risk establishing "incompatible standards of conduct for the party opposing the class."  Fed. R. Civ. P. 23(b)(1)(A).  A class under this provision is one in which "the party is obliged by law to treat the members of the class alike . . . or where the party must treat all alike as a matter of practical necessity." Amchem, 521 U.S. at 614.

      Rule 23(b)(1)(B) is for a class in which separate actions would "be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."  Fed. R. Civ. P. 23(b)(1)(B).  Such a class most often concerns a limited fund "in which numerous persons make claims against a fund insufficient to satisfy all claims." Amchem, 521 U.S. at 614.

Rule 23(b)(2), often called the "injunctive relief" class, provides for certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(2) applies to actions in which "the relief sought must perforce affect the entire class at once."  <u>Wal-Mart</u>, 564 U.S. at 360-62. Because the relief sought in a (b)(2) class must be generally applicable to the entire class, classes certified under (b)(2), as with (b)(1) classes, are mandatory and do not provide notice to potential class members or an opportunity to opt out.  <u>See</u> Fed. R. Civ. P. 23(c)(2); <u>see also</u> <u>Wal-Mart</u>, 564 U.S. at 362.

Rule 23(b)(3), on the other hand, is often referred to as the "money damages class" and allows for certification when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods of fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Factors to evaluate when determining certification under (b)(3) include the interest of class members in controlling the separate actions, the extent and nature of any other litigation on this same controversy, the desirability or lack thereof of concentrating the litigation in

24

a particular forum, and the difficulties in case management. See Fed. R. Civ. P. 23(b)(3)(A)-(D).  Rule 23(b)(3) "allows class certification in a much wider set of circumstances but with greater procedural protections," that is notice of the class and an opportunity to opt-out from the class.  Wal-Mart, 564 U.S. at 362.

Since plaintiff seeks injunctive and declaratory relief, the court will first evaluate whether certification under Rule 23(b)(2), the "injunctive relief class," is proper. Defendants counter that a (b)(2) class fails because plaintiff seeks individualized monetary relief that differs as to each class member.

The Supreme Court in Wal-Mart Stores, Inc. v. Dukes held that "claims for individualized relief" do not satisfy (b)(2) and that monetary relief that "is not incidental to the injunctive or declaratory relief" may not be certified under (b)(2).  564 U.S. 338, 360 (2011).  Wal-Mart involved a proposed class of over one million female employees of Wal-Mart in which plaintiffs alleged gender discrimination in violation of Title VII and sought injunctive and declaratory relief and backpay. The Court found that the backpay plaintiffs sought for the class was subject to individualized relief and thus could not be certified under (b)(2) which "applies only when a single injunction or declaratory judgment would provide relief to each

25

member of the class." Id.  The Court, however, declined to
reach the broader question of whether Rule 23(b)(2) only applies
when requests for injunctive or declaratory relief are sought
and thus precludes all requests for monetary damages.

In declining to reach the question of incidental
monetary relief, the Court cited the decision of the Court of
Appeals for the Fifth Circuit in Allison v. Citgo Petroleum
Corp., 151 F.3d 402 (5th Cir. 1998).  There the court defined
incidental damages as those "to which class members
automatically would be entitled once liability to the class (or
subclass) as a whole is established . . . . That is, the
recovery of incidental damages should typically be concomitant
with, not merely consequential to, class-wide injunctive or
declaratory relief."  Id. at 415.  The court went on to explain
that incidental monetary damages "should at least be capable of
computation by means of objective standards and not dependent in
any significant way on the intangible, subjective differences of
each class member's circumstances."  Id.  Thus, incidental
damages are more of a "group remedy."  Id.

Our Court of Appeals cited Allison when it explained
that incidental damages are "those 'that flow directly from
liability to the class as a whole on the claims forming the
basis of the injunctive or declaratory relief.'"  Barabin v.
Aramark Corp., 2003 WL 355417 at *5 (3d Cir. 2003) (quoting

26

Allison, 151 F.3d at 415).  In that case, our Court of Appeals determined that incidental damages depend on:  (1) "whether such damages are of a kind to which class members would be automatically entitled"; (2) "whether such damages can be computed by 'objective standards' and not standards reliant upon 'the intangible, subjective differences of each class member's circumstances'"; and (3) "whether such damages would require additional hearings to determine."  Id. at *5-6; see also Allison, 151 F.3d at 415.

     Although the Supreme Court in Wal-Mart did not decide whether incidental monetary damages are permissible under (b)(2), the Court of Appeals for the Seventh Circuit held in Johnson v. Meriter Health Services Employee Retirement Plan that it understands Wal-Mart to foreclose "'individualized' awards of monetary damages, which we understand to be awards based on evidence specific to particular class members."  702 F.3d 364, 370 (7th Cir. 2012).  However, when "the calculation of monetary relief will be mechanical, formulaic, a task not for a trier of fact but for a computer program, so that there is no need for notice and the concerns[7] expressed in Wal-Mart opinion" then a

_____

7.   The Court in Wal-Mart raised the issue that in (b)(2) actions "predominantly for money damages we have held that absence of notice and opt out violates due process."  Wal-Mart, 564 U.S. at 363 (citing Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (2011)).  The Court acknowledged, however, that it has "never held that to be so where the monetary claims do not

district court can permit monetary damages in a (b)(2) class.
Id. at 372.[8]

Plaintiff in this action seeks the following:  a
declaration that AAG's policy not to credit short-term military
leave violates USERRA and was willful; a declaration that
American's policy not to pay employees who take short-term
military leave while paying those who take leave for jury duty
or bereavement violates USERRA and was willful; a declaration
that eligible earnings under the Plan must include leave taken
for short-term military obligations; a recalculation of past and
future profit share awards consistent with this decision; a
declaration that American pay its employees who take short-term
military leave comparable to leave taken for jury duty and
bereavement; an injunction for AAG to compute profit sharing
awards based on credit for short-term military leave; an
injunction for American to compute and compensate class members

---

predominate."  Id.

8.   The Seventh Circuit further explained that this
determination "is on the assumption that Wal-Mart left intact
the authority to provide purely incidental monetary relief in a
(b)(2) class action, as we think it did."  Johnson, 702 F.3d at
372.  Our Court of Appeals has not yet reached the issue of
whether incidental relief is still permitted in a (b)(2) class
following Wal-Mart.  The decision of the Seventh Circuit in
Johnson, however, has been widely cited by other courts
certifying claims for incidental monetary damages under (b)(2).
See e.g., Berry v. Schulman, 807 F.3d 600 (4th Cir. 2015); Amara
v. CIGNA Corp., 775 F.3d 510 (2d Cir. 2014); see also Cunningham
v. Wawa, Inc., 387 F. Supp. 3d 529 (E.D. Pa. 2019).

for short-term military leave; liquidated damages from AAG and American pursuant to 38 U.S.C. § 4323(d)(1)(C); and pre-judgment and post-judgment interest on any monetary relief.[9]

As previously stated, this court deems certification of a class of American pilots proper under Rule 23(a).  This proposed class primarily seeks declaratory and injunctive relief in declaring that AAG and American have violated USERRA by failing to credit or compensate short-term military leave and enjoining AAG and American to credit and compensate this short-term military leave the same as jury duty and bereavement leave in the future.  This relief applies generally to the entire proposed class of American pilots who were all subject to the same leave policies at American and profit sharing distribution scheme under AAG's Profit Sharing Plan.

The additional monetary relief plaintiff seeks, namely profit share awards consistent with this decision and compensation for short-term military leave as well as liquidated damages,[10] is incidental to the request for declaratory and

---

9.   Plaintiff also seeks attorney fees, expert witness fees, and court costs pursuant to 38 U.S.C. § 4323(h)(2).

10.  Plaintiff also seeks liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C) which permits the court to require the employer to pay an employee an amount equal to compensation for loss of wages or benefits because of the employer's failure to comply with this statute as liquidated damages "if the court determines that the employer's failure to comply with the provisions of this chapter was willful."  These damages can be

29

injunctive relief and flows from the requested injunction.  If plaintiff is successful, profit shares will be distributed and paid leave will be compensated according to any declaration that this court may enter.  This relief is not individualized, as was the case in Wal-Mart.  In that case, plaintiffs sought backpay for discrimination and would have had to each show their entitlement to such backpay on a case-by-case basis.  Here plaintiff and the rest of the proposed class need not provide individualized evidence for their claims to profit share awards and compensation for leave.  Instead, they will automatically be entitled to this relief if defendants are found to have violated USERRA and must therefore treat short-term military leave the same as they do jury duty and bereavement leave.

In addition, monetary relief can be calculated on an objective basis and is not dependent on any subjective difference in circumstance.  Should the court find that defendants violated USERRA, the amount of credit for profit sharing or paid leave each class member is entitled to can be readily calculated by applying his or her rate of pay to the amount of short-term leave taken and would not require individual fact finding.  These calculations can all be made by computer.  See Johnson, 702 F.3d at 372.  No additional hearings

---

calculated by a computer.

would be necessary to determine this relief.  Moreover notice is
not needed to determine to what each class member would be
entitled should plaintiff be successful in this suit.
Defendants' actions are applicable to the class and can
therefore be addressed on a class-wide basis.

Since defendants have refused to act on grounds that
apply to a class of American pilots as a whole so that final
injunctive relief is necessary and plaintiff's request for
monetary damages is incidental to the declaratory and injunctive
relief sought, certification of a class of American pilots under
Rule 23(b)(2) is proper.  As the class may be certified under
Rule 23(b)(2), the court need not determine whether
certification is appropriate under Rule 23(b)(1) or (b)(3).  Our
Court of Appeals has explained that "an action maintainable
under both (b)(2) and (b)(3) should be treated under (b)(2) to
enjoy its superior res judicata effect and to eliminate the
procedural complications of (b)(3), which serve no useful
purpose under (b)(2)."  Stoetzner v. U.S. Steel Corp., 897 F.2d
115, 119 (3d Cir. 1990).

V

Finally, plaintiff must also show by the preponderance
of the evidence that the class is ascertainable.  See Marcus,
687 F.3d at 592-93.  The class must be "defined with reference
to objective criteria," and there must be "a reliable and

31

administratively feasible mechanism for determining whether putative class members fall within the class definition." Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 355 (3d Cir. 2012).

Plaintiff asserts, and defendants do not disagree, that members of the proposed class can be readily determined based on defendants' records, some of which have already been produced. American has already identified all those who took military leave between 2013 and the date of production as well as the dates on which that leave was taken. AAG has produced similar records. These employees are identifiable by a unique employee identification number. The court therefore agrees that the members of the proposed class are readily ascertainable.

VI

Plaintiff has met the requirements of Rule 23(a) and (b)(2) for certification of a class of current and former American Airlines, Inc. pilots. The court will divide this approved class of American pilots into a subclass for each of plaintiff's three claims. See Sullivan v. DB Invs., Inc., 667 F.3d 273 (3d Cir. 2011).

First, this court certifies a subclass with regard to Count I for AAG's alleged violation of § 4316 as relates to the Profit Sharing Plan. This subclass will consist of current and former American Airlines, Inc. pilots who: participated at some point in the AAG Global Profit Sharing Plan since its inception

32

on January 1, 2016; while participants in the Plan, were employed in the United States or were a citizen or national or permanent resident of the United States and employed in a foreign country; took short-term military leave in a year during which they were entitled to receive an award under the Plan; and were not credited or imputed earnings for this short-term military leave.

Second, the court certifies a subclass with regard to Count II for breach of contract of those American pilots included in the subclass in Count I who, from January 1, 2016 through the date of judgment in this action, are or were eligible to participate in the American Airlines, Inc. 401(k) Plan for Pilots and subject to taxation in the United States.

Third, the court certifies a subclass with regard to Count III of all current and former American Airlines, Inc. pilots who took short-term military leave while employed at American at any time from January 1, 2013 through the date of judgment in this action and were not paid for that leave equal to what they would have received had they taken leave for jury duty or bereavement.[11]

---

11. Excluded from the certified class are any American pilots responsible for administering the Profit Sharing Plan and former or current American pilots who have obtained individual judgments against or settlements with AAG or American in USERRA profit sharing actions for failure to credit or compensate short-term military leave.

33

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES P. SCANLAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| AMERICAN AIRLINES GROUP, INC., | : | |
| et al. | : | NO. 18-4040 |

ORDER

AND NOW, this   5th   day of May, 2020, for the reasons set forth in the foregoing Memorandum, it is hereby ORDERED that the motion of defendant American Airlines Group Inc. to dismiss with prejudice Count II of the second amended complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction is DENIED.[1]

BY THE COURT:

/s/ Harvey Bartle III
J.

---

1.   American Airlines, Inc. ("AA") also moved to dismiss Count II, but it is not a proper party since it has not been sued in that count.  Thus, the motion of AA is DENIED as moot.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES P. SCANLAN                    :              CIVIL ACTION
                                    :
            v.                      :
                                    :
AMERICAN AIRLINES GROUP, INC.,      :
et al.                              :              NO. 18-4040

MEMORANDUM

Bartle, J.                                           May 5, 2020

Plaintiff, an American Airlines pilot and a Major General in the United States Air Force Reserve, brings this purported class action against his employer American Airlines, Inc. ("AA") and its parent American Airlines Group, Inc. ("AAG"). Defendant AAG now seeks to dismiss Count II of the Second Amended Complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure on the ground that this court lacks subject matter jurisdiction over that count.[1]

Count II alleges breach of contract by AAG under Texas law. Specifically, plaintiff asserts that AAG established a profit sharing plan in which plaintiff and other AA pilots participate. According to Count II, they are not receiving what is due under the plan because AAG excludes from eligible earnings

_____

1.   AA also moves to dismiss Count II.  However, only AAG has been sued in Count II, and thus AA is not a proper party to this motion.

the income to which the pilots are entitled while they are on
short term military leave.[2]

The profit sharing plan established by AAG sets aside 5%
of its pre-tax earnings each year for pro rata distribution to
qualifying employees of AA and other affiliated airlines based on
each participant's "individual eligible earnings" for that year.
Under the Plan AAG has the authority "to modify, amend, annul, or
terminate this Plan at any time and for any reason." See § H.
The Plan is administered by the Compensation Committee of AAG's
Board of Directors.  See § F2.

It is undisputed that the Plan is not a benefit
negotiated by the union representing the pilots.  Further,
Section H of the Plan declares, "In no event shall the terms of
the Plan be deemed incorporated into any collective bargaining,
works council, or similar agreement and nothing herein shall be
deemed to amend, modify, or otherwise alter any collective
bargaining, works council or similar agreement."

On October 20, 2016, Beth Holden, Managing Director of
Labor Relations of AA, and Dan Carey, President of the Allied
Pilots Association, the pilots' union, signed a letter which

---

2.  Count I alleges a violation by AAG of the Uniformed Services
Employment and Reemployment Act, 38 U.S.C. §§ 4301, et seq., while
Count III alleges a similar violation.  Previously, this court
denied the defendants' motion to dismiss these counts for failure
to state a claim.  Scanlan v. Am. Airlines Grp., Inc., 384 F.
Supp. 3d 520 (E.D. Pa. 2019).

"confirm[s] our understanding regarding profit sharing for pilots employed by American Airlines."  It continues:

> American Airlines has established a profit sharing arrangement, the American Airlines Group, Inc. Global Profit Sharing Plan (the 'Profit Sharing Plan'), that will allow eligible employees, including employees represented by the Allied Pilots Association (APA), the opportunity to share in the financial success of American.
>
> The effective date of the Profit Sharing Plan, as to APA-represented employees covered by this letter, will be the date on which APA has approved and you have signed this letter on behalf of APA.  The terms and conditions set forth in the Profit Sharing Plan shall apply and shall govern the participation of employees represented by APA.
>
> This Letter of Agreement shall supersede all prior LOAs establishing a profit sharing program for APA-represented employees and shall remain in effect for the duration of the Joint Collective Bargaining Agreement dated January 30, 2015.

The plaintiff maintains that he and the purported class have been short changed because AAG has been improperly interpreting "eligible earnings" under Section K of the profit sharing plan.  Section K defines "eligible earnings" to mean:

> In respect of Employees subject to taxation in the United States:
>
>> 'Compensation,' as that term is defined for purposes of employer contributions, in the qualified defined contribution plan is intended to comply with Section 401(k) of the Code that is sponsored by the Employee's Participating Employer and in which such Employee is eligible to

> participate at the time the profit sharing
> award is paid; provided, however, that the
> annual limit on compensation under Code
> Section 401(a)(17) shall not be applied for
> purposes of this Plan. . . .

AAG agrees that relief depends on the interpretation of the § 401(k) plan, although it disputes the interpretation advanced by the plaintiff.  It is undisputed that the 401(k) plan referenced in the profit sharing plan is the same plan maintained as part of a Collective Bargaining Agreement between AA and the pilots' union.

AAG argues that the dispute over the meaning of the § 401(k) plan is "a minor dispute" within the exclusive jurisdiction of a board of adjustment under the Railway Labor Act, 45 U.S.C. §§ 151, et seq.  As noted above, it seeks dismissal of Count II for lack of subject matter jurisdiction.  It appears that AAG is making a factual attack rather than a facial attack on this court's subject matter jurisdiction since AAG relies not only on allegations contained in the second amended complaint but also on evidence outside of the pleading.  See Gotha v. United States, 115 F.3d 176, 178-79 (3d Cir. 1997).  The plaintiff of course has the burden of proof to the extent there are disputes of fact related to jurisdiction.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); see also U.S. ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009).

-4-

The Railway Labor Act, which was amended in 1936 to include the airline industry, differentiates in the way major disputes and minor disputes between management and labor are resolved.  As the Supreme Court has explained in Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252 (1994):

> Major disputes relate to the formation of collective [bargaining] agreements or efforts to secure them. . . . [M]inor disputes grow out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions. . . . Minor disputes involve controversies over the meaning of an existing collective bargaining agreement in a particular fact situation. . . . Thus, major disputes seek to create contractual rights, minor disputes to enforce them. (citations and internal quotation marks omitted).

Pursuant to the Railway Labor Act, minor disputes, that is disputes which involve "controversies over the meaning of an existing collective bargaining agreement," must be submitted to and resolved by an adjustment board.  Id. at 253, 256; 45 U.S.C. §§ 181, 184; See Bhd. of Locomotive Eng'rs v. Louisville & Nashville R.R. Co., 373 U.S. 33, 28-39 (1963).  The parties have advised the court that AA and the pilots have in place such a board to adjust minor disputes.

Disputes, however, between an air carrier and its employees which are independent of a collective bargaining agreement are not subject to the dispute resolution mechanism of the Railway Labor Act.  Hawaiian Airlines, supra at 257.  For

example, in <u>Hawaiian Airlines</u> the Supreme Court held that a state lawsuit by an aircraft mechanic for retaliatory discharge in violation of Hawaii's Whistleblower Protection Act was not preempted by the Railway Labor Act.

In support of its position that Count II involves a minor dispute subject to the Railway Labor Act's non-judicial process, AAG argues that the profit sharing plan was maintained and transformed into a collective bargaining agreement when AA and the pilots union signed the October 20, 2016 letter confirming that the pilots would participate in the profit sharing plan. Contrary to the position of AAG, the letter does not demonstrate that AA and the union bargained for or negotiated for the pilots' participation. The undisputed testimony of Todd Jewett, AA's Managing Director of Labor Relations-Flight, verifies that no bargaining or negotiation took place with respect to the establishment of the profit sharing plan. The purpose of the plan is to reward eligible employees of AA and other airlines "for their efforts in helping achieve the strategic, financial and operating objectives of [AAG] . . . ." AAG simply allowed the pilots' participation in the plan it unilaterally established and can unilaterally terminate. AAG did so as a matter of grace and not of right but only after the union gave its approval for AA pilots to take part.

Regardless of the October 20, 2016 letter, AAG maintains that the profit sharing plan specifically incorporates by reference the definition of "eligible earnings" from the 401(k) plan which is part of a collective bargaining agreement. AAG contends that the court must determine what "eligible earnings" means in the profit sharing plan and the only way to do so is to interpret the language of the 401(k) plan, that is, to interpret a collective bargaining agreement. If there is a dispute over the interpretation of a collective bargaining agreement in the airline industry, it is a minor dispute under the Railway Labor Act and such interpretation is within the exclusive jurisdiction of the board of adjustment.

The profit sharing plan, as noted above, is not a collective bargaining agreement. It was established and written by AAG alone without input from the union and can be amended, modified, annulled, or terminated unilaterally by AAG without any input from the union. The court has before it the interpretation of a provision of the profit sharing plan which happens to incorporate by reference certain language from a 401(k) plan to which AAG is not a party. The reference to the 401(k) plan was AAG's own doing and was not required by any labor negotiation. Indeed, AAG was free to use whatever definition of eligible earnings that it wanted. It is the profit sharing plan defining eligible earnings for its own purpose which is the subject of

-7-

Count II and not the 401(k) plan in its capacity or character as part of any collective bargaining agreement.  It is true that the 401(k) plan was negotiated as part of a collective bargaining agreement with AA, but it was not negotiated between AA and its employees or their union as part of the profit sharing plan.  This is a significant distinction.  Thus it is immaterial whether the parties agree or disagree as to the meaning of the words or provisions of the 401(k) plan as used in the profit sharing plan since the definition of eligible earnings for present purposes is independent of any collectively bargained agreement.

The profit sharing plan could just as easily have copied the exact words of the 401(k) plan to define "eligible earnings" without any mention of the 401(k) plan itself.  Under that scenario, AAG concedes it would not have a meritorious argument that a minor dispute under the Railway Labor Act is at issue.  The use of the shorter form of incorporation by reference rather than writing out at length the language of the 401(k) plan without specifically identifying the language's source does not in our view convert the profit sharing plan or any part of it into a collective bargaining agreement.  Looking at the realities and putting substance over form, neither the profit sharing plan nor any of its provisions metamorphosed into a collectively bargained agreement under the Railway Labor Act.

-8-

Finally, there is another reason why AAG's motion to dismiss Count II fails.  The Railway Labor Act concerns disputes "between an employee or groups of employees and a carrier or carriers by air."  45 U.S.C. § 184; In re Continental Airlines, Inc., 484 F.3d 173, 183 (3d Cir. 2007).  The plaintiff is an employee of AA.  The claim in Count II is not against AA, an air carrier.  The only defendant sued in Count II is AAG, the parent of AA and the only party which established and controls the profit sharing plan.  AAG is not an air carrier.  In sum, we do not have here a dispute between an employee and air carrier growing out of a grievance, that is, arising out of the interpretation or application of their collective bargaining agreement.  See § 184; Hawaiian Airlines, supra at 254.  Therefore, the minor dispute provision of the Railway Labor Act is not applicable.  Id.

Plaintiff is correct that Count II does not concern an interpretation of and is independent of any Collective Bargaining Agreement.  Thus plaintiff's claim is not a minor dispute subject to the exclusive jurisdiction of a board of adjustment under the Railway Labor Act.  The motion of defendant AAG to dismiss Count II of the Second Amended Complaint will be denied.

-9-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES P. SCANLAN on his own          :          CIVIL ACTION
behalf and all others similarly  :
situated                         :
                                 :
        v.                       :
                                 :
AMERICAN AIRLINES GROUP, INC.,   :          NO. 18-4040
et al.                           :

ORDER

AND NOW, this  6th   day of March, 2020, after a
telephone conference with counsel, it is hereby ORDERED that:

(1)  The Fourth Scheduling Order dated January 16,
2020 (Doc. # 74) is VACATED.

(2)  The uncontested motion of plaintiff for leave to
amend the amended class action complaint is GRANTED.

(3)  The second amended class action complaint
attached as Exhibit 2 to plaintiff's motion for leave to amend
(Doc. # 81-3) is deemed filed.

(4)  Defendants shall file and serve any motion to
dismiss the second amended class action complaint, together with
supporting brief, on or before March 20, 2020.

(5)  Plaintiff shall file and serve any brief in
opposition to the motion to dismiss on or before April 3, 2020.

(6)  Defendants shall file and serve any reply in support of the motion to dismiss on or before April 10, 2020.

(7)  Any response of defendants in opposition to the motion of plaintiff for class action certification need not be filed until further order of the court.

BY THE COURT:


/s/ Harvey Bartle III
                                                    J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES P. SCANLAN on his own behalf and all others similarly situated | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| AMERICAN AIRLINES GROUP, INC., et al. | : | NO. 18-4040 |

ORDER

AND NOW, this 18th day of June, 2019, for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

(1)  the motion of defendant American Airlines Group, Inc. to dismiss count I of the amended complaint is DENIED;

(2)  the motion of defendant American Airlines Group, Inc. to dismiss count II of the amended complaint is GRANTED;

(3)  the motion of defendant American Airlines, Inc. to dismiss count III of the amended complaint is DENIED; and

(4)  the defendants shall file and serve an answer to counts I and III of the amended complaint on or before July 2, 2019.

BY THE COURT:


/s/ Harvey Bartle III
                                                    J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES P. SCANLAN on his own        :        CIVIL ACTION
behalf and all others similarly    :
situated                           :
                                   :
        v.                         :
                                   :
AMERICAN AIRLINES GROUP, INC.,     :        NO. 18-4040
et al.                             :


MEMORANDUM

Bartle, J.                                      June 18, 2019


        Plaintiff James P. Scanlan, a commercial airline pilot
and a Major General in the United States Air Force Reserve, has
sued American Airlines Group, Inc. ("AAG") and American
Airlines, Inc. ("AAI"), his employer and AAG's wholly owned
subsidiary, in this putative class action under the Uniformed
Services Employment and Reemployment Rights Act ("USERRA")
38 U.S.C. §§ 4301 et seq.  Specifically, the amended complaint
alleges that he and others similarly situated have been
wrongfully denied certain rights and benefits from AAG and AAI
while on short-term military leave which other employees receive
while absent from work for jury duty, sick leave, and union
leave.  Scanlan seeks declaratory, injunctive, and monetary
relief.  Before the court is the motion of defendants to dismiss
the amended complaint for failure to state a claim upon which

relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

I

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the light most favorable to the plaintiff. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008).  We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim must do more than raise a "mere possibility of misconduct." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679).

On a motion to dismiss under Rule 12(b)(6), the court may consider "allegations contained in the complaint, exhibits attached to the complaint, and matters of public record" as well as "an undisputedly authoritative document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Levins v. Healthcare Revenue Recovery Grp. LLC, 902 F.3d 274, 279-80 (3d Cir. 2018) (quoting

-2-

Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,
998 F.2d 1192, 1196 (3d Cir. 1993)).

                              II

          For present purposes, we accept as true the
allegations set forth in the amended complaint and the
undisputed documents it references and relies upon.  Scanlan has
worked as a pilot for AAI since October 1999 and participated in
the AAG's Global Profit Sharing Plan (the "Plan") in 2016 and
2017.  He has also served in the armed forces since 1985 and is
currently a Major General in the United States Air Force
Reserve.  Throughout his employment with AAI and while he has
participated in the Plan, Scanlan has taken short-term periods
of leave to perform his Air Force Reserve obligations.  While he
was on military leave for a total of 128 days in 2016 and for
132 days in 2017, most of the periods of leave were for only a
few days at a time although some extended up to fourteen days.

          AAI does not pay employees who are out on short-term
military leave but does pay employees when they take other forms
of short-term leave, such as jury duty, sick leave, and union
leave.  If employees are on jury duty, they receive the
differential between their regular compensation and their
payment as jurors.  They obtain their full pay when on
short-term sick leave or union leave.  Union leave may be

                              -3-

short-term but up to three pilots will be paid while serving
full time on union business.

AAG is the parent company not only of AAI, but also of
Envoy Airlines, Inc., Piedmont Airlines, Inc, and PSA Airlines.
AAG adopted the Plan effective January 1, 2016 to share AAG's
profits with employees of AAI and other subsidiary airlines.
Employees who are eligible to participate in the Plan include
pilots, flight attendants, mechanics, and passenger service
employees as well as non-union-represented management and
non-management employees.

AAG is obligated under the Plan to pay profit sharing
awards annually in the early part of each year to the Plan's
participants that total five percent of AAG's pre-tax earnings
for the preceding year.  Participants receive their award as a
lump sum cash payment subject to any withholding for tax
purposes and may contribute all or part of the award to their
retirement plans, pursuant to the terms of those plans.  AAG
calculates each participant's individual award by dividing the
five percent of AAG's pre-tax earnings by the aggregate amount
of all participants' earnings and multiplying this value by that
participant's "eligible earnings."

AAG does not credit AAI employees under the Plan with
wages they would have otherwise earned had they not been on
short-term military leave.  However, it does include the

compensation of employees for the periods when they are on jury duty, sick leave, and union leave.  As a result of AAG's failure to include as eligible earnings their imputed income while on periods of short-term military leave, Scanlan and other similarly situated employees received lower profit sharing awards in 2016 and 2017 than they would have otherwise received.

III

USERRA is the latest in a series of laws, such as the Vietnam Era Veterans' Readjustment Assistance Act ("VEVRAA"), and its amendment the Veterans' Reemployment Rights Act of 1974 ("VRRA"), that Congress has enacted to protect the rights of military service members who take leaves of absence from their employers to perform military service.  Crews v. City of Mt. Vernon, 567 F.3d 860, 864 (7th Cir. 2009); Rogers v. City of San Antonio, 392 F.3d 758, 762 (5th Cir. 2004).  In enacting USERRA, Congress emphasized its continuity with the VRRA and with the body of caselaw that had developed under USERRA's predecessor statutes.  United States v. Alabama Dept. of Mental Health and Mental Retardation, 673 F.3d 1320, 1329 n.6 (11th Cir. 2012); Crews, 567 F.3d at 864.

Congress stated in the first section of USERRA that its purposes, among others, are "to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can

-5-

result from such service" and "to prohibit discrimination against persons because of their service in the uniformed services." 38 U.S.C. §§ 4301(a)(1) and (a)(3); see also Carroll v. Delaware River Port Auth., 843 F.3d 129, 131 (3d Cir. 2016). As our Court of Appeals has explained, "we must construe USERRA's provisions liberally, in favor of the service member." Gordon v. Wawa, 388 F.3d 78, 81 (3d Cir. 2004).  Likewise, the Supreme Court has recognized a rule of construction that "interpretative doubt is to be resolved in the veteran's favor." Brown v. Gardner, 513 U.S. 115, 118 (1994).

We first consider AAI's motion to dismiss count III for failure to state a claim.  Scanlan alleges that AAI's policy of not paying employees out on short-term military leave while paying employees for comparable forms of short-term leave, such as for jury duty, sick leave, and union leave, violates § 4316(b)(1) of USERRA.

This section of USERRA provides, in relevant part:

(b)(1) . . . a person who is absent from a position of employment by reason of service in the uniformed services shall be--

(A) deemed to be on furlough or leave of absence while performing such service; and

(B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a

-6-

> contract, agreement, policy, practice, or
> plan in effect at the commencement of such
> service or established while such person
> performs such service.

38 U.S.C. § 4316(b)(1) (emphasis added).

Section 4303 defines "rights and benefits" as follows:

> (2) . . . "rights and benefits" means terms,
> conditions, or privileges of employment,
> including any advantage, profit, privilege,
> gain, status, account, or interest
> (including wages or salary for work
> performed) that accrues by reason of an
> employment contract or agreement or an
> employer policy, plan, or practice and
> includes rights and benefits under a pension
> plan, a health plan, an employee stock
> ownership plan, insurance coverage and
> awards, bonuses, severance pay, supplemental
> unemployment benefits, vacations, and the
> opportunity to select work hours or location
> of employment.

38 U.S.C. § 4303.

AAI, at the pleading stage, does not contest Scanlan's allegations that it pays its employees on jury duty, sick leave, and union leave, and does not pay those on short-term military leave.  Nor does AAI at this time challenge Scanlan's assertion in the amended complaint that short-term military leave is comparable to absence from work for jury duty, sick leave or union leave.  See Brill v. AK Steel Corp., No. 2:09-CV-534, 2012 WL 893902, at *3-7 (S.D. Ohio Mar. 14, 2012).  AAI simply argues that USERRA does not require employers to pay its employees wages for periods when they are on military leave.  Ordinary

-7-

wages for work not performed while on military leave, AAI
contends, are not "rights and benefits" under § 4316(b)(1).

In opposition to AAI's motion to dismiss, Scanlan
relies heavily on the decision of our Court of Appeals in
Waltermyer v. Aluminum Co. of Am., 804 F.2d 821 (3d Cir. 1986).
There, plaintiff took periods of leave from work for reserve
training that included two designated holidays.  Id. at 822.
Employees were generally not paid for holidays unless they
worked every other day of the week in which the holiday fell.
Id.  However, employees on jury duty, testifying in court, or
suffering from illness were paid regardless.  Plaintiff claimed
that his employer discriminated against him under the VEVRAA
because of his status as a reservist in failing to pay him for
those two days when those not on reserve duty as described above
were paid for those holidays.  Id.  The Court of Appeals,
reversing the district court, ordered judgment to be entered in
favor of the plaintiff for the holiday pay at issue.  It did so
on the ground that his military leave was comparable to the non-
military forms of leave because of their short duration and
"lack of choice by the employees."  Id. at 825.  Paying
plaintiff for those holidays established "equality . . . not
preferential treatment."  Id.

The Court in Waltermyer noted that the plaintiff was
not suing for compensation for other days not worked and thus

was seeking less compensation than was paid to those on jury
duty who received their regular wage while absent from their
jobs.  The Court specifically limited its holding to the
question of what it described as "holiday pay."  Id.  The issue
referenced but not decided in Waltermyer and now presented here
is whether the failure to pay reservists on military leave the
differential between their regular civilian pay and their
military pay states a viable claim under § 4316(b)(1) of USERRA
when other employees are either paid the differential while on
jury duty or their full regular pay while absent from work on
sick leave or union leave.

AAI cites a number of cases including the Supreme
Court's decision in Monroe v. Standard Oil Co., 452 U.S. 549
(1981) in support of its position that Scanlan has not stated a
claim.  AAI quotes the Supreme Court's language that the
legislative history of the VEVRAA is "barren of any indication
that Congress intended employers to compensate employees for
work hours missed while fulfilling military reserve
obligations."  Id. at 562 n.13.

In Monroe, the petitioner was required to work five
days per week, although he did not work the same days each week.
He was also a member of the military reserve and had training on
some weekend days.  His military schedule occasionally forced
him to miss scheduled weekend work when he was unable to switch

-9-

shifts with coworkers.  Petitioner's employer permitted him to take leaves of absence to perform his military duties but did not pay him for his missed work days or permit him to make up missed work by picking up additional shifts.  Id. at 551-52. The Supreme Court held that the VEVRAA does not require an employer to make reasonable work schedule accommodations for members of the military not made for other employees.  We note that our Court of Appeals in Waltermyer discussed Monroe but did not find Monroe to be an impediment to its ruling in favor of holiday pay for an employee on short-term military leave.

Monroe and other decisions that AAI cites are distinguishable from the circumstances alleged here.  In none of those cases were there any allegations that employees absent from work for non-military reasons were treated more favorably than those who were absent on short-term military duty. See Miller v. City of Indianapolis, 281 F.3d 648, 651 (7th Cir. 2002); Duncan v. Tyco Fire Prod., LP, No. 1:16-CV-00916, 2018 WL 3303305, at *4 (N.D. Ala. July 5, 2018); Buckley v. Peak6 Investments, LP, 827 F. Supp. 2d 846, 856 (N.D. Ill. Oct. 27, 2011); Brooks v. Fiore, No. 00-803, 2001 WL 1218448, at *9-10 (D. Del. Oct. 11, 2001).

Under 38 U.S.C. § 4331, the Secretary of Labor, in consultation with the Secretary of Defense, is authorized to promulgate regulations to implement USERRA.  Defendants rely on

-10-

a Department of Labor regulation which states in part, "although
USERRA does not require an employer to pay an employee for time
away from work performing service, an employer policy, plan, or
practice that provides such a benefit is permissible under
USERRA."  20 C.F.R. § 1002.7.  Defendants' citation of this
regulation does not present the complete picture.  Scanlan calls
our attention to another Department of Labor regulation under
USERRA which mirrors what he alleges here and requires payment
to those on short-term military duty when paid non-military
leave is granted in comparable situations.  It provides:

> (b) If the non-seniority benefits to which
> employees on furlough or leave of absence are
> entitled vary according to the type of leave,
> the employee must be given the most favorable
> treatment accorded to any comparable form of
> leave when he or she performs service in the
> uniformed services.  In order to determine
> whether any two types of leave are comparable,
> the duration of the leave may be the most
> significant factor to compare.  For instance, a
> two-day funeral leave will not be "comparable"
> to an extended leave for service in the
> uniformed service.  In addition to comparing the
> duration of the absences, other factors such as
> the purpose of the leave and the ability of the
> employee to choose when to take the leave should
> be considered.

20 C.F.R. § 1002.150(b) (emphasis added).

AAI also focuses on the specific words of § 4316(b)(1)
to support its argument that Scanlan has not stated a claim for
relief under USERRA.  Specifically, it maintains that the phrase
"rights and benefits" as defined in § 4303 and used in

-11-

§ 4316(b)(1) does not encompass the relief Scanlan seeks.
According to AAI, "rights and benefits" to which an employee in
uniformed service is entitled while on leave does not include
wages for work not performed.

We turn to the words used by Congress in USERRA.  The
definition of "rights and benefits" in 38 U.S.C. § 4303(2) is
extremely broad.  It means "the terms, conditions, or privileges
of employment, including any advantage, profit, privilege, gain,
status, account, or interest (including wages or salary for work
performed) . . . and includes . . . bonuses, severance pay,
supplemental unemployment benefits, [and] vacations." 38 U.S.C.
§ 4303(2) (emphasis added).  Section 4303(2) was amended in 2010
to change the parenthetical from "other than wages or salary for
work performed" to the more inclusive language stated above.
See Gross v. PPG Indus., Inc., 636 F.3d 884, 889 n.3 (7th Cir.
2011).  The definition of rights and benefits, of course,
embraces not only wages or salary for work performed but much
more.  Because the definition uses the words "including" and
"includes," the words following "including" and "includes" are
simply illustrative of the expansive language "the terms,
conditions or privileges of employment" which precedes the
illustrations.  The examples mentioned are not exclusive.
See Fed. Land Bank of St. Paul v. Bismarck Lumber Co.,
314 U.S. 95, 100 (1941).

-12-

In Waltermyer, our Court of Appeals awarded holiday pay, that is wages for work not performed.  804 F.2d at 822.  If compensation for holidays in Waltermyer and for severance pay and vacations explicitly referenced in § 4316(b)(1) are merely illustrations of the definition of rights and benefits and involve pay for work not performed, we are hard pressed to understand why compensation for time on military leave for work not performed would not also fit within the definition.

Section 4316(b)(1), of course, only requires employees on military leave to be provided with comparable rights and benefits to which those on non-military absences are entitled.  If a right and benefit is not provided to an employee on a non-military related absence, the right or benefit is not due the employee on military leave.  As noted above, AAI concedes for present purposes that short-term military leave is comparable to leave for jury duty, sickness or union responsibilities.  While compensation for time on military leave is not required when it would be preferential treatment, § 4316(b)(1) mandates payment when failure to pay such compensation constitutes unequal treatment for those on reserve duty.

AAI points to the use of the word "accrues" in the definition of rights and benefits under § 4303 to negate Scanlon's claim.  It argues that rights and benefits does not

-13-

include wages paid to an employee on military leave because such
wages are not a term, condition, or privilege of employment in
the language of § 4303 that "accrues by reason of an employment
contract or agreement or an employee policy plan or practice."
Instead, AAI contends that wages, including wages for work not
performed, do not accrue but are earned.  AAI, in support, cites
the second definition of "accrue" in <u>Black's Law Dictionary</u>
(11th ed. 2019):  "To accumulate periodically, to increase over
a period of time."  AAI overlooks, however, the first definition
in <u>Black's Law Dictionary</u>:  "To come into existence as an
enforceable claim or right."  <u>Id.</u>  The right to be paid for work
not performed while on military leave comes into existence and
thus accrues as an enforceable claim in the exact same way as
the right to holiday pay, severance pay, or vacation pay, all
for time periods when no work is performed.  AAI's argument
based on the definition of "accrues" fails.

AAI further maintains that § 4316(b)(1) applies in
favor of an employee on short-term military leave only when
other employees have "a leave of absence under a contract,
agreement, policy, practice or plan."  AAI contends that Scanlan
has no claim here because the pilots' collective bargaining
agreement ("CBA") does not consider jury duty, sick leave, and
union leave to be "leaves of absence."  This argument, too, is
without merit.  First, § 4316(b)(1) defines a person to be on a

-14-

leave of absence who is "absent from a position of employment by reason of service in the uniformed services."  Thus, "leave of absence" is not a technical term under USERRA but simply means an absence from work.  Moreover, an employer's or a union's different definition of leave of absence in a CBA or otherwise cannot undermine the requirements of USERRA.  As the Supreme Court has explained in <u>Accardi v. Pennsylvania Railroad Co.</u> regarding a statute granting employment benefits to service members, "employers and unions are [not] empowered by the use of transparent labels and definitions to deprive a veteran of substantial rights guaranteed by the Act."  383 U.S. 225, 229, (1966).

Finally, AAI contends that a ruling in favor of plaintiff would have negative or unintended consequences.  It raises the specter, for example, that employers would no longer pay employees for jury service or sick leave in order to avoid paying reservists on military duty while away from work.  While we doubt this would occur, we must read the unambiguous text of USERRA as written by Congress without engaging in speculation about any collateral consequences.

We return to the purposes of USERRA "to encourage noncareer service in the uniform services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service" and "to prohibit

-15-

discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4301. The words of USERRA must be construed liberally in favor of those in the uniformed services. <u>Gordon</u>, 388 F.2d at 81. Congress, we agree, did not impose a requirement in USERRA that employers in all instances provide differential pay to employees while on military leave. Nonetheless, § 4316(b)(1) clearly mandates that employers on military leave be treated equally with other employees with respect to their terms, conditions, and privileges of employment. As our Court of Appeals stated in <u>Waltermyer</u> in connection with USERRA's predecessor, "the statute establishes equality as the test." 804 F.2d at 824. That is likewise true here. Equal treatment exists only if those employees on short-term military leave have the same rights and benefits as other employees in comparable situations. Scanlan has plausibly alleged that he and those similarly situated have not been afforded equal treatment with other employees in comparable situations. <u>See</u> <u>Brill</u>, 2012 WL 893902. We see no material difference between the allegations here and those in <u>Waltermyer</u>. Count III of the amended complaint states a viable claim for relief under § 4316(b)(1) of USERRA.

IV

    Scanlan alleges in count I of the amended complaint that AAG violated § 4316(b)(1) of USERRA by not crediting

-16-

participants who took short-term military leave with imputed earnings for those periods when calculating their profit sharing awards, while crediting participants with their full earnings while on jury duty, sick leave, and union leave.[1]  As a result, he asserts that participants who took short-term military leave had lower "eligible earnings," and received lower profit sharing awards, than provided to employees who take comparable forms of leave.

Our analysis with respect to count III likewise applies with respect to count I.  Scanlan has plausibly alleged a claim under § 4316(b)(1) that AAG has not provided equal rights and benefits under its profit sharing Plan to employees on short-term military leave.  Scanlan's claim under count I survives.

V

Finally, AAG moves to dismiss count II which alleges that AAG's calculation of profit sharing awards under its Plan violates § 4318(b)(1) of USERRA.

Pursuant to the Plan, as noted above, AAG sets aside five percent of its pre-tax earnings each plan year for

---

1.  Plaintiff maintains that AAG as well as AAI is an employer under USERRA because § 4303(4) states that "employer means any person . . . or entity that pays salary or wages for work performed or that has control over employment opportunities."  AAG has not challenged its status as an employer.

-17-

participating employees.  Employees receive their awards as a
lump sum payment in the beginning of the following year, and may
elect to deposit all or part of their award in their retirement
plans if the plan so permits.  AAG calculates each employee's
award by dividing this total by the aggregate amount of all
participating employee's earnings and multiplying that value by
that employee's eligible earnings that year.  AAG does not
credit military leave in an employee's eligible earnings but
does so for jury duty, sick leave, and union leave.

Section 4318 of USERRA governs the right of employees
to benefits under "employee benefit pension plans, (including
those described in sections 3(2) and 3(33) of the Employee
Retirement Income Security Act of 1974)," ("ERISA").  38 U.S.C.
§ 4318(a)(1)(A).  USERRA, according to Department of Labor
regulations, also covers certain pension plans not covered by
ERISA.  20 C.F.R. § 1002.260(a).

Section 4318(b)(1) states in relevant part:

(b)(1) An employer reemploying a person under
this chapter shall, with respect to a period of
service described in subsection (a)(2)(B), be
liable to an employee pension benefit plan for
funding any obligation of the plan to provide the
benefits described in subsection (a)(2) and shall
allocate the amount of any employer contribution
for the person in the same manner and to the same
extent the allocation occurs for other employees
during the period of service. For purposes of
determining the amount of such liability and any
obligation of the plan, earnings and forfeitures
shall not be included. For purposes of

-18-

> determining the amount of such liability and for
> purposes of section 515 of the Employee
> Retirement Income Security Act of 1974 or any
> similar Federal or State law governing pension
> benefits for governmental employees, service in
> the uniformed services that is deemed under
> subsection (a) to be service with the employer
> shall be deemed to be service with the employer
> under the terms of the plan or any applicable
> collective bargaining agreement.

38 U.S.C. § 4318.

Section 3(2) of ERISA, cited in USERRA, states that "the term 'employee benefit plan' or 'plan' means an employee welfare benefit plan or an <u>employee pension benefit plan</u> or a plan which is both an employee welfare benefit plan and an employee pension benefit plan."  29 U.S.C. § 1002(3) (emphasis added).  ERISA goes on to define an "employee pension benefit plan" and "pension plan" as:

> [A]ny plan, fund, or program which was heretofore
> or is hereafter established or maintained by an
> employer or by an employee organization, or by
> both, to the extent that by its express terms or
> as a result of surrounding circumstances such
> plan, fund, or program--
>
> > (i) provides retirement income to employees,
> > or
> >
> > (ii) results in a deferral of income by
> > employees for periods extending to the
> > termination of covered employment or beyond,
>
> regardless of the method of calculating the
> contributions made to the plan, the method of
> calculating the benefits under the plan or the
> method of distributing benefits from the plan.

-19-

29 U.S.C. § 1002(2)(A).  ERISA expressly exempts from its
coverage certain plans that would otherwise meet its definition
of an employee benefit plan, including plans administered by the
government and churches.  29 U.S.C. § 1003(b).

    Scanlan contends that the Plan meets the ERISA
definition of an employee pension benefit plan and thus falls
within § 4318 because it permits employees to designate an
amount of their profit sharing awards toward their retirement.
The mere fact that employees may elect to allocate some or all
of their profit sharing awards toward their retirement funds
does not mean that ERISA covers the Plan.

    Our Court of Appeals has relied upon Murphy v. Inexco
Oil Co., 611 F.2d 570 (5th Cir. 1980) as a "leading case" on
employee pension benefit plans under ERISA and has cited it with
approval.  See Oatway v. Am. Int'l Grp., Inc., 325 F.3d 184, 187
(3d Cir. 2003).  The Court in Murphy examined the definition of
an "employee benefit pension plan" under ERISA and stated that
it is "not to be read as an elastic girdle that can be stretched
to cover any content that can conceivably fit within its reach."
611 F.2d at 575.  The phrase "provides retirement income" in
29 U.S.C. § 1002(2)(A)(i) "patently refer[s] only to plans
designed for the purpose of paying retirement income."  Id.  The
Court further noted that Congressional regulations exclude from
the definition payments made as bonuses, unless the payments are

-20-

systematically deferred until the termination of employment or so as to provide retirement income.  <u>Id.</u> (citing 29 C.F.R. § 2510.3-2(c)).

The plan at issue in <u>Murphy</u> was one where the company awarded employees the right to receive a royalty, that is, a fraction of the proceeds that may accrue from certain projects. Employees maintained that right even after they left the company.  The Court held it was not an employee benefit pension plan under § 1002(2)(A)(i) of ERISA because it was "designed to provide current rather than retirement income."  <u>Id.</u> at 575-76. The plan also did not result in the deferral of income under § 1002(2)(A)(ii) because the royalty was paid annually to the employee as it was received.  The mere fact that some payments under the plan may be made after retirement did not bring it within the grasp of ERISA coverage.  <u>Id.</u> at 575.  Instead, the Court reasoned that this plan was a bonus plan that did not systemically defer income toward retirement.  <u>Id.</u>

Our Court of Appeals relied on the <u>Murphy</u> analysis to determine whether agreements that allowed plaintiff to purchase certain shares of stock of his employer were "incentive bonuses" or deferred compensation agreements covered by ERISA.  <u>Oatway</u>, 325 F.3d at 187.  The Court explained that "[t]he <u>Murphy</u> court reasoned that an ERISA plan is only a plan 'designed for the purpose of paying retirement income whether as a result of [its]

-21-

express terms or surrounding circumstances.'"  Id. at 188

(citing Murphy, 611 F.2d at 575-76).  The Court agreed with the

district court's characterization of the plan as "an incentive

plan designed to provide a financial incentive for employees to

remain" with the employer.  Post-retirement income was only

incidental to the goal of providing current compensation.

Id. at 189.  The Court also observed that the stock options were

discretionary, given in recognition of special service, and

awarded in addition to regular compensation.  Moreover, they did

not result in the deferral of income even though they could be

exercised after plaintiff retired.  Id.  Because of these

characteristics, the Court concluded that the stock options were

not ERISA plans and affirmed the district court's dismissal of

plaintiff's complaint under Rule 12(b)(6).  Id.

        To sustain count II, plaintiff relies on Tolbert v.

RBC Capital Markets Corp., 758 F.3d 619 (5th Cir. 2014), a more

recent decision of the Fifth Circuit.  There, plaintiffs

participated in a wealth accumulation plan where funds were

funneled into either "Voluntary Deferred Compensation,"

"Mandatory Deferred Compensation" or "Company Contribution"

categories.  758 F.3d at 622.  In this case, the Fifth Circuit

emphasized that the plan in issue described itself as a deferred

compensation plan allowing employees "to defer receipt of a

portion of their compensation to be earned with respect to the

upcoming Plan Year." Id. at 626.  The parties did not argue,
nor did the record indicate, that the plan was a bonus program
under 29 C.F.R. § 2510.3-2.  Id.  We find this case to be
inapposite.  In any event, we are bound by our Court of Appeals'
decision in Oatway, which adopted the reasoning in Murphy.

        The Plan presently before the court is designed to
provide current rather than retirement income.  It is analogous
to those plans in Murphy and Oatway.  The Purpose section of the
Plan itself states that it "rewards eligible Employees . . . for
their efforts in helping achieve the strategic, financial, and
operating objectives of . . . AAG for a designated Plan Year by
providing such eligible Employees with an opportunity to share
in AAG's profits for such year."  Under the Plan, AAG pays
participating employees their share of the total profit sharing
award for the previous year in the form of a lump-sum cash
payment within the first few months of the following year.

        While the employees participating in the Plan may
place the lump sum payments in their retirement plans, the Plan
in essence is an extra compensation or bonus plan where payments
are awarded in addition to regular compensation.  It is not a
deferred compensation plan.  The Plan specifically states that
it is intended to be exempt from regulation under ERISA as a
"bonus program" as defined in 29 C.F.R. § 2510.3-2(c) and
"payroll practice" under 29 C.F.R. § 2510.3-1(b) which governs

-23-

employee welfare benefit plans.  Of course, this language does
not guarantee the Plan is in fact exempt from ERISA, but Oatway
directs us to consider it because it reflects employer intent.
See Oatway, 325 F.3d at 186; Tolbert, 758 F.3d at 625.  As a
bonus plan, the Plan could meet ERISA's definition if it
systematically deferred payments to the termination of
employment or so as to provide retirement income.  See Murphy,
611 F.2d at 575.  The Plan does not do so.  The mere option to
deposit the lump sum payments into employees' retirement funds
does not bring the Plan within the embrace of ERISA.

        Scanlan further argues that even if it is not an
employee benefit pension plan under ERISA, it is still covered
by USERRA.  According to USERRA regulations published by the
Department of Labor, "USERRA also covers certain pension plans
not covered by ERISA, such as those sponsored by a State,
government entity, or church for its employees."  20 C.F.R.
§ 1002.260(a).  We reject Scanlan's contention that this
regulation applies to the Plan at issue.  The Plan certainly is
not "sponsored by a State, government entity, or church" and is
not otherwise similar to any such plan.  Moreover, we read this
regulation as more likely clarifying that USERRA incorporates
ERISA's general definition of employee benefit pension plan but
does not contain the same express exclusions listed in 29 U.S.C.

§ 1003(b), such as plans administered by the government and churches.

The Plan is neither an employee benefit pension plan under ERISA nor a plan exempted from ERISA but covered by USERRA.  Scanlan has not stated a claim for relief in count II under § 4318(b)(1).