No. 22-3294

# In the United States Court of Appeals for the Third Circuit

JAMES P. SCANLAN; CARLA RINER,
*Plaintiffs-Appellants,*

v.

AMERICAN AIRLINES GROUP INC; AMERICAN AIRLINES INC,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
Case No. 2-18-cv-04040 (The Hon. Harvey Bartle III)

## PLAINTIFFS-APPELLANTS' REPLY BRIEF

R. JOSEPH BARTON
COLIN M. DOWNES
BARTON & DOWNES LLP
1633 Connecticut Avenue NW
Suite 200
Washington, DC 20009
(202) 734-7046

PETER ROMER-FRIEDMAN
PETER ROMER-FRIEDMAN
LAW PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
(202) 355-6364

DEEPAK GUPTA
JONATHAN E. TAYLOR
ROBERT FRIEDMAN
GUPTA WESSLER LLP
2001 K Street NW
North Tower, Suite 850
Washington, DC 20006
(202) 888-1741

ADAM T. KLEIN
MICHAEL J. SCIMONE
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
(212) 209-0671

*Counsel for Plaintiffs-Appellants*
*(additional counsel listed on inside cover)*

July 11, 2023

MATTHEW Z. CROTTY
RIVERSIDE LAW GROUP
905 W. Riverside Avenue
Suite 404
Spokane, WA 99201
(509) 850-7011

THOMAS G. JARRARD
LAW OFFICE OF THOMAS
G. JARRARD LLC
1020 N. Washington Street
Spokane, WA 99201
(425) 239-7290

# TABLE OF CONTENTS

Table authorities ................................................................................................ ii

Introduction ...................................................................................................... 1

Argument .......................................................................................................... 4

    I.    Comparability is a jury question, and the jury may decide that
    "all, none, or only part of" the military leaves at issue in this
    case are comparable to at least one kind of non-military leave ............ 4

    II.    Because a jury could make a comparability finding as to each of
    the three enumerated factors, American is not entitled to
    summary judgment on the plaintiffs' USERRA claims. ...................... 7

    III.    The jury is not required to accept American's argument that
    the frequency of reservists' military leave defeats comparability. ........ 17

    IV.    American cannot show that it is entitled to summary judgment
    on the plaintiffs' breach-of-contract claims. ....................................... 21

Conclusion ...................................................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Advocate Health Care Network v. Stapleton,*
  581 U.S. 468 (2017) ..................................................................................8

*Canyon Fuel Co., LLC v. Secretary of Labor,*
  894 F.3d 1279 (10th Cir. 2018) ............................................................. 19

*Chevron, U.S.A. v. Natural Resources Defense Council, Inc.,*
  467 U.S. 837 (1984) ................................................................................ 19

*Clarkson v. Alaska Airlines,*
  59 F.4th 424 (9th Cir. 2023) ........................................................... *passim*

*Haring v. CPC International, Inc.,*
  664 F.2d 1234 (5th Cir. Unit B Nov. 1981) ............................................4

*In re Suboxone Antitrust Litigation,*
  967 F.3d 264 (3d Cir. 2020) ...................................................................13

*Mauldin v. Worldcom, Inc.,*
  263 F.3d 1205 (10th Cir. 2001) ............................................................. 23

*Monroe v. Standard Oil Co.,*
  452 U.S. 549 (1981) ............................................................................ 2, 18

*Myrick v. City of Hoover,*
  69 F.4th 1309 (11th Cir. 2023) ........................................................ *passim*

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank,*
  566 U.S. 639 (2012) ................................................................................. 11

*Reeves v. Sanderson Plumbing Products, Inc.,*
  530 U.S. 133 (2000) ..................................................................................4

*Rogers v. San Antonio,*
  392 F.3d 758 (5th Cir. 2004) ...................................................................4

*Travers v. Federal Express Corp.,*
  8 F.4th 198 (3d Cir. 2021) ..............................................................4, 6, 8

*Tully v. Department of Justice,*
    481 F.3d 1367 (Fed. Cir. 2007) ................................................................. 10

*Turtle Island Restoration Network v. U.S. Department of Commerce,*
    878 F.3d 725 (9th Cir. 2017) ..................................................................... 19

*Tyson Foods, Inc. v. Bouaphakeo,*
    577 U.S. 442 (2016) .................................................................................13

*United States v. Sims,*
    957 F.3d 362 (3d Cir. 2020) ......................................................................8

*Waltermyer v. Aluminum Co. of America,*
    804 F.2d 821 (3d Cir. 1986) ..................................................................3, 14

*White v. United Airlines,*
    987 F.3d 616 (7th Cir. 2021) .................................................................4, 7

*Wisconsin Central Ltd. v. United States,*
    138 S. Ct. 2067 (2018) ...............................................................................8

*Won v. Amazon.com, Inc.,*
    2022 WL 3576738 (E.D.N.Y. Aug. 19, 2022) ............................................18

## Statutory materials

38 U.S.C. § 4301 ...............................................................................2, 18

38 U.S.C. § 4312 ......................................................................1, 7, 13, 19

38 U.S.C. § 4316 ...................................................................................13

38 U.S.C. § 4317 ...................................................................................13

H.R. Rep. 103-65 ...............................................................................2, 12

## Regulations

20 C.F.R. § 1002.104 ...............................................................................8

20 C.F.R. § 1002.150 .................................................................2, 11, 12, 17

# INTRODUCTION

The issue in this appeal is narrow: whether the evidence, when viewed most favorably to the plaintiffs, would allow for a finding that at least some of the military leaves at issue here are comparable to at least one type of non-military leave.

The plaintiffs answer yes. They take the modest position that comparability is a question for the jury, and that "the jury could find that 'all, none, or only part' of the military leaves at issue are comparable to another leave." Opening Br. 36.

By contrast, American must defend the district court's extreme position: that *none* of the military leaves at issue are comparable to any other leave *as a matter of law*. And it must do so in a way that would allow section 4316(b)(1) and its implementing regulation to retain some real effect—an impossible task. *See* Opening Br. 3–4, 39.

How does American attempt to do this? Does it rely on the text of the statute? It does not. It makes no effort to identify any language in section 4316(b) supporting its position—let alone language clear enough to overcome the pro-veteran canon. American refers to section 4316(b)'s text only once, reproducing it in the background and then never returning to it. And the text is fatal to American's position: It contains no comparability requirement *at all*, much less one that would make the statute's protections contingent on *in*frequent military service, as American maintains. To the contrary, Congress expressly granted full protection to reservists no matter "the timing, frequency, and duration of [their] training or service." 38 U.S.C. § 4312(h).

Does American rely on any legislative history? It does not. History, like text, shows that Congress enacted section 4316(b) to give military leave "the most favorable treatment accorded any particular leave." H.R. Rep. 103-65, at 33. It did so fully aware of—indeed, *because of*—the "frequent absences from work of an employee-reservist." *Monroe v. Standard Oil Co.*, 452 U.S. 549, 565 (1981). Congress's goal was "to encourage noncareer [military] service," not discourage it. 38 U.S.C. § 4301(a).

Does American identify any case adopting its view of USERRA? It does not. It concedes (at 42) that *Clarkson v. Alaska Airlines*, 59 F.4th 424 (9th Cir. 2023), rejects its position and asks this Court to "not follow it." American could have said the same of *Myrick v. City of Hoover*, 69 F.4th 1309 (11th Cir. 2023), issued two weeks before it filed its brief. There, the Eleventh Circuit expressly agreed with *Clarkson*, rejected the same arguments that American makes here, and held that military leave was comparable to a "typically short" leave like jury-duty leave. *Id.* at 1313, 1319–20 & n.8.

Instead of relying on the statute's text, history, or case law, American takes a different tack. It argues that the Department of Labor's implementing regulation is what entitles it to summary judgment. Like the district court below, American relies almost exclusively on the frequency of reservists' leave. But the regulation, of course, does not mention frequency as a factor to consider in applying section 4316(b). It lists only duration, purpose, and control. 20 C.F.R. § 1002.150. So American claims (at 20) that "duration" really means "frequency times . . . duration." Congress, however,

disagreed. It left no doubt in USERRA that "frequency" and "duration" are two different things—one does not encompass the other—and DOL did the same in its regulations. *See* Opening Br. 37–38; *Clarkson*, 59 F.4th at 436. Frequency, then, is at best an *un*enumerated factor under the regulation. And where, as here, a jury could find that "the three enumerated factors favor the [plaintiffs], the unenumerated factors do not change the outcome" as a matter of law. *Myrick*, 69 F.4th at 1320 n.8.

American also tries to harmonize its position with *Waltermyer v. Aluminum Co. of America*, 804 F.2d 821 (3d Cir. 1986), by claiming that the comparability analysis must morph depending on the benefit in question, so that two leaves can be comparable for one benefit but not for another. Under this proposed approach, what matters is whether an employer has a neutral justification for its discriminatory policy. This approach is untethered to any statutory or regulatory text, lacks support in the cases, and wouldn't help American anyway. Even if it were the law, the adequacy of any claimed justification would be a jury question. Here, American cites no evidence showing that providing differential pay for some (or even all) of the military leaves at issue would be substantially more costly than what it pays for jury leave. If anything, American highlights how much *greater* military pay is than juror pay—and thus how much *less* it would cost to make up the difference. And American makes no argument about the costs of applying its bereavement-leave policy (capped at three days of pay) to military leave. So even under its own invented approach, reversal is required.

## ARGUMENT

**I.    Comparability is a jury question, and the jury may decide that "all, none, or only part of" the military leaves at issue in this case are comparable to at least one kind of non-military leave.**

Before turning to the central issue on appeal, three points merit a quick word.

The first is a point that American now concedes: Comparability is a "question of fact." AA Br. 19; *accord Travers v. Fed. Express Corp.*, 8 F.4th 198, 209 n.26 (3d Cir. 2021); *White v. United Airlines*, 987 F.3d 616, 625 (7th Cir. 2021); *Rogers v. San Antonio*, 392 F.3d 758, 771–72 (5th Cir. 2004). "It is thus a question for the jury unless the facts of a case suggest that no reasonable jury could see enough commonality for a meaningful comparison" of the relevant leaves. *Clarkson*, 59 F.4th at 434 (cleaned up). Likewise, "the question of the weight to be accorded admissible statistical evidence is a jury question." *Haring v. CPC Int'l, Inc.*, 664 F.2d 1234, 1240 (5th Cir. Unit B Nov. 1981). "When parties offer conflicting inferences drawn from the statistical evidence, there is a genuine dispute of material fact." *Clarkson*, 59 F.4th at 435 (cleaned up).

The second point is that the "relevant facts" are very much "disputed." *Contra* AA Br. 10. The parties quarrel about numerous material facts and inferences— including how much weight to give each comparability factor, which metrics to use in comparing leaves, which inferences to draw from statistical evidence, the purpose of the leaves, the degree of control pilots have when taking them, and the ultimate question of comparability. Resolving these disputes "are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

The final preliminary point is about the plaintiffs' theory of liability—namely, their allegation that all military leaves of up to 16 days are comparable to at least one form of non-military leave. American tries to portray this theory of liability as an attempt to "gerrymander comparability through artful pleading," AA Br. 17, and as one that requires a categorical approach to duration, under which every instance of military leave that is alleged to be comparable in duration—whether two days or two weeks—must rise or fall together. *See* AA Br. 33–38. Neither is true.

As the plaintiffs repeatedly stated in their opening brief, they are not urging an all-or-nothing approach. Their position is that comparability looks to the duration of each military leave in question, so "the jury could find that 'all, none, or only part' of the military leaves at issue are comparable to another leave." Opening Br. 36; *see also id.* at 5, 24, 28 (same). "It could find, for instance, that only leaves up to 10 days are comparable." *Id.* at 36. Or the jury could find that just "two or three days" are comparable. AA Br. 31. Were it to do so, American would not be required to treat a 16-day leave the same as a one-day leave. *Contra* AA Br. 37 (assuming otherwise).

The reason that the plaintiffs drew the line at 16 days is not because they think that it's a categorical approach and everything within the 16-day category necessarily produces the same answer on comparability. Rather, they drew the line at 16 days because that is American's *own policy*. *See* A1689 (treating all military leaves of up to 16 days as short-term). In keeping with that policy, the plaintiffs believe that everything

in the 16-day category is comparable in duration to the other leaves (even if some are more so than others). But again, they freely admit that a jury need not agree.

Moreover, even if a jury were to find that some or all of the relevant military leaves are comparable to another type of leave, that finding would require only *equal* treatment as to each comparable leave—not preferential treatment. A finding of comparability as to bereavement leave, for instance, would not entitle American pilots to "dozens" of days of paid military leave every year. *Contra* AA Br. 16. As the plaintiffs explained, "paid bereavement leave is capped at three days, so a finding of comparability would be similarly limited." Opening Br. 36. Nor do the plaintiffs seek fully paid leave—that is, their full regular salary, with no deduction for military pay. Because American provides only differential pay for jury leave, the plaintiffs seek only that same benefit. Further, if a jury were to find that any of the plaintiffs' military leaves are comparable to another leave, it could also find that the relevant benefit is not an *unlimited* number of paid days, but some fixed amount in "practice." *Travers*, 8 F.4th at 204. American could even argue for just "a few days" of pay. AA Br. 16.

The point is this: American casts this case in decidedly stark terms—as whether it must pay class members for *all* days of *all* short-term military leave taken during the class period, or *no* days for *any* such leave. But that is a false choice. Although jurors could theoretically resolve the case at one of these extremes, they will also be permitted to land somewhere in between. The choice will be theirs.

**II.    Because a jury could make a comparability finding as to each of the three enumerated factors, American is not entitled to summary judgment on the plaintiffs' USERRA claims.**

With these preliminaries out of the way, we now turn to the main question on appeal: whether a jury could make a finding of comparability for "any given stretch of military leave" at issue. *White*, 987 F.3d at 625. The district court granted summary judgment because it held that none of the military leaves at issue are comparable to any non-military leave as a matter of law. As the plaintiffs explained in their opening brief, that was error. In this case, as in *Clarkson*, "the record evidence presents genuine issues of material fact as to each [comparability] factor" in the DOL regulation—duration, purpose, and control—and would thus allow a jury to find that all or some of the military leaves at issue are comparable to another leave. 59 F.4th at 434.

None of American's arguments to the contrary have any merit.

***Duration.*** American makes two key moves on duration. It first argues (at 20) that "duration" does not mean duration alone, but "frequency times . . . duration" (or to use American's preferred moniker, "cumulative duration"). But, as the Ninth Circuit explained in rejecting this same argument: "Frequency is not encompassed within duration. Rather, the two terms convey distinct concepts." *Clarkson*, 59 F.4th at 436 (comparing dictionary definitions). Congress took the same view in USERRA, using both "duration" and "frequency" in a nearby provision. *See* 38 U.S.C. § 4312(h) (providing that "the timing, frequency, and duration of [a] person's training or

service" in the military "shall not be a basis for denying [USERRA's] protection[s]"). DOL then followed suit. 20 C.F.R. § 1002.104. American's interpretation cannot be reconciled with this statutory and regulatory text, for it would violate any number of bedrock interpretative canons. *See, e.g.*, *Advoc. Health Care Network v. Stapleton*, 581 U.S. 468, 477 (2017) ("surplusage canon"); *Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018) ("ordinary meaning" canon); *United States v. Sims*, 957 F.3d 362, 365 (3d Cir. 2020) ("consistent usage" canon); *Travers*, 8 F.4th at 208 n.25 ("pro-veteran canon").

American has no real response. The best it can do is say that the agency's use of both "duration" and "frequency" in its other, contemporaneous regulation should be ignored or dismissed because DOL was just "parrot[ing] the text of the statutory provision it implements." AA Br. 25. That is backwards. The fact that *Congress*—in a neighboring provision of USERRA—understood "duration" and "frequency" to have different meanings forecloses American's argument to the contrary.

But even if American were right, summary judgment would still be improper. The record shows that one pilot, for example, took 77 days of jury leave over the class period—about the average amount of short-term military leave per class member in that period. A529. The record also shows that one pilot took 62 days of jury leave in one year—an amount that exceeds approximately 99% of the annual short-term military leave taken by *any* pilot during *any* year in the class period, and that is triple the annual average for such leave. *Id.* And the record shows that a different pilot took

66 separate instances of jury leave over the class period—more than twice the average for short-term military leave. *Id.* Based on this record evidence, a jury could comfortably conclude (as the Eleventh Circuit did in *Myrick*) that these instances "set the upper strata of paid [jury] leave that [American] was willing to provide its employees." 69 F.4th at 1320. They "demonstrate that [American] was inclined to provide paid [jury] leave for up to [at least 62 days in a year]," which is comparable to the average "upper strata" for annual short-term military leave. *Id.* Accordingly, a jury could find that, had the plaintiffs been on jury leave "instead of military leave, they would have received [differential pay] for each period of service." *Id.*[1]

Furthermore, even if "duration" meant "cumulative duration," the jury could still determine the cumulative duration that is comparable. It could find that up to 62 days per year, for instance, is comparable to jury leave, but no more. Even American's own interpretation of the regulation, then, does not support affirmance.

American's second move is to shift focus to the average length of all military leave—including long-term military leave (which is not at issue here). *See* AA Br. 10, 33. From the very first sentence of its brief onward, American tries to convey the

---

[1] The Eleventh Circuit held that even long-term military leave (including leave lasting 1,752 days) was comparable to administrative leave—a "typically short" leave that included jury duty—based on a comparison of "the longest instances of military leave" and "the longest average instances of . . . administrative leave." *Myrick*, 69 F.4th at 1313, 1319–20 & n.7. And the court did so as a matter of law. The plaintiffs' position here is decidedly more modest: that only short-term leave is comparable, and that this is an issue for the jury—the same conclusion reached in *Clarkson*.

impression that this case is about long-term military leave. It repeatedly points to the average amount of all military leave across the class, and all military leave taken by the named plaintiffs, both of which include long-term deployments. *See* AA Br. 1, 2, 9, 10, & *passim*. Thus, even though the vast majority of military leaves at issue in this case lasted for no more than a few days, American suggests that the relevant duration should be 15.8 days—the average length of all military leave taken. *See* AA Br. 33. In a similar vein, even though the plaintiffs took an average of only 21 days of short-term military leave per year, A529, American says (at 1) that the relevant average is five times that amount—"106 days . . . per year"—accounting for long-term leave.

But as the plaintiffs explained in their opening brief, and the Ninth Circuit held in *Clarkson*, the duration inquiry doesn't work like this. *See* Opening Br. 29–31, 36; *Clarkson*, 59 F.4th at 433–34. It does not lump together all military leave together and consider that to be an indivisible category for comparability purposes, so that a two-day training is treated the same as a two-year deployment. *Compare Waltermyer*, 804 F.2d at 825 (holding that a two-week military leave is comparable to jury leave and awarding holiday pay), *with Tully v. Dep't of Just.*, 481 F.3d 1367, 1370 (Fed. Cir. 2007) (holding the opposite for a two-year military leave and denying holiday pay). Instead, the inquiry must focus on the length of the particular military leave at issue.

That is true for numerous reasons, beginning with the text of the regulation. American claims that the regulation calls for a categorical approach to duration

because it refers to "types of leave." AA Br. 40. But the regulation specifically directs otherwise. It provides that "a two-day funeral leave will not be 'comparable' to an extended leave for service in the uniformed service." 20 C.F.R. § 1002.150(b). This specific directive—to take one particular leave and compare it to another—supplants any inference that could otherwise be drawn from the general reference to "types of leave." *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("[T]he specific governs the general."). In contrast, no such directive exists for the other factors (purpose and control), so a categorical inquiry there is appropriate.

This is also the only administrable approach. Although American asserts (at 40) that a non-categorical approach to duration "would be impossible to administer," its own experience flatly disproves that assertion. When American settled the pilots' claims in *Woodall*, it drew a clear line: Military leave of "16 consecutive days or less" is to be treated the same as jury-duty leave, but not military leave of over 16 days. *See* Pls.' Mem. in Supp. at 4, 15–16, *Woodall v. Am. Airlines*, 2006 WL 2914135 (N.D. Tex. 2006). American has the same policy today. A1689. The plaintiffs simply ask it to apply that clear policy and provide the equal benefit of differential pay.

Now contrast American's own 16-day rule with the regime it seems to clamor for. Under American's preferred approach to duration, short- and long-term military leave would have to be treated equally. So if the category of military leave as a whole were comparable to, say, sick leave, an employee on a one-year military leave would

have to be given the same benefits as an employee on a two-day sick leave—in direct conflict with the regulation's text and the case law. Alternatively, if viewing "military leave" categorically meant that no other leave, as a practical matter, could ever be comparable because of the presence of those extended leaves, section 4316(b)(1) would have no real effect. Either way, the result would be intolerable. And either way, an employer would be forced to constantly reevaluate its comparability determinations and leave policies depending on how many employees happen to be on long-term military leave at any given time—an unworkable and senseless state of affairs.

American also says (at 40) that "an individual-leaves approach would require an apples-to-oranges comparison" of "the duration of *each* specific military leave to the *average* duration of jury-duty or bereavement leave." But that, too, ignores the text of the regulation. Again, the regulation states that the length of a specific military leave (*e.g.*, "an extended leave") should be compared to the length of a specific non-military leave (*e.g.*, "a two-day funeral leave"). 20 C.F.R. § 1002.150(b). Applying that apples-to-apples approach here, the jury would ask whether each military leave at issue (none of which surpasses 16 days) is comparable in duration to, for example, the 52-day jury leave that American provided in the class period. A529. This approach also respects the legislative history, which states that an employer may not deny any benefit to an employee on "reserve or National Guard" leave unless it denies that benefit to "all other employees who miss work." H.R. Rep. 103-65, at 34.

In a final bid to avoid the correct interpretation of the regulation, American invokes the doctrine of judicial estoppel. AA Br. 41. It plucks a single sentence from page 28 of the plaintiffs' class-certification reply brief and declares (without citation) that "[t]he district court certified the class" based on that sentence. *Id.* But American does not even mention (let alone attempt to satisfy) the criteria for judicial estoppel, and there is no evidence remotely supporting the idea that the district court certified the class based on that sentence. American itself conceded that "the proof required to resolve the American pilots' claims will be common." Dist. Ct. ECF No. 98 at 24. And the propriety of class certification has nothing to do with the parties' dispute about how to conduct the duration inquiry. Determining the length of each military leave at issue is a ministerial task that does not defeat predominance and would be necessary to calculate damages in any event. It is no barrier to certification. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016); *In re Suboxone Antitrust Litig.*, 967 F.3d 264, 271 (3d Cir. 2020) (rejecting the argument that the "need for individualized damages inquiries defeats predominance"). The jury will be able to determine the length of military leave that is comparable—whether two days, 16 days, or something in between—and that determination will then apply uniformly across the class.[2]

---

[2] Even if the regulation required a categorical approach, American would not be entitled to summary judgment. For one thing, there is good reason to distinguish between the categories of short- and long-term military leave. Other provisions of USERRA do so. *See* 38 U.S.C. §§ 4312(e)(1)(A)(i); 4316(c)(2); 4317(a)(2). American does too. A1689. Again, it is not "gerrymandering" to use American's own line-drawing.

***Purpose.*** On the second enumerated factor, American concedes (at 48) that military and jury-duty leave share a common purpose. Yet it claims that the record requires a finding that this factor is somehow "different" as a matter of law because military leave entails "significant pay," while juror leave does not. AA Br. 48–49.

That is triply wrong. *First*, the question under the regulation is whether the purpose of *the leave* is comparable. A jury could undoubtedly find that American provides jury-duty leave for the same reason that it provides military leave: to allow employees to perform public service. *See* A1692–93. The Eleventh Circuit recently reached the same conclusion, holding that military leave and administrative leave—including jury-duty leave—"serve comparable purposes." *Myrick*, 69 F.4th at 1319. Other cases uniformly support that conclusion. *See, e.g.*, *Clarkson*, 59 F.4th at 437.

*Second*, if American were right, military leave could never be comparable to another leave. *See* Opening Br. 41. American's only response (at 49) is to say that this isn't necessarily so because "purpose is just one of multiple potential factors that bear on comparability." That misses the point. American does not deny that its view of purpose would, at a minimum, make it so that this factor could never be comparable. But then what sense would it make for DOL to have included purpose as a relevant factor? What work would it be doing? American never says.

---

For another, while American asserts (at 33) that "[s]ixteen days is not comparable to two or three," this Court in *Waltermyer* held the opposite: Leave for a 14-day training is comparably "short" to jury leave. 804 F.2d at 825. A jury could sensibly agree.

*Third*, to the extent that the "significant" pay disparity between reservists and jurors were relevant to comparability, it would only cut against American. AA Br. 40–41. Elsewhere in its brief, American argues that the comparability analysis should be tied to the particular benefit in question (here, differential pay), with the ultimate focus being on the employer's "reason for the differential treatment." That approach is wrong for reasons that we will soon discuss, but it is worth pausing here to note the incompatibility of American's arguments. If reservists are paid significantly more than jurors for each day of leave, that means that American would have to pay them significantly *less* to make up the difference. American entirely ignores this key point.

In short, a jury could find that the purpose of military leave is similar to that of jury leave. And the same goes for bereavement leave. American's arguments about bereavement leave's purpose are jury arguments, not a basis for summary judgment.

**Control.** As for the last factor—the ability to choose when to take the leave—American largely repeats the errors of the district court. The plaintiffs have already explained these errors, and we won't repeat them in full here. *See* Opening Br. 33–35, 42. But American makes two additional points that deserve a brief response.

Point one: American asserts that "there is *no record support*" to show that "this case involves military leaves that were generally unknown to pilots more than a few weeks in advance." AA Br. 44. But adding italics doesn't make it true. American's own corporate witness testified that, under American's bidding system, a "planned

absence is supposed to be provided prior to the run of [a pilot's] bid schedule"—whether that absence is for "military" service, "jury duty," or "anything that would be planned." A1684. So flight schedules "would be planned around" those known absences, and in most cases no leave would be taken and "no pay would be received for any of those" (including absences for jury duty). *Id.*; *see* A1685–87. Consequently, for "[a]nnual training and weekend drills," which American notes "are typically known to pilots before they submit their monthly bid," pilots usually would not take military leave, and (if American's witness is to be credited) those absences would generally not be "included in the class of leaves at issue here." *Contra* AA Br. 45.

A jury could easily credit this evidence and find that, when pilots took any type of leave at issue here, they generally did so on short notice, only after their bids were submitted. At that point, they might have had some limited flexibility in choosing when to take their leave, but not so much as to defeat comparability as a matter of law. *See* A1718; *Myrick*, 69 F.4th at 1319 (holding that military leave is comparable to investigative administrative leave, over which employees have no control). Although American claims (at 45) that "pilots can often avoid (or create) conflicts by trading trips with other pilots or using the airline's 'open time' system," that is no less true for jury or bereavement leave—and thus no basis for denying comparability.

Point two: American tries to fault the plaintiffs for the district court's failure to cite evidence regarding the flexibility of scheduling jury duty or bereavement leave.

American even goes so far as to declare (at 46) that the plaintiffs "admit that they offered 'no record evidence'" and so "highlight their own default." Not true. As just noted, the record shows that, for every type of leave at issue, pilots generally do not take leave for planned absences. A1684–87. As for unplanned absences, the record shows that, for every type of leave at issue, "pilots have well-established tools to adjust their schedule" and avoid taking leave. A646. It also shows that pilots have flexibility, for example, over when to take bereavement leave (even if they have little control over the event that authorizes such leave). *See* A1685–86. A jury could easily find that absences for jury duty and military service are comparable in this respect, in that they are typically triggered by an involuntary event, followed by limited flexibility as to when (or whether) to take leave. *See, e.g.*, A1718–19; Opening Br. 34–35.

## III. The jury is not required to accept American's argument that the frequency of reservists' military leave defeats comparability.

American's real objection to comparability has nothing to do with the three factors enumerated in the regulation. Its real argument, rather, is that military leave is not comparable to any other leave because of an *un*enumerated factor: frequency.

The best version of this argument goes like this: The regulation states that duration may be the most significant factor for comparability. 20 C.F.R. § 1002.150(b). Like duration, frequency affects "the total amount of time that service-member pilots are absent from work." AA Br. 22. Frequency is therefore as important as duration.

This argument has two core problems. The first is that the regulation doesn't say frequency. Even though DOL well understood that frequency and duration are distinct concepts, it mentioned only duration as being relevant to the analysis, not frequency. This Court did similarly in *Waltermyer*. And there is a good reason for this: Allowing frequency to negate comparability as a matter of law would dramatically weaken, if not entirely nullify, the protections that Congress provided in section 4316(b)(1). Congress enacted USERRA to protect reservists and National Guard members during their "frequent absences from work," *Monroe*, 452 U.S. at 565, and "to encourage noncareer service" in the military, 38 U.S.C. § 4301(a)(1). Requiring comparability as to both frequency and duration would disserve these congressional aims, "undermin[ing] the purpose of USERRA." *Clarkson*, 59 F.4th at 436. It would make it much harder (if not impossible) for military leave to ever be comparable to any other leave. Equally bad, it would create the very kind of disincentive to serve that Congress sought to stamp out in USERRA. At the end of the day, American's position is that employees should be punished for their military service—so that the more they serve, the weaker their protections. But "[n]othing in USERRA says that employers must provide equal treatment unless a servicemember serves too much." *Won v. Amazon.com, Inc.,* 2022 WL 3576738, at *11 (E.D.N.Y. Aug. 19, 2022).

Which leads to the second core problem with American's argument: It is not only inconsistent with the statute's purpose, but with its text—and in more ways than

one. The text contains no comparability requirement at all, much less one that would make the statute's protections contingent on infrequent service. Quite the contrary: The statute expressly provides that the "frequency" of a servicemember's military obligations "shall not be a basis for denying protection." 38 U.S.C. § 4312(h). American makes no attempt to show that its reading of the regulation is consistent with the text of either section 4312(h) or 4316(b). It does not even assert as much.

The only argument that American makes about the statutory text is tucked into a footnote. In essence, the argument is that the regulation *already* violates the text of USERRA by imposing a comparability requirement and pegging the requirement to duration and control, so it might as well violate it some more. *See* AA Br. 25 n.4. But courts must reject interpretations of regulations that are "inconsistent with the statute under which the regulations were promulgated"—not embrace them. *Turtle Island Restoration Network v. U.S. Dep't of Com.*, 878 F.3d 725, 733 (9th Cir. 2017); *see Chevron, U.S.A. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984); *Canyon Fuel Co., LLC v. Sec'y of Lab.*, 894 F.3d 1279, 1288 (10th Cir. 2018). Faced with two interpretations of a regulation—one of which violates the statute and one of which does not—it's no contest which interpretation must prevail. So even if it could plausibly be contended that DOL's omission of frequency was unintentional, and that the regulation's purpose would support treating frequency as a factor on par with duration, that wouldn't matter. The regulation's text does not compel that

result. And there is no canon of "agency purposivism," in which the penumbra of a regulation can be used to wipe out the words that Congress wrote into law.[3]

Faced with such insuperable problems, American pivots to a different take on comparability. "USSERA," it says, "is an anti-discrimination statute," so the comparability analysis "must evaluate the reason for the policy in question—and hence, the reason for the differential treatment." AA Br. 17, 28. On this view, the comparability analysis must be conducted differently for each benefit in question, thereby allowing for the possibility that the exact same leaves can be comparable for one benefit (*e.g.*, the benefit in *Waltermyer*) but not for another (*e.g.*, the benefit here).

This approach is unmoored from any statutory or regulatory text and lacks support in any case interpreting USERRA. As American puts it (at 37–38): "If a leave is comparable, it is comparable; if not, then not." A leave cannot simultaneously be both comparable and incomparable depending on the benefit at issue.

Yet even under this approach, the adequacy of a claimed justification would be a jury question on which the employer would bear the burden of proof. Here, American never even says what its justification is. Still less does it try to substantiate any justification with such overwhelming evidence as to entitle it to judgment as a

---

[3] As the plaintiffs stated in their opening brief, "to the extent that frequency may bear on comparability, it is for the jury to determine how to analyze the factor and how much weight to give it, if any." Opening Br. 38. So this Court need not go so far as to hold that frequency must be "ignored," *contra* AA Br. 18, or cannot be considered by the jury, *contra* AA Br. 26, to reverse the grant of summary judgment.

matter of law. American's only conceivable justification is costs—"the very rationale that Congress sought to prohibit" in USERRA. *Clarkson*, 59 F.4th at 436–37. But American cites no evidence showing that providing differential pay for some (or even all) of the military leaves at issue would be substantially more costly than what it pays for jury-duty leave. If anything, American does the opposite: It highlights how much more "significant" military pay is than juror pay—and thus how much *less* it would cost American to provide differential pay. AA Br. 48–49. American's expert did the same below, suggesting that providing differential pay for military leave could cost American orders of magnitude less per day than providing differential pay for jury leave. *See* A491–92 (contrasting $2,114.32 in military pay with $18 in juror pay).

Nor does American make any argument about the costs of applying its same bereavement-pay policy to the military leaves at issue. That isn't surprising. Because American caps paid bereavement leave at three days, a jury could reasonably conclude that any differences in frequency or the total amount of leave taken are immaterial. As a result, even under American's own approach to comparability, it is not entitled to summary judgment on the plaintiffs' USERRA claims.

## IV.    American cannot show that it is entitled to summary judgment on the plaintiffs' breach-of-contract claims.

Nor is American entitled to summary judgment on the breach-of-contract claims. Although American nominally defends the district court's decision to grant

summary judgment on these claims, it disagrees with several important aspects of the court's reasoning.[4]

American first contends that the profit-sharing plan unambiguously excludes income imputed while on military leave. AA Br. 50–52. But the provision on which it relies defines compensation by reference to the pilots' 401(k) plan, ensuring that the two plans would treat compensation in the same way. A363, 368. Thus, as the district court itself acknowledged, the key question is "whether the 401(k) plan for American pilots treats as compensation imputed income for time spent in military service." A24. American doesn't like that question because it doesn't like the answer. But it is at least a plausible reading of the contract. Even if American's contrary reading were equally plausible, that would show only that the contract is susceptible to multiple plausible interpretations, precluding summary judgment. A provision that is written to track the meaning of compensation for purposes of employer contributions under the 401(k) plan—so that anything treated as income for that purpose is treated as income for profit-sharing—does not unambiguously mandate a gap between the two.

American also argues for deference. It does not deny that, in the district court, it "conceded that the committee did not itself interpret the plan." Opening Br. 47. American argues instead that the committee "express[ly]" delegated "interpretive

---

[4] This claim is asserted only against American Airlines Group, and not also American Airlines. For the sake of simplicity, we continue to refer to the defendant as "American."

authority to Kim Wicker, American's Director of Executive Compensation, and her team, who in turn exercised that authority." *Id.* at 54. As the plaintiffs have explained, the district court correctly rejected this argument. A28. American points to the fact that the committee delegated certain authority to "company officers," AA Br. 53–54, but it does not contend that Ms. Wicker or her team are "officers" (and they are not). Moreover, the delegation was limited to effectuating the purposes of two specific resolutions (one adopting the plan and the other administering the 2016 awards). A920. It does not include a sweeping grant of authority to interpret the plan.

So American tries to smuggle in a new argument about "implied" delegation. AA Br. 54. This argument is waived. *See* ECF No. 178 at 5-6; ECF No. 180 at 12-13; *Mauldin v. Worldcom, Inc.*, 263 F.3d 1205, 1213 (10th Cir. 2001) (finding waiver). It is also wrong. The only evidence that American cites in support of it (at 54) is Ms. Wicker's testimony that she and her team interpreted the plan on some occasions. But the question isn't what Ms. Wicker did; it's what *the committee* did. American cites no evidence showing that the committee did anything to indicate an implied delegation to Ms. Wicker—a delegation that would have violated its own charter. *See* A912.

As for the ratification theory it pressed below, American now rightly abandons it. Rather than persist with that theory, American ends its brief by musing (at 55–56) that the interpretation may have "originated with the Committee." But unsupported assertions about what "everyone . . . knew" do not justify summary judgment. *Id.*

# CONCLUSION

The district court's judgment should be reversed.

July 11, 2023                                      Respectfully submitted,

                                                  /s/ Jonathan E. Taylor
                                                  JONATHAN E. TAYLOR
                                                  DEEPAK GUPTA
                                                  ROBERT FRIEDMAN
                                                  GUPTA WESSLER LLP
                                                  2001 K Street NW
                                                  North Tower, Suite 850
                                                  Washington, DC 20006
                                                  (202) 888-1741
                                                  jon@guptawessler.com
                                                  deepak@guptawessler.com
                                                  robert@guptawessler.com

                                                  ADAM T. KLEIN
                                                  MICHAEL J. SCIMONE
                                                  OUTTEN & GOLDEN LLP
                                                  685 Third Ave., 25th Floor
                                                  New York, NY 10017
                                                  (212) 209-0671
                                                  atk@outtengolden.com
                                                  mscimone@outtengolden.com

                                                  R. JOSEPH BARTON
                                                  COLIN M. DOWNES
                                                  BARTON & DOWNES LLP
                                                  1633 Connecticut Avenue NW
                                                  Suite 200
                                                  Washington, DC 20009
                                                  (202) 734-7046
                                                  jbarton@blockesq.com
                                                  colin@blockesq.com

PETER ROMER-FRIEDMAN
PETER ROMER-FRIEDMAN
LAW PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
(202) 355-6364
peter@prf-law.com

MATTHEW Z. CROTTY
RIVERSIDE LAW GROUP
905 W. Riverside Avenue
Suite 404
Spokane, WA 99201
(509) 850-7011
matt@crottyandson.com

THOMAS G. JARRARD
LAW OFFICE OF THOMAS
G. JARRARD LLC
1020 North Washington Street
Spokane, WA 99201
(425) 239-7290
tjarrard@att.net

*Counsel for Plaintiffs-Appellants*

## COMBINED CERTIFICATIONS

**1. Word Count, Typeface, and Type Style:** I certify that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a) because the brief (as indicated by my word processing program, Microsoft Word) contains 6,398 words, excluding those portions excluded under Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32-1(c). I also certify that this brief complies with the typeface requirements of Rule 32(a)(5) and type style requirements of Rule 32(a)(6) because this brief has been prepared in the proportionally spaced typeface of 14-point Baskerville.

**2. Service:** I certify that on July 11, 2023, I filed this reply brief electronically via this Court's CM/ECF system. All participants in this appeal are registered CM/ECF users and will be served by the CM/ECF system.

July 11, 2023                              */s/ Jonathan E. Taylor*
                                          Jonathan E. Taylor